**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NOTRE DAME AFFORDABLE HOUSING and CHARLENE M. MARSH,<br><br>      Plaintiffs, on behalf of themselves and others similarly situated<br><br>v.<br><br>CITY OF CHICAGO, JUDITH FRYLAND, COMMISSIONER, DEPARTMENT OF BUILDINGS, CITY OF CHICAGO, GRANT ULLRICH, DEPUTY COMMISSIONER, DEPARTMENT OF BUILDINGS, CITY OF CHICAGO, DELTA DEMOLITION, INC., AND AS YET UNKNOWN JOHN AND JANE DOE DEFENDANTS,<br><br>      Defendants. | JURY TRIAL DEMANDED |

**COMPLAINT FOR INJUNCTIVE RELIEF, AND DECLARATORY RELIEF AND DAMAGES**

NOW COME, NOTRE DAME AFFORDABLE HOUSING and CHARLENE M. MARSH, by and through their attorney, James C. Vlahakis, of the SULAIMAN LAW GROUP, LTD., and pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), the Fifth Amendment as applied by the Fourteenth Amendment and other statues and cases of action identified below, bring this civil action against Defendants for the purpose of obtaining injunctive and declaratory relief to remedy Defendants' unlawful conduct relative to the demotion of a property located at 7954 S. Halsted and 808-810 W. 80th Street in Chicago, Illinois:

**Parties, Jurisdiction and Venue**

1.      Notre Dame Affordable Housing, Inc. ("Notre Dame Affordable Housing") is registered as an Illinois 501c3 not-for-profit corporation under File No. 67621719.

2.      Notre Dame Affordable Housing's mission statement is to help veterans obtain affordable housing.

3.      Notre Dame Affordable Housing's principal officer is Plaintiff Charlene Marsh.

4.      Plaintiff Marsh resides in the City of Chicago and is African-American.

5.      The CITY OF CHICAGO is a municipal body within the Court's jurisdiction.

6.      JUDITH FRYLAND, is a resident of the City of Chicago and is the Commissioner of the CITY OF CHICAGO DEPARTMENT OF BUILDINGS.

7.      GRANT ULLRICH, is a resident of the City of Chicago and is the Deputy Commissioner of the CITY OF CHICAGO DEPARTMENT OF BUILDINGS.

8.      Defendants Fryland and Ullrich are being sued in their individual capacities.

9.      Defendants Fryland and Ullrich are final policy makers relative to the City of Chicago Department of Buildings.

10.      On information and belief, Defendants Fryland and Ullrich work at the Chicago Building Department located at 2045 W. Washington Blvd, Chicago, IL 60612.

11.      The City of Chicago, Defendant Fryland and Defendant Ullrich are at times referred to as the "City of Chicago Defendants."

12.      On information and belief, Defendants Fryland and Ullrich, personally participated in acts and omissions set forth below or they were personally aware of the acts and omissions set forth below and condoned and/or ratified the acts or omissions.

13.      DELTA DEMOLITION, INC.  ("Delta Demolition") is a Chicago based business performing demolitions of physical structures located with the City of Chicago.

14.      Delta Demolition is located at 6832 W North Ave suite 1a, Chicago, IL 60707.

2

15.     As reflected in specific Counts set forth below, Delta Demolition personally participated in acts and omissions set forth below or it was personally aware of the acts and omissions set forth below and condoned and/or ratified the acts or omissions.

16.     The JOHN DOE and JANE DOE Defendants are currently unknown persons and entities who conspired with the City of Chicago Defendants and possibly the Delta Demolition.

17.     Jurisdiction is premised upon 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), 1986 and the Fifth Amendment as incorporated through the Fourteenth Amendment.

18.     Supplemental jurisdiction exists for Plaintiffs' state law claims.

19.     Venue is proper because the subject property and events at issue took place in this District and the parties exists or reside in this District.

20.     Notre Dame Affordable Housing holds a Quitclaim Deed with a Property Tax Parcel/Account 20-32-207-027-0000.

21.     The Property Tax Parcel/Account No. 20-32-207-027-0000 corresponds with a group of structures located at 7954 S. Halsted and 808-810 W. 80th Street in Chicago, Illinois.

**Defendants Unlawful and Illegal Conduct**

22.     Notre Dame Affordable Housing was the owner of certain physical structures located at 7954 S. Halsted and 808-810 W. 80th Street in Chicago, Illinois (collectively the "Subject Properties" or individually as the "Subject Property"),

23.     Plaintiffs had intend to rehab the Subject Properties to provide subsidized housing to homeless veterans.

24.     The Subject Properties were illegally and unlawfully demolished by the Defendants sometime after December 11, 2017.

