**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| NOTRE DAME AFFORDABLE HOUSING, *et al.* | |
| Plaintiffs, | |
| v. | Case No. 18-cv-8116 |
| | Hon. Charles Norgle |
| CITY OF CHICAGO, *et al.* | |
| Defendants. | |

**CITY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

ALLEGATIONS ................................................................................................................. 2

PROCEDURAL HISTORY ................................................................................................ 4

ARGUMENT ...................................................................................................................... 5

    I.      Plaintiffs' Claims Are Barred by Res Judicata. .................................................... 5

    II.     Plaintiff Marsh's Claims Also Should Be Dismissed Because
          She Lacks Standing. ............................................................................................. 6

    III.    Frydland And Ullrich Should Be Dismissed As Defendants. ............................... 7

    IV.   Plaintiffs' Federal Claims, Counts I–VIII, Should Be Dismissed As To
          The City For Failure To Allege *Monell* Liability. ............................................... 8

    V.     Counts I, II, III, IV, VII and VIII Should Be Dismissed Because They
          Fail To Allege Federal Civil Rights Claims Against The City Defendants. ........ 11

          A.   Plaintiffs fail to state a claim under § 1981 (Count I). ........................... 12

          B.   Plaintiffs fail to state a claim under § 1982 (Count II). ......................... 13

          C.   Plaintiffs' § 1983 claim should be dismissed because they do not allege
               intentional discrimination nor a "class of one." (Counts III, VII). ...................... 14

          D.   Plaintiffs fail to state a § 1985(3) conspiracy claim (Count IV). ........... 16

          E.   Plaintiffs' § 1986 claim should also be dismissed (Count VIII). ........... 17

    VI.   Counts V And VI Should Be Dismissed Because Plaintiffs Fail To Plead
          A Takings Or Substantive Due Process Claim Against The City Defendants. ............ 17

          A.   Plaintiffs failed to allege that they exhausted state and local remedies. .............. 18

          B.   Plaintiffs' allegations fail to state a substantive due process claim. .................... 19

    VII.  Plaintiffs' State Law Claims Should Be Dismissed For Failure To
          State a Claim Against the City Defendants. ....................................................... 21

          A.   Plaintiffs' Consumer Fraud Act Claim Is Legally Deficient (Count IX). ............. 21

B.  Plaintiffs Have Not Stated a Claim For Intentional Interference
With Prospective Economic Advantage (Count X). ............................................ 23

CONCLUSION.................................................................................................................... 24

## TABLE OF AUTHORITIES

CASES

*Adams v. City of Chicago Heights*,
   No. 09 C 5113, 2011 WL 686361 (N.D. Ill. Feb. 18, 2011)................................... 20

*Alejo v. Heller*,
   328 F.3d 930 (7th Cir. 2003) ............................................................................... 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................... 11, 20

*Auriemma v. Rice*,
   957 F.2d 397 (7th Cir. 1992) .............................................................................. 10

*Best v. Malec*,
   09 C 7749, 2010 WL 2364412 (N.D. Ill. June 11, 2010) ....................................... 22

*Brooks v. Ross*,
   578 F.3d 574 (7th Cir. 2009) ................................................................................ 7

*Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machines Corp.*,
   520 F. Supp. 2d 1012 (N.D. Ill. 2007) ................................................................ 23

*CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore*,
   769 F.3d 485 (7th Cir. 2014) .............................................................................. 20

*Christensen v. Cty. of Boone, IL*,
   483 F.3d 454 (7th Cir. 2007) .............................................................................. 19

*Daw v. Consol. City of Indianapolis & Marion Cty.*,
   734 F. App'x 357 (7th Cir. 2018) ........................................................................ 21

*Doherty v. City of Chicago*,
   75 F.3d 318 (7th Cir. 1996) ................................................................................ 19

*Duncan v. Duckworth*,
   644 F.2d 653 (7th Cir. 1981) ................................................................................ 7

*Estate of Sims ex rel. Sims v. Cty. of Bureau*,
   506 F.3d 509 (7th Cir. 2007) ................................................................................ 9

*Falk v. Perez*,
   973 F. Supp. 2d 850 (N.D. Ill. 2013) .................................................................. 22

*Forrester v. White*,
   846 F.2d 29 (7th Cir. 1988) ................................................................................ 14

*Forseth v. Vill. of Sussex*,
   199 F.3d 363 (7th Cir. 2000) ................................................................. 18

*Foster v. Principal Life Ins. Co.*,
   806 F.3d 967 (7th Cir. 2015) ................................................................. 23

*G & G Closed Circuit Events, LLC v. Castillo*,
   327 F. Supp. 3d 1119 (N.D. Ill. 2018) .................................................. 22

*Gable v. City of Chicago*,
   296 F.3d 531 (7th Cir. 2002) ................................................................... 9

*Garcia v. City of Chicago*,
   390 F. Supp. 2d 701 (N.D. Ill. 2005) .................................................... 10

*Gardner v. City of Waukegan*,
   No. 98 C 5372, 1999 WL 410009 (N.D. Ill. June 4, 1999) ................... 12

*Gonzalez v. Ingersoll Mill. Mach. Co.*,
   133 F.3d 1025 (7th Cir. 1998) ............................................................... 12

*Griffin v. Breckenridge*,
   403 U.S. 88 (1971) ................................................................................ 16

*Hammes v. AAMCO Transmissions, Inc.*,
   33 F.3d 774 (7th Cir. 1994) ..................................................................... 6

*Hicks v. Midwest Transit, Inc.*,
   479 F.3d 468, 471 (7th Cir. 2007) ........................................................... 5

*Hicks v. Resolution Tr. Corp.*,
   970 F.2d 378 (7th Cir. 1992) ................................................................. 17

*House of Brides, Inc. v. Alfred Angelo, Inc.*,
   11 C 07834, 2014 WL 64657 (N.D. Ill. Jan. 8, 2014) .......................... 24

*Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*,
   451 F. Supp. 2d 982 (N.D. Ill. 2006) .................................................... 24

*J.F. Shea Co. v. City of Chicago*,
   992 F.2d 745, 749 (7th Cir. 1993) ........................................................... 6

*Jafree v. Barber*,
   689 F.2d 640 (7th Cir. 1982) ................................................................. 16

*Knopick v. Jayco, Inc.*,
   895 F.3d 525 (7th Cir. 2018) ................................................................... 6

iv

*La Salle Nat'l Bank v. Cnty. Bd. of Sch. Trustees*,
   61 Ill.2d 524 (1975) ................................................................................................. 5

*Latuszkin v. City of Chicago*,
   250 F.3d 502 (7th Cir. 2001) ................................................................................ 9

*Lee v. City of Chicago*,
   330 F.3d 456 (7th Cir. 2003) .............................................................................. 19

*Lewis v. Schmidt*,
   No. 10 CV 1819, 2011 WL 43029 (N.D. Ill. Jan. 4, 2011)................................. 8

*Majeske v. Frat. Order of Police, Lodge No. 7*,
   94 F.3d 307 (7th Cir. 1996) ................................................................................ 16

*Malone v. Am. Friends Serv. Comm.*,
   213 F. App'x 490 (7th Cir. 2007) ...................................................................... 17

*Mandarino v. Pollard*,
   718 F.2d 845 (7th Cir. 1983) ............................................................................... 5

