**FILED**
6/14/2019
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NOTRE DAME AFFORDABLE HOUSING, INC. and CHARLENE M. MARSH, | |
| Plaintiffs, | 18-cv-08116 |
| v. | Judge Charles Norgle |
| CITY OF CHICAGO, JUDITH FRYLAND, COMMISSIONER, DEPARTMENT OF BUILDINGS, CITY OF CHICAGO, GRANT ULLRICH, DEPUTY COMMISSIONER, DEPARTMENT OF BUILDINGS, CITY OF CHICAGO, DELTA DEMOLITION, INC., DENNIS RAFAEL, CORVEL CORPORATION AND AS YET UNKNOWN JOHN AND JANE DOE DEFENDANTS, | Magistrate Judge Kim<br><br>JURY TRIAL DEMANDED |
| Defendants. | |

**SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF,
AND DECLARATORY RELIEF AND DAMAGES**

NOW COME, NOTRE DAME AFFORDABLE HOUSING, INC. and CHARLENE M. MARSH, by and through their attorney, James C. Vlahakis, of the SULAIMAN LAW GROUP, LTD., and pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), the Fifth Amendment as applied by the Fourteenth Amendment and other statues and cases of action identified below, bring this civil action against Defendants for the purpose of obtaining injunctive and declaratory relief to remedy Defendants' unlawful conduct relative to the demotion of a property located at 7954 S. Halsted and 808-810 W. 80th Street in Chicago, Illinois:

**Introduction**

1.    Notre Dame Affordable Housing, Inc. ("Notre Dame Affordable Housing") is registered as an Illinois 501c3 not-for-profit corporation under File No. 67621719.

2.    Notre Dame Affordable Housing's mission statement is to help veterans obtain affordable housing.Notre Dame Affordable Housing holds a Quitclaim Deed with a Property Tax Parcel/Account 20-32-207-027-0000.

3.     The Property Tax Parcel/Account No. 20-32-207-027-0000 corresponds with a group of structures located at 7954 S. Halsted and 808-810 W. 80th Street in Chicago, Illinois (collectively the "Subject Properties").

4.     Notre Dame Affordable Housing was the owner of physical structures located at 7954 S. Halsted and 808-810 W. 80th Street in Chicago, Illinois, Plaintiffs had intended to rehabilitate the Subject Properties to provide subsidized housing to homeless veterans.

5.     Notre Dame Affordable Housing's principal officer is Plaintiff Charlene Marsh.

6.     Plaintiff Charlene Marsh is a Citizen of the State of Illinois and resides in the City of Chicago.  Plaintiff Marsh is African-American.

7.     The Subject Properties were illegally and unlawfully demolished by the Defendants sometime after December 11, 2017.

8.     As detailed below, on behalf of Notre Dame Affordable Housing, Plaintiff Marsh filed a claim with the City of Chicago Department of Law, City Claims Unit, relative to the unlawful demolition of the Subject Properties and the claim was improperly and unlawfully denied as being time-barred, when it was not.

9.     Plaintiff Marsh suffered economic damages because she personally paid for repairs to Subject Properties, and the Subject Properties were unlawfully demolished by the collective misconduct of the named Defendants.

10.     Plaintiffs are not subject to res judicata because a state court order dated October 25, 2018, did not constitute an adjudication on the merits.  Rather, the order, referenced in Dkt. 42-1, was not brought by any defendant and was only issued by the court in response to Plaintiffs' motion for leave of court to avoid paying a filing fee.

Defendants cannot not point to any motion filed by any defendant which led to the October 25, 2018, order. Further, the complaint referenced in Dkt. 42-1, p. 6

### Defendants, Jurisdiction and Venue

11.    Defendant CITY OF CHICAGO is a municipal body within the Court's jurisdiction.   Defendant JUDITH FRYLAND ("Fryland"), is a resident of the City of Chicago and is the Commissioner of the City of Chicago Department of Buildings. Defendant GRANT ULLRICH ("Ullrich"), is a resident of the City of Chicago and is the Deputy Commissioner of the City of Chicago Department of Buildings.

12.    Defendants Fryland and Ullrich are being sued in their individual capacities for injunctive and declaratory relief as well as damages.

13.    Defendants Fryland and Ullrich are and were personally aware of the acts and omissions set forth below, and condoned and/or ratified the acts or omissions.  In particular, in public speaking engagements, Defendant Fryland has indicated that her Department is able to keep track of demolition permits, approvals and completed via computerized systems and handheld devices.  On information and belief, Defendants Fryland and Ullrich had access to video and/or photographic images of the demolition of the subject property.

14.    In particular, the so-called "informal claims process" (Dkt. 42-1, pp. 1-4) was a deceptive, fraudulent and unlawful act of deception, taken with the full knowledge of Defendants Fryland and Ullrich as well as the City of Chicago, by and through the City of Chicago Department of Buildings.  Plaintiffs seek injunctive and declaratory relief against Defendants Fryland and Ullrich as they have the power to influence the compensation process that Plaintiff Notre Dame Affordable Housing has been denied. In particular, Defendants Fryland and Ullrich have the legal authority to determine that

Plaintiffs were deprived of due process relative to having received "notice" prior to the demolition of the Subject Properties.

15.     Defendant DENNIS RAFAEL ("Rafael") resides in this District. On information and belief, Defendant CORVEL CORPORATION ("Corvel") is Rafael's employer.  Corvel insures the City of Chicago in relation to unlawful demolition claims. Rafael and Corvel wrongly denied Plaintiffs' claim that DELTA DEMOLITION, INC. ("Delta") and the City of Chicago, Department of Buildings, by and through Defendants Fryland and Ullrich, wrongfully and unlawfully demolished the Subject Properties in the absence of due process and in the absence of a lawful demolition permit.

16.     On information and belief, Rafael has signed dozens of letters on behalf of the City of Chicago Department of Law, City Claims Unit, as a "Claims Specialist", where his signed letters indicating that "[t]his office represents the City of Chicago." In doing so, Rafael acted under color of law, and presented himself to Plaintiff as being employed by the City of Chicago.

17.     By way of these letters, his title and the power invoked by his position as as a "Claims Specialist" City of Chicago Department of Law, City Claims Unit, Rafael represents and has been given  authority to determine when the statue of limitations expires relative to building demolition claims relative brought by citizens of Chicago against the City of Chicago Department of Buildings.

18.     Rafael also informed Plaintiff Marsh of a purported one year statute of limitation in a face to face discussion in or around October of 2017. Additionally, Plaintiff Marsh received and maintains a voice recording for a female who indicated that she worked for the City of Chicago, Department of Law, and in her message, this employee explained the claims process to Plaintiff Marsh.

19.     Defendant Rafael was personally aware of the acts and omissions set forth below, and facilitated the acts or omissions.   As detailed below, Defendant Rafael falsified the date that the Subject Properties were demolished in an effort to undermine Plaintiffs' claim for reimbursement and attempted cause a falsified statute of limitations to expire.   Defendant Rafael's knowing and intentional misstatements should not prevent Plaintiffs from seeking reimbursement from this Court or another suitable forum.

20.     It is the standard practice and official policy of the City of Chicago's Department of Law and the City of Chicago's Department of Buildings to represent to persons (in letters, phone calls and face-to-face interactions) that aggrieved property owners have only one year to file claims for unlawfully demolished buildings.