25.     The City of Chicago Defendants failed to properly serve Plaintiffs with a Notice of Demolition.

26.     Alternatively, Delta Demolition failed to properly serve Plaintiffs with a Notice of Demolition.

27.     In relevant part, the Municipal Code of the City of Chicago states:

(a)   At least ten days prior to beginning work to demolish a building, facility or other structure for which a permit is required under this Code, the owner of the property where the work is to be done shall notify the owners of adjacent properties of the demolition work, and alderman of the ward in which the proposed demolition work is to be located; provided that no such notice is required if (i) immediate demolition is necessary to protect against an imminent threat to the safety of the public; or (ii) demolition has been ordered or authorized by a court or administrative authority of competent jurisdiction. The notice shall be in writing, and shall be delivered by certified mail, return receipt requested, or by personal delivery to the person entitled to receive the notice, accompanied by a receipt for delivery. When the notice is served by personal delivery, the owner of the property shall submit to the department of buildings a signed affidavit stating the date and time of the delivery and an explanation of how the notice was served. The receipt, affidavit and a copy of the notice shall be available for inspection at the demolition site.

See, 13-124-015(a), Notice of demolition.

28.     Further, the Municipal Code of the City of Chicago provides that "[n]o demolition permit may be issued under this Code unless the applicant provides proof that notice has been mailed or delivered as required by this section."  See, 13-124-015(c), Notice of demolition.

29.     The City of Chicago Defendants did not comply with the above provisions prior to demolishing the Subject Properties.

30.     One or more of City of Chicago Defendants never posted a Notice of Demolition upon the Subject Property located at 7954 S. Halsted Street in Chicago, Illinois.

31.     One or more of City of Chicago Defendants failed to properly post a Notice of Demolition upon the Subject Property located at 808-810 W. 80th Street in Chicago, Illinois.

32.    A demolition permit, Application No. 100730643 was issued on December 11, 2017 (the "December 11th Permit").

33.    Prior to the issuance of the December 11th Permit, no prior building inspections identified any conditions which warranted an Emergency Wreck and Remove permit.

34.    The December 11th Permit was used to illegally and unlawfully demolish Subject Properties sometime after December 11, 2017.

35.    One or more of City of Chicago Defendants never posted the December 11th Permit on the Subject Property located at 7954 S. Halsted Street in Chicago, Illinois.

36.    Alternatively, Delta Demolition never posted the December 11th Permit on the Subject Property located at 7954 S. Halsted Street in Chicago, Illinois.

37.    One or more of City of Chicago Defendants never posted the December 11th Permit on the Subject Property located at 808-810 W. 80th Street in Chicago, Illinois

38.    Alternatively, Delta Demolition never posted the December 11th Permit on the Subject Property located at 808-810 W. 80th Street in Chicago, Illinois.

39.    On information and belief, Defendants never took any interior pictures of 808-810 W. 80th Street in Chicago, Illinois.

40.    Dennis Rafael, an employee of the City of Chicago's Department of Buildings told Plaintiff Marsh that the Subject Properties were demolished on one of the following dates:  October 12, 2017, October 22, 2017, October 24, 2017 or October 27, 2017.

41.    The Subject Properties were not demolished on any of the dates identified by Mr. Rafael.

42. The Subject Properties were not demolished on any of the dates identified by Mr. Rafael because the Plaintiff Marsh has photographic evidence of the Subject Properties after these above listed dates.

43. The Subject Properties were not demolished on any of the dates identified by Mr. Rafael because the Plaintiff Marsh has photographic evidence of the Subject Properties taken in December of 2017.

44. On information and belief, the Subject Properties were not demolished until after December 11, 2018.

45. Alternatively, on information and belief, the City Defendants and Delta Demolition began to demolish the Subject Properties on December 11, 2018.

46. Alternatively, on information and belief, the Subject Properties were not fully demolished until after December 11, 2018.

47. Alternatively, on information and belief, the Subject Properties were not fully demolished until after December 12, 2018.

48. The City Defendants and Delta Demolition's demolition of the Subject Properties constitutes illegal and unlawful conduct and violates Plaintiffs' rights under the Fifth Amendment as incorporated by the Fourteenth Amendment.