*McNabola v. Chicago Transit Auth.*,
   10 F.3d 501 (7th Cir. 1993) ................................................................................ 14

*Melendez v. Illinois Bell Telephone Co.*,
   79 F.3d 661 (7th Cir. 1996) ................................................................................ 12

*Monell v. Department of Social Services*,
   436 U.S. 658 (1978)............................................................................................... 8

*Muscarello v. Ogle Cnty. Bd. of Comm'rs*,
   610 F.3d 416 (7th Cir. 2010) .............................................................................. 18

*Newman v. Metro. Life Ins. Co.*,
   885 F.3d 992 (7th Cir. 2018) .............................................................................. 22

*Patton v. Przybylski*,
   822 F.2d 697 (7th Cir. 1987) ............................................................................... 7

*Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*,
   771 F.3d 391 (7th Cir. 2014) .............................................................................. 22

*Phillips v. Mezera*,
   2002 WL 31655208 (N.D. Ill. Nov. 25, 2002) ............................................. 13, 14

*Pittsfield Dev., LLC v. City of Chicago*,
   No. 17 C 1951, 2017 WL 5891223 (N.D. Ill. Nov. 28, 2017)................................. 15

*Pourghoraishi v. Flying J, Inc.*,
  449 F.3d 751 (7th Cir. 2006) ...................................................................................... 12

*Pro-Eco, Inc. v. Board of Comm'rs of Jay Cnty.*,
  57 F.3d 505 (7th Cir. 1995) ........................................................................................ 19

*Quinones v. Szorc*,
  771 F.2d 289 (7th Cir. 1985) ...................................................................................... 16

*RJB Prop., Inc., v. Board of Ed. of City of Chicago*,
  468 F.3d 1005 (7th Cir. 2006) .................................................................................... 15

*Rockstead v. City of Crystal Lake*,
  486 F.3d 963 (7th Cir. 2007) ...................................................................................... 18

*Rose v. Bd. of Election Com'rs for City of Chicago*,
  815 F.3d 372 (7th Cir. 2016) ........................................................................................ 5

*Russ v. Watts*,
  414 F.3d 783 (7th Cir. 2005) ...................................................................................... 19

*Sampson v. Vill. Discount Outlet, Inc.*,
  832 F. Supp. 1163 (N.D. Ill. 1993) ............................................................................ 17

*Sims v. Mulcahy*,
  902 F.2d 524 (7th Cir. 1990) ...................................................................................... 14

*Smith v. Gomez*,
  550 F.3d 613 (7th Cir. 2008) ................................................................................ 16, 17

*Snedeker v. Girot*,
  No. 16-CV-10907, 2017 WL 3704843 (N.D. Ill. Aug. 28, 2017) ............................. 15

*Southwest Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*,
  830 F.2d 1374 (7th Cir. 1987) ...................................................................................... 6

*Stone v. Am. Fed'n of Gov't Employees*,
  135 F. Supp. 2d 873 (N.D. Ill. 2001) ......................................................................... 12

*Tun v. Whitticker*,
  398 F.3d 899 (7th Cir. 2005) ...................................................................................... 20

*Viehweg v. City of Mount Olive*,
  559 F. App'x 550 (7th Cir. 2014) ............................................................................... 21

*Voyles v. Sandia Mortg. Co.*,
  196 Ill. 2d 288 (Ill. 2001) ........................................................................................... 23

*Warth v. Seldin*,
  422 U.S. 490 (1975) ............................................................................................. 6

*Waters v. City of Chicago*,
  580 F.3d 575 (7th Cir. 2009) ............................................................................... 8

*Werch v. City of Berlin*,
  673 F.2d 192 (7th Cir. 1982) ............................................................................... 8

*Whitaker v. Ameritech Corp.*,
  129 F.3d 952 (7th Cir. 1997) ............................................................................... 5

*Whiting v. Wexford Health Sources, Inc.*,
  839 F.3d 658 (7th Cir. 2016) ............................................................................. 11

*Williamson County Regional Planning Commission v. Hamilton Bank*,
  473 U.S. 172 (1985) ........................................................................................... 18

*Winkfield v. City of Chicago*,
  No. 12 C 3750, 2013 WL 1809920 (N.D. Ill. Apr. 29, 2013) .............................. 8

*Zubek v. City of Chicago*,
  No. 04 C 5399, 2006 WL 1843396 (N.D. Ill. July 5, 2006) ................................ 9

## STATUTES

42 U.S.C. § 1981 ................................................................................................. 1, 12

42 U.S.C. § 1982 ................................................................................................. 1, 13

42 U.S.C. § 1983 ..................................................................................................... 1

42 U.S.C. § 1985 ................................................................................................. 1, 16

42 U.S.C. § 1986 ................................................................................................. 1, 17

815 ILCS § 505/1(c) ............................................................................................... 22

815 ILCS § 505/1(f) ............................................................................................... 22

815 ILCS § 505/10a ............................................................................................... 22

MCC § 13-124-015(a) ............................................................................................ 20

**PRELIMINARY STATEMENT**

Defendants the City of Chicago (the "City"), Judith Frydland,[1] Commissioner of the City's Department of Buildings, and Grant Ullrich, a Deputy Commissioner of the City's Department of Buildings (collectively hereinafter referred to as the "City Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiffs Notre Dame Affordable Housing and Charlene Marsh's ("Plaintiffs") Complaint.[2] This is a refiled action brought by the same Plaintiffs against defendants the City and Judith Frydland (and other defendants not named here) that was previously dismissed by this Court on June 26, 2018, *Notre Dame Affordable Housing, et al. v. Emanuel, et al.*, 18-cv-578 (N.D. Ill.). In addition, Plaintiffs previously brought a state court action on the same subject matter and involving the same parties, which was dismissed on the merits on October 25, 2018 for failure to state a claim, *Marsh et al. v. City of Chicago, et al.*, 2018-L-011437 (Cook County Cir. Ct.). Finally, in addition to refiling this federal action on December 11, 2018, Plaintiffs — by different attorneys — are currently pursuing a second state court action also filed on December 11, 2018, *Notre Dame Affordable Housing v. City of Chicago, et al.*, 2018-L-013513 (Cook County Cir. Ct.).

All these cases concern an alleged unlawful demolition of property at 7954 S. Halsted and 808–810 W. 80th Street in the City of Chicago. In Counts I through X, Plaintiffs have brought claims under federal statutes — 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986 — and the United States Constitution, as well as supplemental state law causes of action, each based on varying unsupported theories that the property one plaintiff owned was demolished illegally and

---

[1]   Commissioner Frydland is incorrectly named as Judith "Fryland" in the Complaint.

[2]   While the caption states that this action is brought on behalf of Plaintiffs and others similarly situated, there are no class allegations in the Complaint, and therefore no basis exists to treat this lawsuit as a class action.

unlawfully.[3] Plaintiffs' claims are barred by res judicata, because the Circuit Court of Cook County dismissed a case arising out of the same facts in 2018. Even if they were not, however, Plaintiffs' allegations of racial discrimination and conspiracy are too vague and conclusory to support their causes of action, and their failure to exhaust state law remedies prior to bringing this action in federal court requires that the Complaint be dismissed. For the reasons stated herein, this action should be dismissed in its entirety and with prejudice.