21.     An review of on-line claims records involving the City of Chicago demonstrates that dozens of persons and/or entities have claimed that their properties have been wrongfully demolished by and through the Department of Building's without adequate notice.   Accordingly, it is the standard practice and official policy of the City of Chicago's Department of Law and the City of Chicago's Department of Buildings to fail to provide persons with proper notice of building demolitions.

22.     The City of Chicago's unlawful practice and policy, which attempts to have the force of law, was utilized by Defendant Rafael with the tacit approval of and/or personal knowledge of Defendants Fryland and Ullrich.[1]

23.     Defendants Fryland and Ullrich know that Defendant Rafael misstated when the Subject Properties were illegally and unlawfully demolished and they both

---

[1] Because Defendant Dennis was portrayed as being employed by the City of Chicago Department of Law and signed documents on behalf of the City of Chicago Department of Law, for ease or references, Defendants Fryland, Ullrich and Dennis are at times referred to as the "City of Chicago Defendants."

have the legal obligation and means to remedy Defendant Rafael's misstatements as to the date when the Subject Properties were destroyed.

24.     By failing to take action to remedy Defendant Rafael's misstatements, Defendants Fryland and Ullrich deprived Notre Dame Affordable Housing of due process relative to the demolition of the Subject Properties and deprived both Plaintiffs of due process relative to them seeking compensation for the demolition of the Subject Properties and how they were mistreated by Defendant Rafael and his employer Corvel.

25.     Delta is a Chicago based business performing demolitions of physical structures located with the City of Chicago. Delta is located at 6832 W North Ave suite 1a, Chicago, IL 60707. As reflected in specific Counts set forth below, Delta personally participated in acts and omissions set forth below or it was personally aware of the acts and omissions set forth below and condoned and/or ratified the acts or omissions.

26.     Defendants Fryland and Ullrich knew about the unlawful conduct committed by Defendants Delta and Rafael facilitated the complained of conduct, approved it, condoned it, turned a blind eye to and acted knowingly or with deliberate, reckless difference to the misconduct of Defendants Delta and Rafael.

27.     The JOHN DOE and JANE DOE Defendants are currently unknown persons and entities who conspired with the City of Chicago Defendants, Corvel and possibly the Delta.

28.     Jurisdiction is premised upon 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), 1986 and the Fifth Amendment as incorporated through the Fourteenth Amendment. Supplemental jurisdiction exists for Plaintiffs' state law claims. Venue is proper because the subject property and events at issue took place in this District and the parties exists or reside in this District.

**Defendants Unlawful and Illegal Conduct**

29.    As part of a widespread practice, ratified by Defendants Fryland and Ullrich, Defendants the City of Chicago, Fryland, Ullrich, and currently unknown JANE DOE and JOHN DOE Defendants did not provide proper notice to Notre Dame Affordable Housing and Marsh who was the principal for Notre Dame Affordable Housing:

30.    In relevant part, Section 13-9-010 of Municipal Code of the City of Chicago, entitled "Demolition of open, hazardous residential and commercial buildings", states:

(a)    A.   If a residential or commercial building is three stories or less in height as defined by Title 13 of the municipal code, and the building commissioner determines that the building is open and vacant and an immediate and continuing hazard to the community in which the building is located, then the building commissioner shall be authorized to post a notice of not less than two feet by two feet in size on the front of the building. The notice shall be dated as of the date of the posting and shall state that unless the building is demolished, repaired, or enclosed, and unless any garbage, debris, and other hazardous, noxious, or unhealthy substances or materials are removed so that an immediate and continuing hazard to the community no longer exists, then the building may be demolished, repaired, or enclosed, or any garbage, debris, and other hazardous, noxious, or unhealthy substances or materials may be removed, by the city.

Not later than 30 days following the posting of the notice, the department of buildings shall do the following:

(1)   Cause to be sent, by certified mail, return receipt requested, a notice to all owners of record of the property, the beneficial owners of any Illinois land trust having title to the property, and all lienholders of record in the property, stating the intent of the department of buildings to demolish, repair, or enclose the building, or remove any garbage, debris, or other hazardous, noxious, or unhealthy substances or materials if that action is not taken by the owner or owners or lienholders of record.

* * *

If the building is not demolished, repaired, or enclosed, or the garbage, debris, or other hazardous, noxious, or unhealthy substances or materials are not removed, within 30 days of mailing the notice described in subsection (A)(1) of this section or within 30 days of the last day of publication of the notice, whichever is later, the department of buildings shall cause to be sent, by mail, a final determination to the owners of record, the beneficial owners of any Illinois land trust having title to the property, and all lien holders of record in the property, which

7

provides notice that the department of buildings has determined that the necessary demolition, repair, enclosure or removal action has not been taken and that the building remains open and vacant and an immediate and continuing hazard to the community in which the building is located. The final determination shall include a statement that, unless a hearing is sought under this chapter before a court of competent jurisdiction to object to the proposed actions of the department of buildings and a copy of the complaint served on the mayor within ten days of the mailing of the final determination, the department of buildings intends to exercise its power to demolish, repair, or enclose the buildings, or to remove any garbage, debris, or other hazardous, noxious, or unhealthy substances or materials.

The department of buildings may proceed to demolish, repair, or enclose a building or remove any garbage, debris, or other hazardous, noxious or unhealthy substances or materials under this subsection within a 120 day period following the date of the mailing of the notice described in subsection (A)(1) of this section if the building commissioner determines that the demolition, repair, enclosure, or removal of any garbage, debris, or other hazardous, noxious, or unhealthy substances or materials is necessary to remedy the immediate and continuing hazard. If, however, before the building commissioner proceeds with any of the actions authorized by this chapter, any person has sought a hearing under this chapter before a court and has served a copy of the complaint on the mayor, then the city shall not proceed with the demolition, repair, enclosure, or removal of garbage, debris, or other substances until the court determines that action is necessary to remedy the hazard and issues an order authorizing the city to do so.

§ 13-9-010.

31.     Further, to the extent that any Defendant claims that Section 13-8-100 of Municipal Code of the City of Chicago may apply, this Section, entitled "Dangerous buildings and structures – Posting – Unlawful entry – Fine", states as follows:

(a) Whenever a building or structure or part thereof shall have been damaged by fire, deterioration or other cause, or shows clear evidence of structural failures and where it constitutes an actual and imminent danger to the public, the buildings commissioner shall have the power to order said building, structure or part thereof vacated and closed and to order any licensed and bonded wrecking contractor forthwith to remove said building or structure or part thereof. When the buildings commissioner has ordered a building, structure or part thereof vacated and closed as provided in this section, the buildings commissioner may post or cause to be posted in a conspicuous place near each entrance to the building or structure, a notice

8

measuring no less than 17 inches by 22 inches, stating substantially as follows:

> This building has been ordered closed by the City of Chicago due to code violations that threaten life, health or safety. Entry is forbidden except for necessary repairs and government inspection.

> The notice shall be dated, and shall bear the city seal. If only a portion of the building has been ordered closed, removed or shut down, the notice shall be modified to identify the affected portion, and shall also be affixed at each interior entrance to that portion. The commissioner shall cause a notice as provided in section 13-12-130 to be sent to the owner of the property.

§ 13-8-100.

32.     Defendants City of Chicago, Fryland and Ullrich, individually and in their official capacities, in conformity with an unlawful policy and practice, and through the ratification of Defendants Fryland and Ullrich, did not comply with either of these provisions, to the extent that any Defendants contend that these notice provisions apply.

33.     The City of Chicago, by and through the Department of Buildings, did not comply with the above provisions prior to demolishing the Subject Properties.