49. The City Defendants and Delta Demolition's demolition of the Subject Properties constitutes illegal and unlawful conduct and violates Plaintiffs' rights provided by 42 U.S.C. §§ 1981, 1982, 1983, 1985(3) because the demolition of the Subject Properties took place because of the fact that Plaintiff Marsh is African-American and Defendants' took action against Plaintiff Marsh because of her race.

50. The Chicago Defendants discriminated against Plaintiff Marsh because she is a confident, articulate and strong woman of African-American decent.

51. The Chicago Defendants discriminated against Plaintiff Marsh because of the advocacy should took in relation to her writing to Mayor Rahm Emmanuel to complain about the possible theft of certain properties from local land owners by city officials, and an entity known Halsted New City Retail II, LLC.

52. On information and belief, known and unknown City of Chicago employees and officials (including, but not limited to Mayor Emmanuel) were resentful of the fact that Plaintiff Marsh stood up for herself, as well as the rights of persons of color and United States veterans.

53. On information and belief, these individuals resented Plaintiff Marsh because she was not part of the "Chicago Machine" which generally rewards Caucasian businessmen who are well-connected with other City of Chicago officials.

54. The demolition of the Subject Properties constitutes illegal and unlawful conduct and violates Plaintiffs' rights provided by 42 U.S.C. § 1983.

55. The City of Chicago is liable for the demolition of the Subject Properties because the demolition of the Subject Properties took place as a result of the City's widespread practice and/or custom of discriminating against owners or person associated with owners of property based upon the color of their skin. On information and belief, other persons of color associated with owners of similarly situated properties have had their properties demolished under similar circumstances. The City's above mentioned practice and/or custom is so permanent and well settled as to constitute a custom or usage with the force of law.

56. Plaintiffs have been damaged because the Subject Properties were unlawfully destroyed.

7

57.     Plaintiffs have also been damaged because when Subject Properties were unlawfully destroyed, Plaintiffs lost the value of nearly two hundred thousand dollars of costs and improvements that they made for relative to the Subject Properties.

58.     Plaintiffs intended to rehab the Subject Properties and cannot do so at this time because the physical structures that make up the Subject Properties have been destroyed.

59.     The demolition of the Subject Properties will add millions of dollars to the housing project that Plaintiffs had envisioned.

60.     Plaintiffs have yet to be compensated by the City of Chicago because of certain deceptions and misrepresentations made by the one or more of the Chicago Defendants.

61.     It appears that Plaintiffs will not be compensated by the City of Chicago because of certain deceptions and misrepresentations made by the one or more of the Chicago Defendants in concert with other parties as yet unknown.

62.     Even if Plaintiffs are compensated by the City of Chicago for the value of the Subject Properties and the improvements that they paid for, Plaintiffs are also entitled to compensation as a result of Defendants' unlawful and discriminatory treatment.

63.     Plaintiffs seek to impose individual liability against the Commissioner and Assistant Commissioner for their role in causing the Subject Building to be demolished.

64.     To establish personal liability in a civil rights action, "'it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.'"  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) *(quoting Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

## Causes of Action[1]

### Count I – Section 1981

65.     Plaintiffs reallege and incorporate the above allegations as if fully set forth above:

66.     To establish a claim under § 1981, a plaintiff must show that (1) she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute.

67.     Section 1981(a) states that:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

68.     Section 1981(b) defines the phrase "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

69.     Section 1981(b) states that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of state law.

70.     As set forth above, Plaintiffs have had their property and contractual rights deprived based upon racist mistreatment and personal animus and have suffered damages.

71.     Defendants unlawfully and illegally caused the subject properties to be demolished for the purpose of depriving Plaintiffs' of the Subject Properties and the value of the Subject Properties.

---

[1] The following claims are brought by both Plaintiffs against all Defendants unless otherwise noted.

72.     Defendants acted this way as part of a scheme to facilitate the purchase and use of the land once occupied by Subject Properties by certain unknown third parties (currently unknown John Doe and Jane Doe Defendants).

73.     Defendants participated in this scheme to allow these third parties to utilize profit from the existence of a Tax Increment Financing ("TIF") Zone and Opportunity Zone.

**Wherefore**, Plaintiffs are entitled to compensation, punitive damages, declaratory and injunctive relief as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.