## ALLEGATIONS

Plaintiff Notre Dame Affordable Housing ("Notre Dame") alleges that it is an Illinois not-for-profit corporation whose principal officer is Plaintiff Charlene Marsh ("Marsh"). (Compl. ¶¶ 1–3.) Notre Dame alleges that it owns property via a quit claim deed at 7954 S. Halsted and 808–810 W. 80th Street in the City of Chicago (the "Subject Properties"). (Id. ¶ 22.) According to Plaintiffs, sometime after December 11, 2017, the structures on the Subject Properties were demolished by Defendants City of Chicago, Judy Frydland, the Commissioner of the Department of Buildings, and Grant Ullrich, a Deputy Commissioner of the Department of Buildings, who are referred to by Plaintiffs in the Complaint as the "City of Chicago Defendants." (Id. ¶¶ 12, 24.) Despite naming Frydland and Ullrich as defendants, Plaintiffs' Complaint includes no allegations about them except for alternatively pleading in conclusory fashion that "[o]n information and belief, Frydland and Ullrich personally participated in acts and omissions set forth below or they were personally aware of the acts and omissions set forth below and condoned and/or ratified the acts or omissions." (Id. ¶ 12.)

---

[3]  Counts I through IX are brought against all defendants, including co-defendant Delta Demolition. Count X is brought solely against the City of Chicago Defendants and Count XI is brought solely against Delta Demolition.

Plaintiffs allege that the City Defendants, "or [a]lternatively, Delta Demolition failed to properly serve Plaintiffs with a Notice of Demolition" and that "no prior building inspections identified any conditions which warranted an Emergency Wreck and Remove permit." (Compl. ¶¶ 25–26, 33). According to Plaintiffs, the demolition was "illegal and unlawful and violates Plaintiffs' [civil] rights . . . because the demolition of the Subject Properties took place because of the fact that plaintiff Marsh is African-American." (*Id.* ¶ 49.) Plaintiffs also allege that the demolition was "in relation to [plaintiff Marsh] writing to Mayor Rahm Emmanuel to complain about possible theft of certain properties from local land owners by city officials," and because plaintiff Marsh was "not part of the 'Chicago Machine' which generally rewards Caucasian businessmen who are well-connected with other [City] officials." *Id.* ¶¶ 51, 53.

According to Plaintiffs, the City is responsible for this demolition because the alleged discriminatory conduct was part of a "widespread practice and/or custom of discriminating against owners or person[s] associated with owners of property based upon the color of their skin." *Id.* ¶ 55. Plaintiffs claim, "[o]n information and belief," that "other persons of color associated with owners of similarly situated properties have had their properties demolished under similar circumstances," and these practices are "so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* ¶ 55. Plaintiffs also allege that they were "effectively denied . . . adequate post-deprivation remedies" on account of "misstatements" made by a City employee, Dennis Rafael, whom Plaintiffs allege is an employee of the City's Department of Buildings. (*Id.* ¶¶ 40–43.) They also allege that they have not been compensated by the City Defendants because of "certain deceptions and misrepresentations made by one or more of the Chicago Defendants." (*Id.* ¶¶ 60–61, 104.)

3

Within each count, Plaintiffs repeat boilerplate allegations that the demolition was conducted "for the purpose of depriving Plaintiffs' of the Subject Properties" as part of a "scheme to facilitate the purchase and use of the land once occupied by [the] Subject Properties by certain unknown third parties," who would "profit from the existence of a Tax Increment Financing ("TIF") Zone and Opportunity Zone." (Compl. ¶¶ 71–73, 80–82, 96–98, 105–107, 116–18, 133–135).

Based on these allegations, Plaintiffs bring the following causes of action:

- Deprivation of property and contractual rights on the basis of race under 42 U.S.C. § 1981 (Count I),

- Deprivation of the right to hold property on the basis of race under 42 U.S.C. § 1982 (Count II),

- Violation of equal protection of the law under 42 U.S.C. § 1983 and the Fourteenth Amendment (Counts III and VII),

- Conspiracy to violate civil rights under 42 U.S.C. § 1985(3) (Count IV),

- Taking of property under the Fifth Amendment, as incorporated by the Fourteenth Amendment (Count V),

- Violation of Plaintiffs' substantive due process rights (Count VI),

- Failure to prevent conspiracy to violate civil rights under 42 U.S.C. § 1986 (Count VIII), and

- Consumer fraud and intentional interference with economic advantage under Illinois law (Counts IX and X).

## PROCEDURAL HISTORY

In addition to this action, Plaintiffs have brought the following cases involving the same operative facts.

- *Notre Dame Affordable Housing, et al. v. Emanuel, et al.*, 18-cv-578 (N.D. Ill.), filed January 26, 2018, dismissed by this Court for failure to pay filing fee by order dated June 26, 2018.

4

- *Marsh et al. v. City of Chicago, et al.*, 2018-L-011437 (Cook County Cir. Ct.), filed October 22, 2018, dismissed for failure to state a claim upon which relief can be granted by order dated October 25, 2018.

- *Notre Dame Affordable Housing v. City of Chicago, et al.*, 2018-L-013513 (Cook County Cir. Ct.), filed December 11, 2018, currently pending.

ARGUMENT

## I.    Plaintiffs' Claims Are Barred by Res Judicata.

This action must be dismissed because Plaintiffs' claims were previously the subject of a final judgment on the merits involving the same parties or parties in privity with them. Because the prior judgment here is from an Illinois state court, Illinois preclusion law applies. *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007). Res judicata bars a subsequent action under Illinois law when three requirements are met: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there is an identity of cause of action; and (3) there is an identity of parties or their privies." *Id.* "In Illinois, res judicata extends to all questions actually decided in a previous action as well as to all grounds of recovery and defenses which might have been presented in the prior litigation." *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 955–56 (7th Cir. 1997) (citing *La Salle Nat'l Bank v. Cnty. Bd. of Sch. Trustees*, 61 Ill.2d 524 (1975)).

Each of these elements applies here. First, the Circuit Court dismissed Plaintiffs' claims on the basis that they "fail[ed] to state a claim upon which relief can be granted." *See* Order dated Oct. 25, 2018 (attached hereto as **Exhibit A**).[4] In Illinois, an involuntary dismissal for failure to state a claim operates as an adjudication on the merits. *Rose v. Bd. of Election Com'rs for City of Chicago*, 815 F.3d 372, 374 (7th Cir. 2016) (citing Ill. S.Ct. R. 273). Second,

---

[4]    The Court can consider the state court documents for purposes of this Motion because they are subject to judicial notice. *See Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994).

5

Plaintiffs' Complaint in that action (attached hereto as **Exhibit B**) clearly involves the same destruction of property complained of in this action, specifying the same property addresses and complaining of "fraud." Each of Plaintiffs' claims thus arises out of the same operative facts, and could have been raised in the prior litigation. Third, the Plaintiffs are the same, and the City Defendants were either named in the Circuit Court action (the City and the Commissioner of Buildings) or were in privity with the named defendants (Deputy Commissioner Ullrich). *See Mandarino v. Pollard*, 718 F.2d 845, 850 (7th Cir. 1983) ("A government and its officers are in privity for purposes of res judicata.") Plaintiffs are thus precluded from raising their claims by the final judgment of the Circuit Court of Cook County, and res judicata warrants dismissal with prejudice of Counts I through X as to the City Defendants.