34.     The City of Chicago, by and through the Department of Buildings, failed to serve Plaintiff Marsh or Notre Dame Affordable Housing with a Notice of Demolition for the Subject Properties as required by one or both of the above code provisions.

35.     Alternatively, the City of Chicago Department of Buildings, by and through Defendants Fryland and Ullrich, failed to serve or cause Plaintiffs Marsh or Notre Dame Affordable Housing to be served with a Notice of Demolition for the Subject Properties as required by one or both of the above code provisions.

36.     Defendant Fryland, in her individual and official capacity, failed to ensure that Plaintiff Marsh and Notre Dame Affordable Housing were properly served with a Notice of Demolition for the Subject Properties as required by one or both of the above code provisions.

37.    Defendant Ullrich in his individual and official capacity, failed to ensure that Plaintiff Marsh and Notre Dame Affordable Housing were properly served with a Notice of Demolition for the Subject Properties as required by one or both of the above code provisions.

38.    Delta failed to properly serve Plaintiffs Marsh and Notre Dame Affordable Housing with a Notice of Demolition for the Subject Properties.

39.    On information and belief, Delta failed to notify Defendant Fryland with the notice required by § 13-124-070 prior to demolishing the Subject Properties.

40.    Delta Demolition applied for building permit to Subject Properties on December 11, 2017, as Application No. 100730643 (the "December 11th Permit").

41.    The December 11th Permit was approved by the Department of Buildings on December 11, 2017.

42.    The below screen capture taken from the City of Chicago Department of Building's website depicts that the December 11th Permit was applied for and approved on December 11, 2017:



43.     The below screen capture taken from the City of Chicago Department of Building's website, shows that the December 11th Permit, Application No. 100730643, was issued on December 11, 2017:



44. The above screen capture demonstrates that the December 11th Permit, Application No. 100730643, was and is associated with 7954-58 S. Halsted Street, Chicago, Illinois, and 808-810 W. 80th Street, Chicago, Illinois.

45. The above screen capture demonstrates that the "DESCRIPTION OF WORK" associated with December 11th Permit is identified as "EMERGENCY WRECK AND REMOVE A 2 STORY MASONRY MIXED USE BUILDING."

46. Prior to the issuance of the December 11th Permit, no prior building inspections identified any conditions which warranted an Emergency Wreck and Remove permit.

47. The December 11th Permit was used to illegally and unlawfully demolish Subject Properties sometime after December 11, 2017.

48.     The City of Chicago did not post or cause the December 11th Permit to be posted on the Subject Property located at 7954 S. Halsted Street in Chicago, Illinois.

49.     Alternatively, Delta never posted or caused the December 11th Permit to be posted on the Subject Property located at 7954 S. Halsted Street in Chicago, Illinois.

50.     The City of Chicago did not post or cause the December 11th Permit to be posted on the Subject Property located at 808-810 W. 80th Street in Chicago, Illinois, as required by law.

51.     Alternatively, Delta never posted or caused the December 11th Permit to be posted on the Subject Property located at 808-810 W. 80th Street in Chicago, Illinois, as required by law.

52.     Delta did not demolish the Subject Properties prior to December 11, 2018.

53.     On information and belief, and based upon the above cited facts, the City of Chicago, and/or Fryland and Ullrich (in their official capacities), by and through Delta, did not begin to demolish the Subject Properties until December 11, 2018.

54.     Alternatively, on information and belief, Subject Properties were not fully demolished by the City of Chicago, and/or Fryland and Ullrich (in their official capacities), by and through Delta, until sometime after December 11, 2018.

55.     Delta took video evidence to document when it demolished the Subject Properties.

56.     The City of Chicago, Department of Buildings has video evidence depicting the date upon which the Subject Properties were demolished by Delta. Alternatively, Defendants Fryland and Ullrich have video evidence depicting the date upon which the Subject Properties were demolished by Delta.

57.     On October 19, 2018, on behalf of Defendants Fryland and Ullrich, as well as the City of Chicago, and the City of Chicago Department of Buildings, Defendant

Rafael wrote the below letter to Plaintiff Notre Dame Affordable Housing which listed the "Loss Date" for the Subject Property as 12/11/17:



58.     The October 19, 2018 letter stated that "your claim is subject to a one year Statute of Limitations."

59.     The October 19, 2018 letter also stated that "[t]he Statute will expire on the one-year anniversary of the loss."

60. The October 19, 2018 letter also "[i]n the event, prior to [the one-year anniversary of the loss," you fail to resolve or pursue further legal recourse, your ability to do so will forever be lost."

61. Defendants Fryland and Ullrich, as well as the City of Chicago, and the City of Chicago Department of Buildings, and his employer Corvel, knew that Defendant Rafael had prepared and transmitted the October 19, 2018, letter and ratified its contends.

62. On October 19, 2018, at approximately 3:00 pm, Defendant Rafael called Plaintiff Marsh and told her, in contradiction his stated loss date of December 11, 2017, that the Subject Properties were destroyed on a different date, October 22, 2017. Defendant Rafael made a false statement, because Delta did not apply for a demolition permit until December 11, 2017, and the permit was issued on the same date.

63. Section 13-32-230 of the Municipal Code of the City of Chicago, entitled "Building wrecking – Permit required – Safety requirements", required demolition companies like Delta, and did in fact require Delta to obtain a permit before demolishing the Subject Properties:

> (a) Before proceeding with the wrecking or tearing down of any building or other structure, a permit for such wrecking or tearing down shall first be obtained by the owner or his agent from the building commissioner. It shall be unlawful for any person to proceed with the wrecking or tearing down of any building or structure or any structural part of such building or structure unless such permit has first been obtained and the applicable notification requirements set forth in Section 13-124-070 have been met. Application for such permit shall be made by the owner, or his agent, to the building commissioner, who shall issue the permit upon such application and the payment of the fee herein provided.
>
> Every application shall state the location and describe the building which it is proposed to wreck or tear down. Upon the issuance of said permit, such building may be wrecked or torn down, provided that all the work done thereunder shall be subject to the supervision of the building commissioner and to such reasonable restrictions as he may impose in regard to elements of safety and health; and provided further,

15

that the work shall be kept sprinkled and sufficient scaffolding be provided to insure safety to human life.

See, § 13-32-230.

64.     Further, Section 13-32-240 of the Municipal Code of the City of Chicago, entitled, "Building wrecking – Bond requirements", provides that demolition companies like Delta must indemnify the City of Chicago for damages resulting from Delta's activities and that Delta must maintain insurance at the coverage levels identified below:

> In addition to the bonds provided aforesaid, and person engaged in the work of wrecking shall file with every application for a permit to wreck or tear down any building or structure or portion thereof, a commercial general liability insurance policy with limits of not less than of $500,000.00 per occurrence for bodily injury, personal injury and property damage arising in any way from the permit or activities conducted pursuant to the permit, approved by the city comptroller. The insurance policy required under this subsection shall name the City of Chicago as additional insured on a primary, noncontributory basis for any liability arising directly or indirectly from the permittee's operations. The permittee shall maintain the insurance required under this section in full force and effect throughout the duration of the permit period. The insurance shall be issued by an insurer authorized to insure in Illinois.
>
> * * *
>
> In the event an aggrieved party finds it necessary to seek recovery for damages against a demolition contractor by the filing of an appropriate action at law, such aggrieved party shall, upon being awarded judgment in his favor, be entitled to recover his court costs and reasonable attorney's fees against the demolition contractor, as determined by the court.

See, § 13-32-240.