### *Count II – Section 1982*

74.     Plaintiffs reallege and incorporate the above allegations as if fully set forth above:

75.     Section 1982 states that:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

76.     To state a claim under § 1982, a plaintiff must allege that the defendant had a racial animus, intended to discriminate against the plaintiff, and deprived the plaintiff of protected rights because of plaintiff's race.

77.     Section 1982's protection of the right "to hold" property goes beyond mere title; it also includes the right to use one's property and protects a person's property from being unlawfully destroyed because of racial animus.

78.     As set forth above, Defendants violated Plaintiffs' rights provided by Section 1982 by having discriminatory animus against Plaintiffs based upon the color of their skin through their conduct in unlawfully demolishing the Subject Properties.

79.     As set forth above, Plaintiffs have had their property and contractual rights deprived based upon racist mistreatment and personal animus and have suffered damages.

80.     Defendants unlawfully and illegally caused the subject properties to be demolished for the purpose of depriving Plaintiffs' of the Subject Properties and the value of the Subject Properties.

81.     Defendants acted this way as part of a scheme to facilitate the purchase and use of the land once occupied by Subject Properties by certain unknown third parties (currently unknown John and Jane Doe Defendants).

82.     Defendants participated in this scheme to allow these third parties to utilize profit from the existence of a Tax Increment Financing ("TIF") Zone and Opportunity Zone.

**Wherefore**, Plaintiffs are entitled to compensation, punitive damages, declaratory and injunctive relief as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.

### *Count III – Section 1983/Equal Protection*

83.     Plaintiffs reallege and incorporate the above allegations as if fully set forth above:

84.     Section 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

85.     To state an equal protection claim under Section 1983, a plaintiff must allege that (1) she is a member of a protected class; (2) she was similarly situated to members of the unprotected class; (3) she was treated differently from members of the unprotected class; and (4) the defendant acted with discriminatory intent.

86.     As set forth above, Defendants violated Plaintiffs' rights provided by Section 1983 by discriminating against Plaintiffs based upon the color of their skin through their conduct in unlawfully demolishing the Subject Properties.

87.     As set forth above, Plaintiffs have had their property and contractual rights deprived based upon racist mistreatment and personal animus and have suffered damages.

88.     Defendants unlawfully and illegally caused the subject properties to be demolished for the purpose of depriving Plaintiffs' of the Subject Properties and the value of the Subject Properties.

89.     Defendants acted this way as part of a scheme to facilitate the purchase and use of the land once occupied by Subject Properties by certain unknown third parties (currently unknown John and Jane Doe Defendants).

90.     Defendants participated in this scheme to allow these third parties to utilize profit from the existence of a Tax Increment Financing ("TIF") Zone and Opportunity Zone.

**Wherefore**, Plaintiffs are entitled to compensation, punitive damages, declaratory and injunctive relief as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.

### *Count IV – Section 1985(3)*

91.     Plaintiffs reallege and incorporate the above allegations as if fully set forth above

92.     Section 1985(3) states in part:

> If two or more persons in any State or Territory conspire or go . . . on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

93.     In summary, Section 1985(3) affords a private right of action against persons who conspire to violate the rights of another person or another person's property.

94.     To state an equal protection claim under Section 1985(3), a plaintiff must allege that (1) she is a member of a protected class; (2) she was similarly situated to members of the unprotected class; (3) she was treated differently from members of the unprotected class; and (4) the defendant acted with discriminatory intent.

95.     As set forth above, Plaintiffs have had their rights to equal protection under the law denied and deprived based upon racist mistreatment and personal animus and have suffered damages.

96.     Defendants unlawfully and illegally caused the subject properties to be demolished for the purpose of depriving Plaintiffs' of the Subject Properties and the value of the Subject Properties.

97.     Defendants acted this way as part of a scheme to facilitate the purchase and use of the land once occupied by Subject Properties by certain unknown third parties (currently unknown John and Jane Doe Defendants).

98.     Defendants participated in this scheme to allow these third parties to utilize profit from the existence of a Tax Increment Financing ("TIF") Zone and Opportunity Zone.

**Wherefore**, Plaintiffs are entitled to compensation, punitive damages, declaratory and injunctive relief as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.

### *Count V – Taking Property with Just Compensation vs. the City of Chicago Defendants*

99.     Plaintiffs reallege and incorporate the above allegations as if fully set forth above

100.    The Fifth Amendment, as incorporated by the Fourteenth Amendment, prevents taking of property by a governmental entity with due process and proper compensation.

13

101.     The City of Chicago Defendants cannot take a person's property without giving her an opportunity for a hearing in advance of the taking.