**II.     Plaintiff Marsh's Claims Also Should Be Dismissed Because She Lacks Standing.**

In addition to being barred by res judicata, Plaintiff Marsh lacks standing to bring her claims. This case surrounds the demolition of the Subject Properties, but admittedly Marsh does not own them. Rather, Plaintiffs allege that Notre Dame holds the quit claim deed, (Compl. ¶20), and plaintiff Marsh admitted that she does not own any property. *See Notre Dame Affordable Housing, et al. v. Emanuel, et al.*, 18-cv-578 (N.D. Ill.), Dkt. # 11. The threshold question in every federal case is "whether the plaintiff has made out a case or controversy . . . within the meaning of [Article] III." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To have standing, Marsh must allege an injury that affects her own legal rights. *J.F. Shea Co. v. City of Chicago*, 992 F.2d 745, 749 (7th Cir. 1993). She cannot rest her claim to relief on the legal rights or interests of third parties. *Id*. (citing *Warth*, 422 U.S. at 499). As a general rule, "a natural person is not the real party in interest for bringing a suit based on a corporation's rights, even when the person is the sole owner of the corporation." *Knopick v. Jayco, Inc.*, 895 F.3d 525, 529 (7th Cir. 2018). Although the Complaint alleges that Marsh is the principal officer of Notre Dame, well-

established precedent holds that shareholders, officers, and employees lack standing to bring claims for an injury to a corporation. *See Southwest Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374, 1378 (7th Cir. 1987) (derivative injuries sustained by employees, officers, stockholders, and creditors of an injured company does not constitute an injury sufficient to confer standing); *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 777 (7th Cir. 1994); *J.F. Shea Co.*, 992 F.2d at 749. Therefore, Marsh does not have standing in this case because Counts I through X allege an injury affecting the corporation, rather than her own personal rights.

### III.     Frydland And Ullrich Should Be Dismissed As Defendants.

Even if res judicata did not bar Plaintiffs' claims, Frydland and Ullrich still should be dismissed as Defendants. Plaintiffs appear to bring each of Counts I through X against Commissioner Judith Frydland and Deputy Commissioner Grant Ullrich in their individual capacities (the "Individual Defendants"). But the Individual Defendants should be dismissed as defendants because the Complaint does not allege facts supporting their personal involvement. "A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) (citing *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981)). Instead, the Complaint lumps all of the Defendants together, failing to explain which of them took the complained-of actions. *See, e.g.*, (Compl. ¶¶ 35 ("One or more of the [City] Defendants never posted the December 11th Permit on the Subject Property"); 71 ("Defendants unlawfully and illegally caused the subject properties to be demolished"). These vague statements — pleaded using defined terms or set forth in the alternative, and unsupported by specific facts alleging the involvement of each defendant — are insufficient to state a claim against the Individual Defendants for personally violating Plaintiffs' rights. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (holding that

vague allegations that "one or more of the defendants" acted against plaintiff "[did] not adequately connect specific defendants to illegal acts.") Nor can Plaintiffs' recitation of boilerplate legal standards for personal involvement suffice to impose individual liability. (Compl. ¶ 12 ("On information and belief, Defendants [Frydland] and Ullrich, personally participated in acts and omissions set forth below or they were personally aware of the acts and omissions set forth below and condoned and/or ratified the acts or omissions.")); *see Patton v. Przybylski*, 822 F.2d 697, 701 (7th Cir. 1987) (holding that "boilerplate" allegations fell "far short" of alleging defendant's personal involvement). The only factual allegations directed against any individual do not concern Ullrich or Frydland, but rather pertain to an alleged city employee's provision of allegedly incorrect information after the demolition. (Compl. ¶ 40.) As for Ullrich and Frydland, Plaintiffs allege that they seek to impose liability for "their role in causing the Subject Building to be demolished" but never describe what that role was. (*Id.* ¶ 63.) For these reasons, Frydland and Ullrich should be dismissed as defendants in this matter.

## IV. Plaintiffs' Federal Claims, Counts I–VIII, Should Be Dismissed As To The City For Failure To Allege *Monell* Liability.

In addition to Points I through III, *supra*, which independently warrant dismissal, Counts I–VIII are federal civil rights claims that must be dismissed as to the City for failure to allege any basis for municipal liability as set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Under §§ 1981, 1982, 1983, 1985, and 1986, a municipality is only liable for the deprivation of constitutional rights caused by its own official policy or custom. *See Werch v. City of Berlin*, 673 F.2d 192, 195 (7th Cir. 1982) (citing *Monell*, 436 U.S.at 658); *see also Lewis v. Schmidt*, No. 10 CV 1819, 2011 WL 43029, at *3 (N.D. Ill. Jan. 4, 2011) ("to state a claim under §§ 1981, 1982, 1983, or 1985 against a municipality, a plaintiff must allege that the municipality had an official policy or custom that caused the injury."); *see also Winkfield v. City of Chicago*,

8

No. 12 C 3750, 2013 WL 1809920, at *1 (N.D. Ill. Apr. 29, 2013) ("The *Monell* doctrine applies with equal force to . . . §§ 1985 and 1986 claims."). A plaintiff may establish municipal liability by showing: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009). The complaint must allege that an official policy or custom not only caused the constitutional violation, but was the moving force behind it, *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007), and the City's policy "must be the source of the discrimination." *Zubek v. City of Chicago*, No. 04 C 5399, 2006 WL 1843396, at *4 (N.D. Ill. July 5, 2006). Plaintiffs' complaint fails to allege any of the three types of municipal liability.

First, Plaintiffs do not allege that their injury was the result of the application of an express city policy. In fact, Plaintiffs' allegations specify that the City Defendants *failed* to follow City policy. (Compl. ¶¶ 25–33.) Second, Plaintiffs' boilerplate allegations of widespread practice fail to allege this type of municipal liability. Plaintiffs allege only in conclusory fashion that the demolition of their property was the result of the City's widespread practice or custom of discriminating against African-American property owners. (*Id.* ¶ 55.) To plead a widespread practice or custom, a plaintiff must allege that an unconstitutional practice was so persistent and widespread that City policymakers should have known about the behavior. *Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001). The court, however, will not "infer a custom or practice from a single incident." *Estate of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005) (finding that allegations of more than 200 incidents of pepper spray use, standing alone, was insufficient to establish a widespread practice under *Monell*).

9

Here, Plaintiffs have not alleged "a specific pattern or series of incidents that support the general allegation of a custom or policy." *Zubek*, 2006 WL 1843396, at *5. Instead, Plaintiffs base their claim of a widespread practice on Marsh's own personal experience, and fail to identify any other instance of the City's alleged racist practice of demolishing the property of African-American residents. *Id*. at 5 (holding that "a plaintiff's own isolated experiences are insufficient to establish custom"); *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002) (holding that three instances of alleged unconstitutional conduct is "too few to indicate that the City had a widespread custom of which City policymakers had reason to be aware.")

Finally, Plaintiffs' attempt to plead the third type of *Monell* claim also fails. Plaintiffs allege that Individual Defendants Frydland and Ullrich — the Commissioner and a Deputy Commissioner of the Department of Buildings — are "final policy makers relative to the City of Chicago Department of Buildings." (Compl. ¶ 9.) First, this does not allege that these defendants were final policy-makers for the *municipality* — only one of its departments. Further, "policy-making" means establishing rules for the conduct of government, not simply executing the laws as individuals in the Department of Buildings do. The Complaint includes no allegations suggesting that these defendants' roles were anything more than executing City policy. *See Garcia v. City of Chicago*, 390 F. Supp. 2d 701, 705 n.2 (N.D. Ill. 2005) (fact that "Department of Buildings . . . implements and enforces the City Council's demolition policies" did not render "the Department of Buildings or its commissioner policymakers.") (citing *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992)). Moreover, Ullrich's alleged title of *Deputy* Commissioner contradicts the allegation that he is a final policy maker. (Compl. ¶ 7.)