65.     It was unlawful for Delta "to perform any wrecking operation of any kind" with regard to the Subject Properties "without first having obtained such necessary permits and bond as required by Section 13-32-240, "Building wrecking – Bond requirements.

66.     Delta failed to obtain the necessary permit before demolishing the Subject Properties.

67.     If Delta had demolished the Subject Properties on any date earlier than December 11, 2017, it would have done so in violation of Section 13-32-240.

68.     On December 3, 2018, Defendant Rafael wrote the below letter to Plaintiff Notre Dame Affordable Housing which stated that City of Chicago "will be unable to assist with any settlement of damages or costs which you may have sustained due to this incident":



69.     Defendant Rafael wrote the December 3, 2018, behalf of Defendants Fryland and Ullrich, as well as the City of Chicago, and the City of Chicago Department of Buildings, In contrast to Defendant Rafael's October 19, 2018, letter, his December 3, 2018, letter altered and/or changed a "Date of Loss" of 10/11/2017.

70.     The City of Chicago, and/or Fryland and Ullrich (in their official capacities), by and through Delta, did not demolish the Subject Properties until on October 11, 2017, because the Plaintiff Marsh has evidence, which reflects that the Subject Properties were not demolished prior to December 11, 2017.

71.     When Defendant Rafael prepared his letter dated December 3, 2018, he knew that it was impossible for the Subject Properties to have been demolished in October of 2017 or on October 11, 2017, because there was no record of a demolition permit being issued in October of 2017 in relation to the Subject Properties.

72.     When Defendant Rafael prepared his letter dated December 3, 2018, he knew that it was impossible for the Subject Properties to have been demolished in October of 2017 or on October 11, 2017, because Delta applied for and obtained a demolition permit on December 11, 2017.

73.     Defendant Rafael's letter of December 3, 2018, which falsified the demolition date of the Subject Properties, was mailed after Plaintiff's state court lawsuit, filed in the Circuit Court of Cook County as 2018-L-11437, was dismissed on October 22, 2018.

74.     Defendants Fryland and Ullrich, as well as the City of Chicago, and the City of Chicago Department of Buildings, and his employer Corvel, knew that Defendant Rafael had prepared and transmitted the December 3, 2018, letter and ratified its contends. Further, Defendants Fryland and Ullrich, in their individual and official capacities, had the duty and responsibility of ensuring that buildings within the City of Chicago were not demolished without proper notice having been provide to the building's owner(s).

75.     On behalf of the City of Chicago, Defendants Fryland and Ullrich, in their individual and official capacities, had the duty and responsibility of ensuring that

contractors under their supervision and control did not prepare letters which falsely stated a building was demolished prior to the application for a necessary demolition permit.

76.     On behalf of the City of Chicago, Defendants Fryland and Ullrich, in their individual and official capacities, had the duty and responsibility of ensuring that contract workers under their supervision and control did not prepare letters which falsely stated a building was demolished prior to the issuance of a necessary demolition permit.

77.     The City of Chicago, by and through Defendants Fryland and Ullrich in their individual and official capacities, allowed Delta to demolish the Subject Properties without proper notice to Plaintiffs.

78.      The City of Chicago, by and through Defendants Fryland and Ullrich, in their individual and official capacities, allowed, authorized and/or approved the actions to Defendant Rafael to cover-up of their collective misconduct.

79.     The City of Chicago, by and through Defendants Fryland and Ullrich, in their individual and official capacities, allowed, authorized and/or approved  Defendant Rafael to cover-up of their collective misconduct through Rafael's falsification of the date of the alleged demolition of the Subject Properties.

80.     The above misconduct violate Plaintiff Notre Dame Affordable Housing's rights under the Fifth Amendment as incorporated by the Fourteenth Amendment and state law.

81.     Defendant Rafael, and the City of Chicago, by and through Defendants Fryland and Ullrich, in their individual and official capacities, attempted to cover-up the illegal and unlawful demolition of the Subject Properties.

82.     This collective misconduct of Defendant Rafael, and the City of Chicago, by and through Defendants Fryland and Ullrich, in their individual and official capacities was taken against because Plaintiff Marsh is an outspoken and confident African-American female.

83.     These Defendants discriminated against Plaintiff Marsh because she is a confident, articulate and strong woman of African-American decent who attempted to advocate on behalf of Notre Dame Affordable Housing in response to unlawful and illegal demolition of the Subject properties and Defendants' cover-up of the unlawful and illegal demolition of the Subject properties.

84.     On information and belief, known and unknown City of Chicago employees and officials (including, but not limited to Mayor Emmanuel) were resentful of the fact that Plaintiff Marsh stood up for herself, as well as the rights of persons of color and United States veterans. In particular, the Chicago Defendants also discriminated and retaliated against Plaintiff Marsh as a result of her writing to Mayor Rahm Emmanuel to complain about the possible theft of certain properties from local land owners by city officials, and an entity known Halsted New City Retail II, LLC.

85.     Plaintiff Marsh has learned that these individuals resented Plaintiff Marsh because she was not part of the "Chicago Machine" which generally rewards Caucasian businesspersons who are well-connected with other City of Chicago officials.   For example, see the indictment of Alderman Ed Burke, 19-cr-00322 (N.D. Ill.) (Dkt. 30, May 30, 2019) (unsealed indictment).

86.     Plaintiff Marsh, however, is not part of the Chicago Machine because she is an African American woman.  While Mayor Lightfoot is an African American woman, her election as Mayor was a product of the "old guard members" being under

investigation.  See, the indictment of Alderman Ed Burke, 19-cr-00322 (N.D. Ill.) (Dkt. 30, May 30, 2019) (unsealed indictment).

87.     This collective misconduct resulted in illegal and unlawful discrimination toward Plaintiff Marsh in violation of her rights provided to her by 42 U.S.C. §§ 1981, 1982, 1983, 1985(3).The illegal and unlawful demolition of the Subject Properties and the subsequent cover-up of the demolition of the Subject Properties constitutes illegal and unlawful conduct and violated Plaintiff Marsh's rights provided by 42 U.S.C. § 1983.

88.     The City of Chicago is liable for the demolition of the Subject Properties because the demolition of the Subject Properties was ratified by Defendant Fryland, who is a final policymaker for the City of Chicago with regard to establishing rules for the conduct of the Department of Buildings and decisions involving claims for unlawful demolitions.

89.     In particular, Defendant Fryland has made numerous public presentations where she had touted her establishment of new rules governing the conduct of the Department of Buildings and her comments videotaped demonstrate that she is a policymaker for the City of Chicago Relative to demolition practices and permits. Further, it is plausible to allege that Defendant Fryland was made aware of Plaintiffs' claim for the unlawful demolition of the Subject Properties in October and December of 2018.

90.     Moreover, it is plausible that Defendant Fryland has learned of Plaintiffs' claim for the unlawful demolition of the Subject Properties by and through this lawsuit and that she has ratified and otherwise refused to act to compensate Notre Dame Affordable Housing for the unlawful demolition where Defendant Delta obtained a demolition permit after the purported demolition of the Subject Properties.

91.     Plaintiff Notre Dame Affordable Housing has suffered damages because the Subject Properties were unlawfully and illegally destroyed.  In particular, with regard to each cause of action asserted below, Notre Dame Affordable Housing has been damaged through the loss of the value of the structures that were on the Subject Properties, including the reduction of the value of the Subject Properties without the physical structures.