102.     The City of Chicago Defendants failed to comply with the requirements of state law as set forth by 65 ILCS 5/11-31-1(a).

103.     The City of Chicago Defendants have failed to provide Plaintiffs with adequate post-deprivation remedies.

104.     Despite filing a claim, as alleged above, the City of Chicago Defendants, by and through the misstatements of Dennis Rafael, have effectively denied Plaintiffs adequate post-deprivation remedies.

105.     As set forth above, Plaintiffs have been damaged in their property interests, contractual interests, statutory rights and due process rights and they have been required to hire legal counsel to assert their legal rights.

106.     Defendants unlawfully and illegally caused the subject properties to be demolished for the purpose of depriving Plaintiffs' of the Subject Properties and the value of the Subject Properties.

107.     Defendants acted this way as part of a scheme to facilitate the purchase and use of the land once occupied by Subject Properties by certain unknown third parties (currently unknown John and Jane Doe Defendants).

108.     Defendants participated in this scheme to allow these third parties to utilize profit from the existence of a Tax Increment Financing ("TIF") Zone and Opportunity Zone.

**Wherefore**, Plaintiffs are entitled to compensation, punitive damages, declaratory and injunctive relief as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.

*Count VI – Substantive Due Process vs. the City of Chicago Defendants*

109.    Plaintiffs reallege and incorporate the above allegations as if fully set forth above:

110.    The Fifth Amendment, as incorporated by the Fourteenth Amendment, prevents taking of property by a governmental entity with due process and proper compensation.

111.    The City of Chicago Defendants cannot take a person's property without giving her an opportunity for a hearing in advance of the taking.

112.    The City of Chicago Defendants failed to comply with the requirements of state law as set forth by 65 ILCS 5/11-31-1(a).

113.    The City of Chicago Defendants have failed to provide Plaintiffs with adequate post-deprivation remedies.

114.    Despite filing a claim, as alleged above, the City of Chicago Defendants, by and through the misstatements of Dennis Rafael, have effectively denied Plaintiffs adequate post-deprivation remedies.

115.    As set forth above, Plaintiffs have been damaged in their property interests, contractual interests, statutory rights and due process rights and they have been required to hire legal counsel to assert their legal rights.

116.    Defendants unlawfully and illegally caused the subject properties to be demolished for the purpose of depriving Plaintiffs' of the Subject Properties and the value of the Subject Properties.

117.    Defendants acted this way as part of a scheme to facilitate the purchase and use of the land once occupied by Subject Properties by certain unknown third parties (currently unknown John and Jane Doe Defendants).

118.    Defendants participated in this scheme to allow these third parties to utilize profit from the existence of a Tax Increment Financing ("TIF") Zone and Opportunity Zone.

**Wherefore**, Plaintiffs are entitled to compensation, punitive damages, declaratory and injunctive relief as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.

### Count VII – Equal Protection Class of One vs. the City of Chicago Defendants

119.    Plaintiff Marsh realleges and incorporates the above allegations as if fully set forth above:

120.    The Equal Protection Clause "guards against government discrimination on the basis of race and other immutable characteristics, but it also extends to protect people from so-called 'class-of-one' discrimination in which a government arbitrarily and irrationally singles out one person for poor treatment." *Brunson v. Murray,* 843 F.3d 698, 705 (7th Cir. 2016).

121.    As set forth above, Plaintiff Marsh has had her property interests and contractual rights deprived based upon racist mistreatment and personal animus and has suffered damages.

122.    Other properties existed in a similar condition within the vicinity of the Subject Properties, but they were either not subject to a demolition order, or if they were subject to a demolition order, the City of Chicago Defendants complied with all of the necessary statutory notice requirements.

123.    The differential treatment described above constitutes purposeful, vengeful and spiteful mistreatment directed toward Plaintiff Marsh for now lawful of legitimate reason.

124.    Other property owners were treated more favorably that Plaintiff Marsh because the property owners who maintained properties with similar conditions had never accused City of Chicago officials of being in cahoots with Halsted New City Retail II, LLC.

125.    Further no other similarly situated property owner appears to have written complaint letters to Mayor Rahm Emmanuel as is the case with Plaintiff Marsh.

126.    Defendants unlawfully and illegally caused the subject properties to be demolished for the purpose of depriving Plaintiffs' of the Subject Properties and the value of the Subject Properties.