Even if it were correct to label Defendants Frydland or Ullrich as individuals with final policy-making authority, any *Monell* claim predicated on their actions should be dismissed for

10

the reasons in the Point III, *supra*: the allegations against Defendants Frydland and Ullrich are so conclusory and lacking in specifics that they do not constitute allegations that either Defendant violated Plaintiffs' rights. Plaintiffs fail to plead what final policy action or decision Frydland and Ullrich took that caused Plaintiffs' constitutional deprivation. Instead, Plaintiffs allege that they seek to impose liability against Frydland and Ullrich for "their role in causing the Subject Building to be demolished," but never describe what that role was. *See* (Compl. ¶ 12.) Since Plaintiffs have not sufficiently alleged that any policy-making defendant violated Plaintiffs' constitutional rights, the City cannot be held liable based on their actions. *See Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016) (holding that under the final policy-making individual theory, "negating individual liability will automatically preclude a finding of *Monell* liability"). Because Plaintiffs have not plead a viable *Monell* claim, their federal constitutional claims in Counts I–VIII should be dismissed as to the City.

**V.      Counts I, II, III, IV, VII and VIII Should Be Dismissed Because They Fail To Allege Federal Civil Rights Claims Against The City Defendants.**

Counts I, II, III, IV, VII, and VIII are federal civil rights claims under §§ 1981, 1982, 1983, 1985 and 1986 that allege intentional discrimination on the basis of race. In addition to Points I through IV *supra*, which independently warrant dismissal, these counts should be dismissed as to the City Defendants because Plaintiffs fail to plead facts demonstrating racial animus. Plaintiffs' allegations of discrimination are conclusory and lack factual support. For instance, Plaintiffs repeat the same conclusory allegation in most of their federal civil rights counts: "Plaintiffs have had their property and contractual rights deprived based upon racist mistreatment and personal animus and have suffered damages." *See, e.g.*, (Compl. ¶¶ 70, 79, 87, 105, 115.) Such general allegations, without additional factual support, fail to state a claim of discrimination. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility

11

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

Plaintiffs must plead intentional discrimination to maintain their claims under the federal civil rights statutes. Plaintiffs, however, fall far short of doing so. The Complaint states that "Defendants' took action against Plaintiff Marsh because of her race" and because "she is a confident, articulate and strong woman of African-American decent." (Compl. ¶¶ 49–50.) Without more, this is essentially a "request to infer discriminatory intent from the fact that [Plaintiff Marsh] is African-American," but the Seventh Circuit "explicitly prohibits such an inference." *Gardner v. City of Waukegan*, No. 98 C 5372, 1999 WL 410009, at *7 (N.D. Ill. June 4, 1999) (dismissing claims under §§ 1981, 1982, and 1983 for making conclusory allegations of the defendants' intent to discriminate against the plaintiff). Plaintiffs' allegations are legally insufficient to state a claim of discrimination, and accordingly, these counts should be dismissed with prejudice.

### A.     Plaintiffs fail to state a claim under § 1981 (Count I).

Plaintiffs have no factual basis to assert a claim under § 1981. Litigants often invoke § 1981 to "assert their rights to be free from discrimination while making and enforcing . . . contracts." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006). To assert a claim under this section, Plaintiffs must show that they are (1) a member of a racial minority; (2) the defendants had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract. *Id*. To prevail under this section, a plaintiff must allege that she is a victim of intentional discrimination. *Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661, 669 (7th Cir. 1996).

Here, Plaintiffs make conclusory allegations concerning the City Defendants' discriminatory intent. *See supra* Point V (discussing Plaintiffs' failure to plead intentional

discrimination). Furthermore, the Complaint does not specify how the City Defendants interfered in Plaintiffs ability to make or enforce a contract. Indeed, in order to bring a § 1981 claim there must at least be a contract. *Gonzalez v. Ingersoll Mill. Mach. Co.*, 133 F.3d 1025, 1034 (7th Cir. 1998); *Stone v. Am. Fed'n of Gov't Employees*, 135 F. Supp. 2d 873, 875 (N.D. Ill. 2001). Plaintiffs' conclusory assertion that they had "their property and contractual rights deprived based upon racist mistreatment and personal animus" cannot support a § 1981 claim, no matter how often Plaintiffs repeat this allegation in their Complaint. (Compl. ¶¶ 70, 79, 87, 105, 115.) Plaintiffs' § 1981 claim should be dismissed because there is no contractual interest alleged in the Complaint that the City Defendants could have interfered with.

### B. Plaintiffs fail to state a claim under § 1982 (Count II).

Plaintiffs' Count II asserts a violation of § 1982, and proceeds to merely incorporate the identical substantive conclusory allegations asserted in Count I. Plaintiffs' § 1982 claim is deficient because they fail to plead facts demonstrating racial animus. Section 1982 provides that "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Congress enacted this provision to prohibit all racial discrimination, both private and public, in the sale and rental of property. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). To establish a claim under § 1982, Plaintiffs must show that: (1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination involved one of the activities enumerated in the statute. *Phillips v. Mezera*, 2002 WL 31655208, at *6 (N.D. Ill. Nov. 25, 2002), *aff'd*, 2003 WL 22954328 (7th Cir. Dec. 11, 2003). Like Plaintiffs' other civil rights claims, their allegations under § 1982 should be dismissed because Plaintiffs have not alleged facts demonstrating Defendants' racial animus. *See supra* pp. 11-12.

13

This Court's decision in *Phillips* is instructive. The plaintiff, an African-American owner of an apartment building, alleged a violation of § 1982 when the City of Joliet condemned his property and evicted his tenants after the property was cited for various building code violations. *Id.* at *2. The court determined that although several elements of a § 1982 claim were established by the plaintiff, the plaintiff failed to show that he was treated differently from similarly-situated white property owners, and thus, could not establish that the city intended to discriminate against the plaintiff based on his race. *Id.* at 8. Like *Phillips*, the allegations in the present case do not contain the necessary factual support to allege intentional discrimination. Therefore, Count II should be dismissed because Plaintiffs' conclusory allegations of discrimination are insufficient to state a claim under § 1982.

### C. Plaintiffs' § 1983 claim should be dismissed because they do not allege intentional discrimination nor a "class of one." (Counts III, VII).

In Count III and VII, Plaintiffs allege that they were discriminated against based on their race in violation of the Equal Protection Clause of the Fourteenth Amendment and that they were treated differently from similarly-situated individuals under a "class of one" theory. (Compl. ¶¶ 86, 122.) "In an Equal Protection claim, the petitioner faces the tougher standard of proving purposeful and intentional acts of discrimination based on her membership in a particular class not just on an individual basis." *Forrester v. White*, 846 F.2d 29, 32 (7th Cir. 1988). To state an equal protection claim under § 1983, Plaintiffs must allege that they are: (1) members of a protected class; (2) are similarly situated to members of the unprotected class; (3) were treated differently from members of the unprotected class; and (4) the defendants acted with discriminatory intent. *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993) (internal quotation omitted).