92.     Additionally, Plaintiff Marsh has suffered damages because when Subject Properties were unlawfully destroyed, she lost the value of nearly two hundred thousand dollars of costs and improvements that she made in relation to the Subject Properties on behalf of and for the benefit of Notre Dame Affordable Housing.  Plaintiff Marsh, on behalf of Notre Dame Affordable Housing  intended to rehab the Subject Properties and cannot do so at this time because the physical structures that make up the Subject Properties have been destroyed.

93.     The demolition of the Subject Properties will add millions of dollars to the housing project that Plaintiff Marsh had envisioned to further Notre Dame Affordable Housing's goal of providing affordable housing for veterans

94.     Plaintiff Notre Dame Affordable Housing has yet to be compensated by the City of Chicago for the illegal and unlawful demolition of the Subject Properties.

95.     The City of Chicago has refused to provide compensation to Notre Dame Affordable Housing because of certain continuing deceptions and misrepresentations made by Defendant Rafael, which were made by Rafael, with the knowledge of and in concert with other persons as yet unknown.

96.     Even if Notre Dame Affordable Housing is compensated by the City of Chicago for the value of the Subject Properties and the improvements that Plaintiff

Marsh paid for, Plaintiffs are also entitled to compensation as a result of Defendants' unlawful and discriminatory treatment.

97.     Plaintiff Notre Dame Affordable Housing is seeking to impose individual liability against Commissioner Fryland and Assistant Commissioner Ullrich for their roles in causing the Subject Building to be demolished and because they illegally and unlawfully prevented Notre Dame Affordable Housing from seeking compensation for the unlawful and illegal demolition of the Subject Properties.

98.     Plaintiff Marsh is seeking to impose individual liability against Defendants Fryland, Ullrich and Rafael for their roles in causing the Subject Building to be demolished and because Fryland, Ullrich and Rafael illegally and unlawfully prevented Plaintiffs from seeking compensation for the unlawful and illegal demolition of the Subject Properties.  Plaintiffs are unable to effectively undertake state or local remedies given the unlawful and fraudulent conduct of Defendant Rafael who misreported the date of the demolition of the Subject Properties, which to the date of the filing of this Second Amended Complaint has been condoned and ratified by the City of Chicago, by and through the failure of Defendants Fryland, Ullrich and Corvel to reverse the misconduct of Defendant Rafael.

## Causes of Action

### Count I – Section 1981 Defendants City of Chicago, Fryland and Ullrich

99.     Plaintiff Charlene M. Marsh, realleges and incorporates the above allegations as if fully set forth above:

100.    To establish a claim under § 1981, a plaintiff must show that (1) she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute.

101.   Section 1981(a) states that:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

102.   Section 1981(b) defines the phrase "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

103.   Section 1981(c) states that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of state law."

104.   As set forth above, Plaintiff Marsh was mistreated and discriminated against because of her race and suffered damages.  In particular, Plaintiff Marsh has learned that she was targeted for discriminatory mistreatment because she is a strong and articulate African American woman.

105.   Defendants Fryland and Ullrich, at the behest of currently unknown John Doe and Jane Doe Defendants, subjected Marsh to racist mistreatment and unlawfully and illegally caused the Subject Properties to be demolished for the purpose of discriminating against Plaintiff because of her race and to cause her to suffer the type of economic harm that she suffered as detailed above.

106.   Defendants Fryland and Ullrich acted in this manner as part of a scheme to help Caucasian Caucasian John Doe and Jane Doe Defendants purchase and develop the land where Subject Properties had once stood.

107.    Defendants Fryland and Ullrich participated in this scheme to allow these currently unknown Caucasian John Doe and Jane Doe Defendants to profit from the existence of a Tax Increment Financing ("TIF") Zone and Opportunity Zone.  In contrast to Plaintiff Marsh, Caucasian principals of similarly situated properties operated by Caucasians for Caucasian clientele were not subject to the same mistreatment.

**Wherefore**, Plaintiff Marsh is entitled to compensation, punitive damages, declaratory and injunctive relief against Defendants City of Chicago, Fryland, Ullrich, Rafael and Delta, as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.

### Count II – Section 1982 Defendants City of Chicago, Fryland and Ullrich

108.    Plaintiff Charlene M. Marsh, realleges and incorporates the above allegations as if fully set forth above:

109.    Section 1982 states that:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

110.    To state a claim under § 1982, a plaintiff must allege that the defendant had a racial animus, intended to discriminate against the plaintiff, and deprived the plaintiff of protected rights because of plaintiff's race.

111.    Section 1982's protection of the right "to hold" property goes beyond mere title; it also includes the right to use one's property and protects a person's property from being unlawfully destroyed because of racial animus.

112.    As set forth above, Plaintiff Marsh was mistreated and discriminated against because of her race and suffered damages. In particular, Plaintiff Marsh has learned that she was targeted for discriminatory mistreatment because she is a strong and articulate African American woman.

25

113.    Defendants Fryland and Ullrich, at the behest of currently unknown Caucasian John Doe and Jane Doe Defendants, subjected Marsh to racist mistreatment and unlawfully and illegally caused the Subject Properties to be demolished for the purpose of discriminating against Plaintiff because of her race and to cause her to suffer the type of economic harm that she suffered as detailed above.

114.    Defendants Fryland and Ullrich acted in this manner as part of a scheme to help certain Caucasian John Doe and Jane Doe Defendants purchase and develop the land where Subject Properties had once stood.

115.    Defendants Fryland and Ullrich participated in this scheme to allow these currently unknown Caucasian John Doe and Jane Doe Defendants to profit from the existence of a Tax Increment Financing ("TIF") Zone and Opportunity Zone. In contrast to Plaintiff Marsh, Caucasian principals of similarly situated properties operated by Caucasians for Caucasian clientele were not subject to the same mistreatment.

**Wherefore**, Plaintiff Marsh is entitled to compensation, punitive damages, declaratory and injunctive relief against Defendants City of Chicago, Fryland, Ullrich, Rafael and Delta, as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## Count III – Section 1983/Equal Protection vs. Defendants City of Chicago, Fryland and Ullrich

116.    Plaintiff Charlene M. Marsh, realleges and incorporates the above allegations as if fully set forth above:

117.    Section 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

118.   To state an equal protection claim under Section 1983, a plaintiff must allege that (1) she is a member of a protected class; (2) she was similarly situated to members of the unprotected class; (3) she was treated differently from members of the unprotected class; and (4) the defendant acted with discriminatory intent.

119.   As set forth above, Defendants violated Plaintiff's rights provided by Section 1983 by discriminating against her based upon the color of her skin through Defendants unlawful conduct in demolishing the Subject Properties.

120.   As set forth above, Plaintiff Marsh was mistreated and discriminated against because of her race and suffered damages. In particular, Plaintiff Marsh has learned that she was targeted for discriminatory mistreatment because she is a strong and articulate African American woman.

121.   Defendants Fryland and Ullrich, at the behest of currently unknown Caucasian John Doe and Jane Doe Defendants, subjected Marsh to racist mistreatment and unlawfully and illegally caused the Subject Properties to be demolished for the purpose of discriminating against Plaintiff because of her race and to cause her to suffer the type of economic harm that she suffered as detailed above.

122.   Defendants Fryland and Ullrich acted in this manner as part of a scheme to help certain Caucasian John Doe and Jane Doe Defendants purchase and develop the land where Subject Properties had once stood.