127.    Defendants acted this way as part of a scheme to facilitate the purchase and use of the land once occupied by Subject Properties by certain third parties.

**Wherefore**, Plaintiff Marsh is entitled to compensation, punitive damages, declaratory and injunctive relief as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.

### *Count VIII – Section 1986*

128.    Plaintiffs reallege and incorporate the above allegations as if fully set forth above:

129.    Section 1986 provides in part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action[.]

130.    In summary, Section 1986 provides a private right of action against a person who is (a) aware of other persons conspiring to violate Section 1985(3) and that person (b) fails to prevent the conspiracy and/or wrongful conduct from occurring.

131.    As set forth above, Defendants violated Plaintiffs' rights provided by Section 1985 by discriminating against Plaintiffs based upon the color of their skin through their conduct in unlawfully demolishing the Subject Properties.

132.    Defendants unlawfully and illegally demolished the Subject Properties for the purpose of depriving Plaintiffs' of the Subject Properties and the value of the Subject Properties.

17

133.    Defendants acted this way as part of a scheme to facilitate the purchase and use of the land once occupied by Subject Properties by certain unknown third parties (currently unknown John and Jane Doe Defendants).

134.    Defendants participated in this scheme to allow these third parties to utilize profit from the existence of a Tax Increment Financing ("TIF") Zone and Opportunity Zone.

135.    As a result of this mistreatment and resultant failure to protect, Plaintiffs have been damaged in their property interests, contractual interests, statutory rights and due process rights and they have been required to hire legal counsel to assert their legal rights.

**Wherefore**, Plaintiffs are entitled to compensation, punitive damages, declaratory and injunctive relief as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.

### *Count IX – Illinois Consumer Fraud*

136.    Plaintiffs reallege and incorporate the above allegations as if fully set forth above:

137.    Defendants have violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS § 505/1, et. seq.

138.    Section 2 of the ICFA states as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby . . . .

139.    In summary, Section 2 of the ICFA prohibits, *inter alia*, deceptive and unfair conduct, including but not limited to, false representations, false statements and omissions.

140.    Defendants, as set forth above, engaged in unfair methods of competition and unfair or deceptive acts or practices.

141.    Defendants, as set forth above, used and employed acts of deception fraud, false pretense, false promise and misrepresentation

142.    Defendants, as set forth above, concealed, suppressed and omitted material facts regarding their plans to unlawfully and illegally demolish the Subject Properties for the purpose of depriving Plaintiffs' of the Subject Properties and the value of the Subject Properties.

143.    Defendants acted this way as part of a scheme to facilitate the purchase and use of the land once occupied by Subject Properties by certain third parties.

144.    As a result of Defendants' misconduct, Plaintiffs have been damaged.

**Wherefore**, Plaintiffs are entitled to compensation, punitive damages, declaratory and injunctive relief as well as attorney's fees and costs pursuant to ICFA.

### Count X – Intentional Interference with Prospective Economic Advantage vs. the City of Chicago Defendants

145.    Plaintiffs reallege and incorporate the above allegations as if fully set forth above:

146.    Defendants have committed the tort of intentional interference with prospective economic advantage.

147.    Plaintiffs had economic relationships with certain third parties and veteran beneficences relative to the Subject Properties of which the Chicago Defendants were aware.

148.    The Chicago Defendants as set forth above, engaged in conduct which was intended to disrupt Plaintiffs' economic relationships with these third parties and veteran beneficences.

149.    Defendants acted this way as part of a scheme to facilitate the purchase and use of the land once occupied by Subject Properties by certain third parties.

150.    As a result of Defendants' misconduct, Plaintiffs have been damaged.

**Wherefore**, Plaintiffs are entitled to compensation, punitive damages, declaratory and injunctive relief.

### *Count XI – Negligence vs. Delta Demolition*

151.    Plaintiffs reallege and incorporate the above allegations as if fully set forth above:

152.    Defendant Delta Demolition negligently demolished the Subject Properties by failing to comply with the aforementioned legal provisions prior to demolishing the Subject Properties.

153.    As a result of Defendant Delta Demolition's negligent conduct, Plaintiffs have suffered damages.

**Wherefore**, Plaintiffs are entitled to compensation, punitive damages, declaratory and injunctive relief.

**Plaintiffs demand trial by jury**

Respectfully Submitted,
*Counsel for Plaintiffs*

/s/ *James C. Vlahakis*
James C. Vlahakis
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
jvlahakis@sulaimanlaw.com