14

Discriminatory intent implies that the decision maker "selected or reaffirmed a particular course of action at least in part because, not merely in spite of its adverse effects upon an identifiable group." *Sims v. Mulcahy*, 902 F.2d 524, 539 (7th Cir. 1990) (internal citations omitted). Here, Plaintiffs make no attempt in their Complaint to show that they were treated differently from members of the unprotected class. Additionally, Plaintiffs assert no facts that Defendants acted with discriminatory intent. *See supra* pp. 11-12. Their failure to assert these facts is fatal to Plaintiffs' Equal Protection claim.

Nor can Plaintiffs claim a violation of their rights under the Equal Protection Clause under the "class of one" theory set out in Count VII. To succeed on under this equal protection theory,

> a plaintiff must prove that a state, without rational reason, treated it differently from other similarly situated entities. The plaintiff bears a very significant burden of offering evidence that other entities are similarly situated in all relevant respects. The plaintiff's evidence must be such that it allows a reasonable jury to eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification.

*RJB Prop., Inc., v. Board of Ed. of City of Chicago*, 468 F.3d 1005, 1009–10 (7th Cir. 2006) (citations and internal quotations omitted). Plaintiffs have not met this high burden because they have alleged no facts setting forth comparator properties that were so similarly situated as to permit an inference that Plaintiffs were treated differently from these comparable properties without any justification. Indeed, Plaintiffs do not allege that comparators even *exist* beyond a vague and conclusory sense: that "[o]ther properties" in a "similar condition" in the "vicinity" were not subject to a demolition order in the same way as Plaintiffs' property. (Compl. ¶ 122.) These "comparators" — an unidentified number of properties, of unidentified condition, within an unidentified vicinity to Plaintiffs' property — cannot serve as the basis for a "class of one" equal protection claim. *See Pittsfield Dev., LLC v. City of Chicago*, No. 17 C 1951, 2017 WL

15

5891223, at *10 (N.D. Ill. Nov. 28, 2017) (allegation that "no other surrounding properties" were affected by a particular ordinance was "an insufficient metric by which to allege disparate treatment"); *Snedeker v. Girot*, No. 16-CV-10907, 2017 WL 3704843, at *4 (N.D. Ill. Aug. 28, 2017) (holding that similar "general allusions to comparators" were "facially deficient.") Plaintiffs' "class of one" equal protection claim should therefore be dismissed.

###### D.       Plaintiffs fail to state a § 1985(3) conspiracy claim (Count IV).

In Count IV, Plaintiffs allege a violation of 42 U.S.C. § 1985(3), which applies to conspiracies to deprive persons of equal protection of the law. A claim under § 1985(3) requires that the conspiracy against the plaintiff be motivated by racial, or other class-based discriminatory animus. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). To plead a § 1985(3) claim, a plaintiff must allege: (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens. *Majeske v. Frat. Order of Police, Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996). To succeed on their § 1985 claim, Plaintiffs must plead "sufficient facts from which a conspiracy can be inferred." *Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985). While the facts describing the conspiratorial agreement can be pleaded generally, the facts documenting the overt acts must be pleaded specifically. *Id*. The plaintiff must also show that the conspiracy's purpose was the "deprivation of the equal enjoyment of rights secured by the law." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982) ("To sufficiently state a cause of action the plaintiff must allege some facts that demonstrate that his race was the reason for the defendant's [conduct].")

Plaintiffs have not alleged any facts that show the existence of a conspiracy. Plaintiffs repeatedly allege that the City Defendants "scheme[d] to facilitate the purchase and use of the

16

land once occupied by [Plaintiffs] by certain unknown third parties. . . ." (Compl. ¶¶ 72, 81, 89, 97, 107.) However, bald assertions of a conspiracy involving unknown persons is not sufficient to plead a § 1985 claim. *Jafree*, 689 F.2d at 644. Plaintiffs' Complaint is devoid of any facts describing a conspiratorial agreement among Defendants and the Complaint is silent in documenting any overt acts committed in furtherance of that agreement. Plaintiffs do not identify which Defendants were parties to the agreement and they fail to allege facts suggesting a racial discriminatory animus behind the alleged conspiracy. *See supra* pp. 11-12. Plaintiffs' bare allegations cannot support a conspiracy claim, and therefore, Count IV should be dismissed.

>  **E.  Plaintiffs' § 1986 claim should also be dismissed (Count VIII).**

A claim under 42 U.S.C. § 1986 cannot exist without a plausible § 1985 claim. *See Smith*, 550 F.3d at 617. A § 1986 claim, "creates a cause of action against a person that neglects or refuses to stop a conspiracy to violate the civil rights of a member of a protected class." *Malone v. Am. Friends Serv. Comm.*, 213 F. App'x 490, 494 (7th Cir. 2007). However, a claim under § 1986 can only be asserted where a defendant has violated § 1985(3). *See Hicks v. Resolution Tr. Corp.*, 970 F.2d 378, 382 (7th Cir. 1992) (". . . in the absence of a viable claim under § 1985(3), a § 1986 claim cannot exist."); *Sampson v. Vill. Discount Outlet, Inc.*, 832 F. Supp. 1163, 1169 (N.D. Ill. 1993) ("Section 1986. . . is totally dependent upon § 1985 for vitality.") Because Plaintiffs have not asserted a viable § 1985 claim, their § 1986 claim should also be dismissed.

> **VI.  Counts V And VI Should Be Dismissed Because Plaintiffs Fail To Plead A Takings Or Substantive Due Process Claim Against The City Defendants.**

In addition to Points I through IV, *supra*, which independently warrant dismissal, Counts V and VI should be dismissed as to the City Defendants for failure to exhaust administrative remedies and failure to state a claim. Plaintiffs repeat verbatim the same hodgepodge of allegations in Counts V and VI, which seek to impose liability based on the City Defendants'

alleged taking of Plaintiffs' property and the alleged failure to provide due process. (*Compare* Compl. ¶¶ 99–108 *with* Compl. ¶¶ 109–118.) These counts repeat boilerplate allegations of a scheme to deprive them of their property without any facts supporting these conclusory allegations. (*Id.* ¶¶ 106–108, 116–118.) In Counts V and VI, Plaintiffs also allege in conclusory fashion that the City failed to provide adequate pre- or post-deprivation remedies. (*Id.* ¶¶ 102–105, 112–114). However the Court construes the allegations in Counts V and VI, these claims must be dismissed on account of Plaintiffs' failure to exhaust state remedies — a requirement before Plaintiffs can bring federal constitutional claims regarding their property — and for their failure to allege plausible facts supporting their substantive due process theories.

### A.     Plaintiffs failed to allege that they exhausted state and local remedies.

Counts V and VI must be dismissed because Plaintiffs have failed to exhaust their state law remedies prior to bringing federal constitutional claims. "In *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), the Supreme Court articulated a special ripeness doctrine for takings and other constitutional property rights claims which precludes federal courts from adjudicating land use disputes until: (1) the regulatory agency has had an opportunity to make a considered definitive decision, and (2) the property owner exhausts available state remedies for compensation." *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 422 (7th Cir. 2010) (quoting *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000)).