123.   Defendants Fryland and Ullrich participated in this scheme to allow these currently Caucasian John Doe and Jane Doe Defendants to profit from the existence of a Tax Increment Financing ("TIF") Zone and Opportunity Zone.  In contrast to Plaintiff Marsh, Caucasian principals of similarly situated properties operated by Caucasians for Caucasian clientele were not subject to the same mistreatment.

**Wherefore**, Plaintiff Marsh is entitled to compensation, punitive damages, declaratory and injunctive relief against Defendants City of Chicago, Fryland, Ullrich, Rafael and Delta, as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Count IV – Section 1985(3) vs. Defendants Fryland, Ullrich, Delta, Rafael, Corvel and Delta

124.    Plaintiff Charlene M. Marsh, realleges and incorporates the above allegations as if fully set forth above:

125.    Section 1985(3) states in part:

> If two or more **persons** in any State or Territory conspire or go . . . on the premises of another, for the purpose of depriving, either directly or indirectly, any **person** or class of **persons** of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all **persons** within such State or Territory the equal protection of the laws; . . . or to injure any citizen in **person** or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more **persons** engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his **person** or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

126.    In summary, Section 1985(3) affords a private right of action against persons who conspire to violate the rights of another person or another person's property.

127.    To state an equal protection claim under Section 1985(3), a plaintiff must allege that (1) she is a member of a protected class; (2) she was similarly situated to members of the unprotected class; (3) she was treated differently from members of the unprotected class; and (4) the defendant acted with discriminatory intent.

128.    As set forth above, Plaintiff had her rights to equal protection under the law denied and deprived based upon racist mistreatment and personal animus and have

suffered damages. In particular, Plaintiff Marsh has learned that she was targeted for discriminatory mistreatment because she is a strong and articulate African American woman. Further, since the filing of the original lawsuit, none of the above Defendants have attempted to remedy the complained of conduct in an effort to punish Plaintiff Marh for her race and her ardent advocacy.

129.   Defendants Fryland Ullrich, Delta, Rafael and Corvel at the behest of currently unknown Caucasian John Doe and Jane Doe Defendants, subjected Marsh to racist mistreatment and unlawfully and illegally caused the Subject Properties to be demolished for the purpose of discriminating against Plaintiff because of her race and to cause her to suffer the type of economic harm that she suffered as detailed above.

130.   Defendants Fryland Ullrich, Delta, Rafael and Corvel acted in this manner as part of a scheme to help Caucasian unknown John Doe and Jane Doe Defendants purchase and develop the land where Subject Properties had once stood.

131.   Defendants Fryland Ullrich, Delta, Rafael and Corvel participated in this scheme to allow these Caucasian John Doe and Jane Doe Defendants to profit from the existence of a Tax Increment Financing ("TIF") Zone and Opportunity Zone.

132.   In contrast to Plaintiff Marsh, Caucasian principals of similarly situated properties operated by Caucasians for Caucasian clientele were not subject to the same mistreatment.

133.   Additionally, Defendants Fryland Ullrich, Delta, Rafael and Corvel, by wrongly denying Plaintiffs' claim for reimbursement, are conspiring against Plaintiffs cause of the color of Plaintiff Marsh's skin and to cover up their own misconduct and incompetence.

**Wherefore**, Plaintiff Marsh is entitled to compensation, punitive damages, declaratory and injunctive relief against Defendants City of Chicago, Fryland, Ullrich, Rafael and Delta, as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## Count V – Taking Property with Just Compensation vs. Defendants City of Chicago, Fryland, Ullrich and Rafael

134. Plaintiff Notre Dame Affordable Housing, Inc. realleges and incorporates the above allegations as if fully set forth above:

135. The Fifth Amendment, as incorporated by the Fourteenth Amendment, prevents taking of property by a governmental entity with due process and proper compensation.

136. The City of Chicago cannot take property without giving a property an opportunity for a hearing in advance of the taking.

137. The City of Chicago, by and through, **Defendants Fryland, Ullrich** (in both their individual and official capacities), along with Defendant **Rafael**, failed to comply with the requirements of state law as set forth by 65 ILCS 5/11-31-1(a).

138. The City of Chicago, by and through, **Defendants Fryland, Ullrich** (in both their individual and official capacities), along with Defendant **Rafael**, failed to provide **Notre Dame Affordable Housing, Inc.** with adequate post-deprivation remedies.

139. Despite filing a claim, as alleged above, the City of Chicago, by and through **Defendants Fryland, Ullrich** (in both their individual and official capacities), along with Defendant **Rafael**, effectively denied **Notre Dame Affordable Housing, Inc.** adequate pre and post-deprivation remedies. Accordingly, these Defendants prevented Plaintiffs from exhausting their administrative remedies.

140. The City of Chicago, by and through the misstatements of **Dennis Rafael**, in relation to his October 19, 2018, letter, his telephone conversation with Plaintiff

Marsh on October 19, 2018, his December 3, 2018, letter, and other face-to-face conversations that he had with Plaintiff Marsh, effectively denied **Notre Dame Affordable Housing, Inc.** adequate pre and post-deprivation remedies.

141. As alleged above, these Defendants failed to provide pre-deprivation notice.

142. **Further, the** City of Chicago by and through the conduct of **Defendants Fryland and Ullrich** (in both their individual and official capacities) and Rafael have failed to provide Plaintiffs with adequate post-deprivation remedies.

143. As set forth above, Notre Dame Affordable Housing, Inc. has been damaged in its property interests, contractual interests, statutory rights and due process rights and they have been required to hire legal counsel to assert their legal rights.

144. The City of Chicago, by and through **Defendants Defendants Fryland, Ullrich** (in both their individual and official capacities), **Rafael** and Delta unlawfully and illegally caused the subject properties to be demolished for the purpose of depriving Plaintiff' Notre Dame Affordable Housing, Inc. of the Subject Properties and the value of the Subject Properties.

145. The City of Chicago, by and through **Defendants Fryland, Ullrich** (in both their individual and official capacities)Rafael and Delta, acted this way as part of a scheme to facilitate the purchase and use of the land once occupied by Subject Properties by certain unknown Caucasian third parties (currently unknown John and Jane Doe Defendants).

146. The City of Chicago, by and through **Defendants Fryland, Ullrich** (in both their individual and official capacities), **Rafael** and Dela, participated in this scheme to allow these third parties to utilize profit from the existence of a Tax Increment Financing ("TIF") Zone and Opportunity Zone. In contrast to Plaintiff Marsh, Caucasian principals

of similarly situated properties operated by Caucasians for Caucasian clientele were not subject to the same mistreatment.

**Wherefore**, Plaintiff Notre Dame Affordable Housing, Inc. is entitled to compensation, punitive damages, declaratory and injunctive relief against Defendants City of Chicago, Fryland, Ullrich, Rafael and Delta, as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.

### Count VI – Substantive Due Process vs. City of Chicago, Fryland, Ullrich and Rafael

147. Plaintiff Notre Dame Affordable Housing, Inc. realleges and incorporates the above allegations as if fully set forth above:

148. The Fifth Amendment, as incorporated by the Fourteenth Amendment, prevents taking of property by a governmental entity with due process and proper compensation.

149. The City of Chicago cannot take a person's property without giving her an opportunity for a hearing in advance of the taking.

150. The City of Chicago by and through Defendants Fryland, Ullrich (in both their individual and official capacities), Rafael and Delta, failed to comply with the requirements of state law as set forth by 65 ILCS 5/11-31-1(a).

151. The City of Chicago by and through the conduct of Defendants Fryland, Ullrich (in both their individual and official capacities), Rafael, and Delta, have failed to provide Plaintiffs with adequate pre and post-deprivation remedies.