Plaintiffs do not allege that any agency has had an opportunity to make a final decision, nor that they exhausted any available state remedies.[5] In fact, Plaintiffs already challenged the

---

[5]     Plaintiffs vaguely allege that they were somehow "denied . . . adequate post-deprivation remedies" because of purported misstatements by a City of Chicago employee as to the correct date of the properties' demolition. (Compl. ¶¶ 40–43, 104.) But Plaintiffs fail to explain how a city employee's actions could affect the availability of state law remedies such that Plaintiffs would be somehow exempt from the exhaustion requirement.

agency demolition action here by filing a state court action. *Marsh et al. v. City of Chicago, et al.*, 2018-L-011437 (Cook County Cir. Ct. Oct. 22, 2018). When their case was dismissed, Plaintiffs were required to appeal that decision to exhaust their state remedies. *See Rockstead v. City of Crystal Lake*, 486 F.3d 963, 965 (7th Cir. 2007) (plaintiff "must exhaust his state judicial remedies, if necessary by appealing an adverse decision"); *Conyers v. City of Chicago*, 162 F. Supp. 3d 737, 744 (N.D. Ill. 2016) (exhaustion requirement "applies to appellate remedies as well.") Rather than exhaust their remedies as required, Plaintiffs filed this action and omitted any mention of the prior state court action. [6] Plaintiffs have not alleged that they appealed their state court action, and no notice of appeal appears on the public docket. Plaintiffs' failure to exhaust thus cannot be cured, and dismissal with prejudice as to Counts V and VI is independently warranted under *Williamson County*.

**B.      Plaintiffs' allegations fail to state a substantive due process claim.**

Where, as in this case, a substantive due process claim involves the alleged deprivation of a property interest, as a preliminary matter, a plaintiff must first show "'either the inadequacy of state law remedies or an independent constitutional violation' before the court will even engage in . . . deferential rational-basis review." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) (quoting *Doherty v. City of Chicago*, 75 F.3d 318, 323–26 (7th Cir. 1996)). Plaintiffs cannot fulfill either requirement. Plaintiffs have not alleged inadequacy of state law remedies, and because each of Plaintiffs' constitutional claims is deficient, Plaintiffs cannot satisfy its obligation to plead an "independent constitutional violation." But even if Plaintiffs could meet their preliminary burden, the City Defendants' actions about which Plaintiffs complain affect no

---

[6]      Indeed, it appears that Plaintiffs have not only failed to exhaust their remedies at the state court level, but continue to attempt to litigate them there. *See Notre Dame Affordable Housing v. City of Chicago, et al.*, 2018-L-013513 (Cook County Cir. Ct. Dec. 11, 2018).

19

fundamental right, and therefore must only satisfy rational basis scrutiny. *See Pro-Eco, Inc. v. Board of Comm'rs of Jay Cnty.*, 57 F.3d 505, 514 (7th Cir. 1995). Under that standard, "[o]fficial conduct that represents an abuse of office . . . violates the substantive component of the due process clause only if it 'shocks the conscience.'" *Christensen v. Cty. of Boone, IL*, 483 F.3d 454, 464 (7th Cir. 2007) (citing *Russ v. Watts*, 414 F.3d 783, 789 (7th Cir. 2005)). Because of this high standard, "[c]ases abound in which the government action — though thoroughly disapproved of — was found not to shock the conscience." *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005). This rule is especially applicable in cases like this one: "[t]he Seventh Circuit has sharply circumscribed . . . [substantive due process's] use in cases involving the deprivation of a property interest, noting that substantive due process is not 'a blanket protection against unjustifiable interferences with property.'" *Adams v. City of Chicago Heights*, No. 09 C 5113, 2011 WL 686361, at *5 (N.D. Ill. Feb. 18, 2011) (quoting *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003)); *see also CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore*, 769 F.3d 485, 488 (7th Cir. 2014) (emphasizing that the Seventh Circuit, "like the Supreme Court . . . [has] never definitively concluded that any land-use decision actually amounted to a deprivation of property without substantive due process").

In this case, Plaintiffs plead in conclusory fashion that Defendants engaged in "a scheme to facilitate the purchase and use of the land once occupied by [the] Subject Properties by certain unknown third parties." (Compl. ¶ 117.) These allegations lack any supporting facts as required under *Iqbal.* 556 U.S. at 678. And as set forth above in Point V *supra*, Plaintiffs' allegations of racial discrimination are similarly deficient.

Further, none of the other allegations in Plaintiffs' Complaint come close to meeting the standard required to state a claim for substantive due process. Plaintiffs' allegations that the City

Defendants did not properly serve notice,[7] that Plaintiffs failed to comply with all the requirements of municipal or state law, or that the City's inspections in Plaintiffs' opinion did not "warrant" a demolition are also not the type of allegations that shock the conscience. (Compl. ¶¶ 25–33, 112.) Claims such as Plaintiffs' concerning the alleged failure to follow procedures for demolitions or takings of land are frequently dismissed for failure to allege a substantive due process claim because they do not involve conduct that shocks the conscience. *See Daw v. Consol. City of Indianapolis & Marion Cty.*, 734 F. App'x 357, 358 (7th Cir. 2018) (dismissing claim that city officials "violated [plaintiffs] substantive due-process rights by taking a portion of [their land] without reasonable justification") (internal quotation to record omitted); *Viehweg v. City of Mount Olive*, 559 F. App'x 550, 553 (7th Cir. 2014) (no substantive due process violation where "defendants knowingly petitioned for demolition without following the correct procedures.") Thus, Plaintiffs' substantive due process claims should be dismissed for failure to state a claim.

**VII.    Plaintiffs' State Law Claims Should Be Dismissed For Failure To State a Claim Against the City Defendants.**

In addition to Points I through III, *supra*, which independently warrant dismissal, Counts IX and X should be dismissed as to the City Defendants for failure to state a claim.

**A.    Plaintiffs' Consumer Fraud Act Claim Is Legally Deficient (Count IX).**

Plaintiffs' claim under the Consumer Fraud Act and Deceptive Business Practice Act ("Consumer Fraud Act" or the "Act") is legally flawed. Count IX should be dismissed because the present action fails to state a claim under the Act. First, the City is not subject to the Act

---

[7]    Plaintiffs cite to MCC § 13-124-015(a) as purportedly requiring the City of Chicago Defendants to send a notice of demolition to adjacent land owners, but that section only applies to property *owners* who are seeking to demolish properties and requires such an owner to notify his neighbors. In fact, this section specifically excludes those demolitions conducted "to protect against an imminent threat to the safety of the public" and demolitions "ordered or authorized by an administrative authority of competent jurisdiction."

21

because it is not a "person" as defined in § 1. Second, Plaintiffs cannot assert a Consumer Fraud Act claim because the City Defendants were not engaged in "trade" or "commerce."

The City is not a proper defendant because municipalities cannot be sued under the Act. The Consumer Fraud Act provides a remedy for consumers who have been victimized by deceptive or unfair business practices. *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1000 (7th Cir. 2018). The Act provides a private right of action to plaintiffs who suffer actual damages against any "person" who violates the Act. 815 ILCS § 505/10a. The Act defines "person" as "any natural person or his legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association. . . ." 815 ILCS § 505/1(c). Municipal corporations, however, cannot be sued under the Act. *Best v. Malec*, 09 C 7749, 2010 WL 2364412, at *7 (N.D. Ill. June 11, 2010) (finding that the City of Naperville is not a proper defendant under the Consumer Fraud Act). As such, Plaintiffs cannot pursue a Consumer Fraud Act claim against the City.