152. As alleged above, these Defendants failed to provide pre-deprivation notice.

153. The City of Chicago by and through the conduct of Defendants Fryland and Ullrich (in both their individual and official capacities), by and through the

misstatements of **Dennis Rafael**, denied and deprived Plaintiffs adequate post-deprivation remedies.

154. As set forth above, Plaintiff has been damaged in their property interests, contractual interests, statutory rights and due process rights and they have been required to hire legal counsel to assert their legal rights.

155. The Defendants identified in this Count unlawfully and illegally caused the subject properties to be demolished for the purpose of depriving Plaintiffs' of the Subject Properties and the value of the Subject Properties.

156. The Defendants identified in this Count acted this way as part of a scheme to facilitate the purchase and use of the land once occupied by Subject Properties by certain unknown third parties (currently unknown John and Jane Doe Defendants).

157. The Defendants identified in this Count participated in this scheme to allow these third parties to utilize profit from the existence of a Tax Increment Financing ("TIF") Zone and Opportunity Zone.

**Wherefore**, Plaintiff Notre Dame Affordable Housing, Inc. is entitled to compensation, punitive damages, declaratory and injunctive relief against Defendants City of Chicago, Fryland, Ullrich and Rafael as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## Count VII – Equal Protection Class of One vs. the City of Chicago Defendants

158. Plaintiff Charlene M. Marsh realleges and incorporates the above allegations as if fully set forth above:

159. The Equal Protection Clause "guards against government discrimination on the basis of race and other immutable characteristics, but it also extends to protect people from so-called 'class-of-one' discrimination in which a government arbitrarily and

irrationally singles out one person for poor treatment." Brunson v. Murray, 843 F.3d 698, 705 (7th Cir. 2016).

160.    As set forth above, Plaintiff Marsh has had her property interests and contractual rights deprived based upon racist mistreatment and personal animus and has suffered damages.  In particular, a n entity known Halsted New City Retail II, LLC, owned by Caucasian individuals, was almost allowed to purchase the Subject Properties as a result of an illegal tax sale.

161.    Other properties existed in a similar condition within the vicinity of the Subject Properties, but they were either not subject to a demolition order, or if they were subject to a demolition order, the City of Chicago Defendants complied with all of the necessary statutory notice requirements.

162.    The differential treatment described above constitutes purposeful, vengeful and spiteful mistreatment directed toward Plaintiff Marsh for now lawful of legitimate reason.

163.    Other property owners were treated more favorably that Plaintiff Marsh because the property owners who maintained properties with similar conditions had never accused City of Chicago officials of being in cahoots with Halsted New City Retail II, LLC.

164.    Further no other similarly situated property owner appears to have written complaint letters to Mayor Rahm Emmanuel as is the case with Plaintiff Marsh.

165.    The City of Chicago Defendants unlawfully and illegally caused the subject properties to be demolished for the purpose of depriving Plaintiffs' of the Subject Properties and the value of the Subject Properties.

166.   The City of Chicago Defendants acted this way as part of a scheme to facilitate the purchase and use of the land once occupied by Subject Properties by certain third parties.

**Wherefore**, Plaintiff Charlene M. Marsh is entitled to compensation, punitive damages, declaratory and injunctive relief as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.

### Count VIII – Section 1986 – vs. All Defendants

167.   Plaintiff Charlene M. Marsh reallege and incorporate the above allegations as if fully set forth above:

168.   Section 1986 provides in part:

> Every **person** who, having knowledge that any of the wrongs conspired to be done, and mentioned in **section 1985 of this title**, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action[.]

169.   In summary, Section 1986 provides a private right of action against a person who is (a) aware of other persons conspiring to violate Section 1985(3) and that person (b) fails to prevent the conspiracy and/or wrongful conduct from occurring.

170.   As set forth above, Defendants violated Plaintiff Marsh's rights provided by Section 1985 by discriminating against Plaintiff Marsh based upon the color of her skin.

171.   The Defendants identified in this Count unlawfully and illegally demolished the Subject Properties for the purpose of depriving Plaintiff Marsh of her civil rights.

172.     The Defendants identified in this Count acted this way as part of a scheme to facilitate the purchase and use of the land once occupied by Subject Properties by certain unknown third parties (currently unknown John and Jane Doe Defendants).

173.     The Defendants identified in this Count participated in this scheme to allow these third parties to utilize profit from the existence of a Tax Increment Financing ("TIF") Zone and Opportunity Zone.

174.     As a result of this mistreatment and resultant failure to protect, Plaintiff Marsh has been damaged in their property interests, contractual interests, statutory rights and due process rights and has been required to hire legal counsel to assert their legal rights.

**Wherefore**, Plaintiff Charlene M. Marsh is entitled to compensation, punitive damages, declaratory and injunctive relief as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.

### Count IX – Illinois Consumer Fraud v. Delta and Corvel

175.     Plaintiffs Charlene M. Marsh and Notre Dame Affordable Housing, Inc. reallege and incorporate the above allegations as if fully set forth above:

176.     Defendants Delta and Corvel violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS § 505/1, et. seq.

177.     Section 2 of the ICFA states as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby . . . .

178. In summary, Section 2 of the ICFA prohibits, inter alia, deceptive and unfair conduct, including but not limited to, false representations, false statements and omissions.

179. As set forth above, Defendant Delta, engaged in unfair and deceptive acts or practices relative to the illegal and unlawful demolition of the Subject Properties.

180. As set forth above, Defendant Delta, used and employed acts of deception fraud, false pretense, false promise and misrepresentations relative to the illegal and unlawful demolition of the Subject Properties.

181. As set forth above, Defendant Delta, concealed, suppressed and omitted material facts regarding its plans to unlawfully and illegally demolish the Subject Properties.

182. As set forth above, by and through Defendant Corvel, by and through Defendant Rafael, engaged in unfair and deceptive acts or practices relative to the illegal and unlawful demolition of the Subject Properties.

183. In particular, Defendant Rafael, suppressed the actual date of the demolition of the Subject Properties.

184. Further Defendant Rafael falsely informed Plaintiffs that the applicable statute of limitations for the demolition of the Subject Properties was one year from the date of the demolition of the properties, when, in reality, a two year statute of limitations applies.

185. As set forth above, Defendant Corvel, by and through Defendant Rafael, used and employed acts of deception fraud, false pretense, false promise and misrepresentations relative to the illegal and unlawful demolition of the Subject Properties.

186.   As set forth above, Defendant Corvel, by and through Defendant Rafael, concealed, suppressed and omitted material facts regarding the actual timing of the demolition of the Subject Properties by Defendant Delta and Rafael's efforts to trick Plaintiffs from not knowing the actual timing of Delta's demolition of the Subject Property.

187.   As a result of Defendant Delta and Defendant Corvel's misconduct, Plaintiffs Charlene M. Marsh and Notre Dame Affordable Housing, Inc. have been damaged through the loss of the value of the structures that were on the Subject Properties, the reduction of the value of the Subject Properties without the physical structures and the out-of-pocket improvements paid for by Plaintiff Marsh which were lost by the destruction of the physical structures.

**Wherefore**, Plaintiffs Charlene M. Marsh and Notre Dame Affordable Housing, Inc.  are entitled to compensation, punitive damages, declaratory and injunctive relief as well as attorney's fees and costs pursuant to ICFA.