Plaintiffs are also barred from bringing a claim against Defendants Frydland and Ullrich because the parties were not involved in "trade or commerce." To state a claim under the Act, Plaintiffs must allege, in part, that the deceptive act occurred in a course of conduct involving trade or commerce. *Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014). The terms "trade" and "commerce" are defined as "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed. . . ." 815 ILCS § 505/1(f). For the present action to fall under the purview of the Act, the Individual Defendants would have had to engage in deceptive conduct while advertising or offering some merchandise to Plaintiffs. *See G & G Closed Circuit Events, LLC v. Castillo*, 327 F. Supp. 3d 1119, 1133–34 (N.D. Ill. 2018); *see also Falk v. Perez*, 973 F. Supp. 2d 850, 868

(N.D. Ill. 2013) (finding that the eviction of a tenant does not constitute "trade" or "commerce" under the Act). Because there are absolutely no such facts to support such a claim under the Act, Count IX should be dismissed with prejudice.

### B. Plaintiffs Have Not Stated a Claim For Intentional Interference With Prospective Economic Advantage (Count X).

Count X should be dismissed because Plaintiffs have not alleged the requisite elements of this state-law claim, which requires "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015) (citing *Voyles v. Sandia Mortg. Co.*, 196 Ill. 2d 288, 300–01 (Ill. 2001)).

The Complaint only vaguely alleges the existence of "certain third parties and veteran beneficiaries," without any factual allegations as to who these parties were or what their expected relationship with Plaintiffs was, much less that they were so concrete as to constitute a reasonable expectancy of a business relationship. (Compl. ¶ 147); *see Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machines Corp.*, 520 F. Supp. 2d 1012, 1022 (N.D. Ill. 2007) ("A 'reasonable expectation' requires more than the hope or opportunity of a future business relationship.") (citation omitted), *aff'd*, 547 F.3d 882 (7th Cir. 2008). Even if Plaintiffs had alleged that some expectancy existed, Plaintiffs do not allege that the City Defendants had any knowledge of it.

Furthermore, Plaintiffs' own allegations undercut any motivation to interfere with business relationships on the part of the City Defendants: Plaintiffs allege that City Defendants' goal was to "facilitate the purchase and use of the land . . . by certain unknown third parties" — not to interfere with some unspecified business relationship. (Compl. ¶ 97.) Lastly, Plaintiffs'

23

allegations focus entirely on the actions City Defendants purportedly took against Plaintiffs, *see, e.g.*, (Compl. ¶¶ 24, 48, 51–53), but "[i]t is well established that tortious interference 'must be directed toward the third party or parties with whom the plaintiff had the business expectancy — not simply toward the plaintiff.'" *House of Brides, Inc. v. Alfred Angelo, Inc.*, 11 C 07834, 2014 WL 64657, at *10 (N.D. Ill. Jan. 8, 2014) (quoting *Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 992 (N.D. Ill. 2006)). Plaintiffs' claim for intentional interference with prospective economic advantage should accordingly be dismissed.

## CONCLUSION

For the foregoing reasons, the City Defendants respectfully request that the Court enter an order dismissing with prejudice Plaintiffs' Complaint against the City Defendants and granting such other relief as it deems just and proper.

Date:   February 6, 2019                              Respectfully submitted,

EDWARD N. SISKEL,
Corporation Counsel for the City of Chicago

By:     /s/ Jennifer Zlotow

Jennifer Zlotow
Oscar Piña
Bradley Wilson
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 N LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-7040 / 742-0797 / 744-7686
Jennifer.Zlotow@cityofchicago.org
Oscar.Pina@cityofchicago.org
Bradley.Wilson@cityofchicago.org

*Attorneys for City Defendants*

# EXHIBIT A

## Dismissal Order dated Oct. 25, 2018

Order to Sue or Defend as an Indigent Person                                    CCG N689 C-30M-6/27/07

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Charlene Marsh - PETITIONER
_____
                              **Plaintiff/Petitioner**         No. ~~2626418~~  *L8C11437*

                    v.

City of Chicago
_____
                              **Defendant/Respondent**         Calendar  *Z*

### ORDER

    This matter coming before the Court on an Application and Affidavit to Sue or Defend as an Indigent Person, the Court being fully advised in the premises, **IT IS HEREBY ORDERED;**

Pursuant to Supreme Court Rule 298 and 735 ILCS 5/5-105:

☐    The applicant is permitted to sue or defend without payment of fees, costs or charges. Fees for the reproduction of any documents contained in the court file or the electronic docket are not waived without specific order of court. The applicant may be ordered to pay any portion of the waived fees or costs out of a settlement or judgment resulting from this action.

☑    The application is denied for the following reason(s): PETITIONER FAILS TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED. *This case is hereby dismissed and the status date of 12/20/18 is stricken.* _____.

☐    Payment shall be: ☐made by _____ OR ☐deferred until _____ OR ☐other _____
                         (date)                        (date)

                             **ENTERED:**

    JUDGE JAMES P. FLANNERY

       OCT 25 2018                    Dated: _____
    Circuit Court-1505

                                    _____Judge_____         Judge's No

Payment should be made by cash, money order or cashier's check, directly to the Clerk of the Circuit Court of Cook County at the courthouse where you filed your application.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

ORIGINAL - COURT FILE

**EXHIBIT B**

**Plaintiffs' State Court Complaint**

Complaint-Verified (This form replaces CCMD-8A)                              (2/25/05) CCM N008

FILED DATE: 10/22/2018 2:04 PM  2018L011437

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Charlene Marsh Notre Dame Attorney University

Plaintiff(s)

v.

City of Chicago Commissioner of Bldg.

Defendant(s)

No. _____ 2018L011437

Contract _____

Amount Claimed $ 3,000,000.00

Return Date _____

COMPLAINT

The Plaintiff(s) claim(s) as follows:

The City of Chicago Dept of Bldg demolished my building
At 7954 S. Halsted / 808-810 W. 80th ST due to fraud.
The Bldg was demolished on Dec 11, 2017. I made a
Claim with the City Insurance office At 30 N. LaSalle, 8th 7th
Claim # 17-50198-01 given to me by City of Chicago
Attorney Dennis Rafael on Oct 22, 2018. Mr. Rafael called me
on Friday, Oct 19, 2018 at 3pm telling me to sue the City
by Monday, Oct 22, 2018. Which I told him the paperwork
that I had provided by the building department states Bldg
demolished on Dec 11, 2017. He replied he would call me back

I, CHARLENE MARSH _____, certify that I am the _____
          (Name)                                                    (Name of Attorney if applicable)
plaintiff in the above entitled action. The allegations in this complaint are true.

Atty. No.: _____  Pro Se 99500        Dated: 10/22/2018 , _____
Atty. (or Pro Se Plaintiff):
Name: CHARLENE MARSH: Notre Dame Attorn      _Charlene Marsh_
Address: 4250 S. Princeton #606                        Signature
City/State/Zip: Chicago IL 60609          ☐ Under penalties as provided by law pursuant to 735 ILCS 5/1-109
Telephone: 312-871-9088                        the abovesigned certifies that the statements set forth herein
                                                           are true and correct.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
Copy Distribution - White: 1. ORIGINAL - COURT FILE Canary: 2. COPY Pink: 3. COPY Gold: 4. COPY