## Count X – Intentional Interference with Prospective Economic Advantage

188.   Plaintiffs reallege and incorporate the above allegations as if fully set forth above:

189.   All of the Defendants in this civil action committed the tort of intentional interference with prospective economic advantage.

190.   Plaintiffs had economic relationships with certain third parties and veteran beneficences relative to the Subject Properties of which the Chicago Defendants were aware.

191.   All of the Defendants as set forth above, engaged in conduct which was intended to disrupt Plaintiffs' economic relationships with these third parties and veteran beneficences.

192.   All of the Defendants acted this way as part of a scheme to facilitate the purchase and use of the land once occupied by Subject Properties by certain third parties and/or flout the law.

193.   As a result of Defendants' misconduct, Plaintiffs have been damaged through the loss of the value of the structures that were on the Subject Properties, the reduction of the value of the Subject Properties without the physical structures and the out-of-pocket improvements paid for by Plaintiff Marsh which were lost by the destruction of the physical structures.

**Wherefore**, Plaintiffs Charlene M. Marsh and Notre Dame Affordable Housing, Inc.  are entitled to compensation, punitive damages, declaratory and injunctive relief.

### Count XI – Negligence vs. City of Chicago and Delta Demolition

194.   Plaintiffs Charlene M. Marsh and Notre Dame Affordable Housing reallege and incorporate the above allegations as if fully set forth above:

195.   As set forth above, the Defendant City of Chicago, by and through its own negligence, and that to Defendant Delta, failed to comply with the notice requirements set forth above before Defendant Delta demolished the Subject Properties without proper notice to either Plaintiff.

196.   Defendant Delta negligently demolished the Subject Properties by failing to comply with the aforementioned legal provisions prior to demolishing the Subject Properties.

197.   As a result of the Defendant City of Chicago and Defendant Delta's negligent conduct, including, but not limited to their violation of ordinances intended to protect persons like the Plaintiffs (property owners and executives and principles associated with physical structures, Plaintiffs have suffered damages.

198.   As a result of the Defendant City of Chicago and Delta's misconduct, Plaintiffs have been damaged through the loss of the value of the structures that were on the Subject Properties, the reduction of the value of the Subject Properties without the physical structures and the out-of-pocket improvements paid for by Plaintiff Marsh which were lost by the destruction of the physical structures.

**Wherefore**, Plaintiffs Charlene M. Marsh and Notre Dame Affordable Housing are entitled to compensation, punitive damages, declaratory and injunctive relief.

### Count XI – Respondeat Superior vs. Corvel

199.   Plaintiffs Charlene M. Marsh and Notre Dame Affordable Housing reallege and incorporate the above allegations as if fully set forth above:

200.   As a result of Defendant Rafeal's misconduct and deception, Plaintiffs have suffered damages.

201.   Corvel was the employer of Defendant Rafeal.

202.   Corvel is legally responsible for Defendant Rafeal's misconduct and deception.

203.   As a result of Defendant Rafeal's misconduct, Plaintiffs have been damaged through the loss of the value of the structures that were on the Subject Properties, the reduction of the value of the Subject Properties without the physical structures and the out-of-pocket improvements paid for by Plaintiff Marsh which were lost by the destruction of the physical structures.

**Wherefore**, Plaintiffs Charlene M. Marsh and Notre Dame Affordable Housing are entitled to compensation, punitive damages, declaratory and injunctive relief.

### Count XII – Promissory Estoppel vs. City of Chicago, Corvel and Rafael

204.   Plaintiffs Charlene M. Marsh and Notre Dame Affordable Housing reallege and incorporate the above allegations as if fully set forth above:

205. Defendants City of Chicago and Corvel, by and through Defendant Rafeal, and Defendant Rafael, through his own misstatements made an unambiguous promise to Plaintiffs to honestly and lawfully review their insurance claims.

206. Plaintiffs relied on such promises was expected and foreseeable by Defendants City of Chicago, Corvel and Rafael.

207. Plaintiffs relied on the promises to their detriment and suffered damages.

208. As a result of Defendant Rafeal's misconduct, Plaintiffs have been damaged through the loss of the value of the structures that were on the Subject Properties, the reduction of the value of the Subject Properties without the physical structures and the out-of-pocket improvements paid for by Plaintiff Marsh which were lost by the destruction of the physical structures.

**Wherefore**, Plaintiffs Charlene M. Marsh and Notre Dame Affordable Housing are entitled to compensation, punitive damages, declaratory and injunctive relief.

### Count XIII – Declaratory Judgment vs. Corvel and City of Chicago

209. Plaintiffs Charlene M. Marsh and Notre Dame Affordable Housing reallege and incorporate the above allegations as if fully set forth above:

210. Defendants City of Chicago and Corvel, by and through Defendant Rafael, wrongfully denied Plaintiffs' claim for compensation relative to the unlawful demolition of the subject properties.

211. In particular, as summarized above, Defendant's Rafael's letter of December 3, 2018, falsely stated that City of Chicago "will be unable to assist with any settlement of damages or costs which you may have sustained due to this incident":

212. Defendants City of Chicago and Corvel, by and through Defendant Rafael, wrongfully denied Plaintiffs' claim for compensation by purposefully misapplying the

applicable two year statute of limitations that applies to demolition claims against the City of Chicago.

213.    As a result of Defendants City of Chicago, Corvel and Rafael's wrongful denial of coverage, Plaintiffs have suffered damages.

214.    Defendants City of Chicago and Corvel should be compelled and required by this Court to process Plaintiffs' insurance claim.

**Wherefore**, Plaintiffs Charlene M. Marsh and Notre Dame Affordable Housing are entitled to compensation, punitive damages, declaratory and injunctive relief.

### Count XIV – Declaratory Judgment vs. Corvel Pursuant to Section 155 of the Illinois Insurance Code

215.    Plaintiffs Charlene M. Marsh and Notre Dame Affordable Housing reallege and incorporate the above allegations as if fully set forth above:

216.    Defendant Corvel, by and through Defendant Rafael, encouraged Plaintiffs to file a wrongful demolition claim and wrongfully represented to Plaintiffs that the City of Chicago Department of Law, the insurer for the City of Chicago, would review Plaintiffs' wrongful demolition claim in good faith.

217.    Defendant Corvel, by and through Defendant Rafael, wrongfully denied Plaintiffs' claim for compensation relative to the unlawful demolition of the subject properties.

218.    In particular, as summarized above, Defendant's Rafael's letter of December 3, 2018, falsely stated that City of Chicago "will be unable to assist with any settlement of damages or costs which you may have sustained due to this incident":

219.    Defendant Corvel, by and through Defendant Rafael, wrongfully denied Plaintiffs' claim for compensation by purposefully misapplying the applicable two year statute of limitations that applies to demolition claims against the City of Chicago.

220.   Defendant Corvel, by and through Defendant Rafael violated Section 155 of the Illinois Insurance Code.

221.   Section 155 provides, in pertinent part, as follows:

(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $ 60,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action."

215 ILCS 5/155.

222.   As a result of Defendant Corvel and Rafael's wrongful denial of coverage, Plaintiffs have suffered damages.

223.   Defendant Corvel should be compelled and required by this Court to process Plaintiffs' insurance claim.

**Wherefore**, Plaintiffs Charlene M. Marsh and Notre Dame Affordable Housing are entitled to compensation, punitive damages, declaratory and injunctive relief.

**Plaintiffs demand trial by jury**          Respectfully Submitted,

Counsel for Plaintiffs

/s/ James C. Vlahakis
James C. Vlahakis
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
jvlahakis@sulaimanlaw.com