UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NOTRE DAME AFFORDABLE HOUSING, INC. and CHARLENE M. MARSH, | |
| Plaintiffs, | 18-cv-08116 |
| v. | Judge Charles Norgle |
| CITY OF CHICAGO, et al., | Magistrate Judge Kim |
| Defendants. | |

**PLAINTIFFS' "CORRECTED" COMBINED RESPONSE[1] IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS SECOND AMENDED COMPLAINT ("SAC")**

Plaintiffs NOTRE DAME AFFORDABLE HOUSING, INC. ("NDAHI") and CHARLENE M. MARSH submit this "Corrected"[1] Combined Response in opposition to the Motions to Dismiss filed by Defendants Corvel Corporation and Dennis Rafael [Dkt. 72], Delta Demolition, Inc., [Dkt. 75] and the City of Chicago, Building Commissioner Judith Frydland, and Deputy Building Commissioner Grant Ullrich [Dkt. 78]:

I.     **Introduction**

NDAHI is a registered Illinois 501c3 not-for-profit corporation. NDAHI holds a Quitclaim Deed for a Property Tax Parcel/Account 20-32-207-027-0000 which is located at 7954 S. Halsted and 808-810 W. 80th Street in Chicago, Illinois (collectively the "Subject Properties"). **SAC** ¶¶1-3; Dkt. 83-1. Plaintiff Marsh is African-American and resides in the City of Chicago. **SAC**¶¶ 5-6. Plaintiffs intended to rehabilitate the Subject Properties to provide subsidized housing to homeless veterans until Delta

---

[1] Consistent with the purpose of judicial economy, as reflected in FRCP 1, Plaintiffs offer this 31 page Combined Response in lieu of up to three 20 pages response briefs. In contrast, the City of Chicago Defendants' Memo. of Law was 26 pages (Dkt. 93), Defendant Corvel and Rafaels' Memo. of Law is 19 pages and Defendant Delta's Memo. of Law was 17 pages (Dkt. 76), for a combined total of 62 pages.

Demolition, Inc. ("Delta") unlawfully demolished the physical structure that existed Subject Properties on or after December 11, 2017. **SAC¶¶** 4, 17. Delta could not have demolished the physical structure prior to December 11, 2017, because Delta's demolition permit (Application No. 100730643) was issued and paid for on December 11, 2017. Additionally, the City of Chicago and Delta did not post or cause the December 11, 2017, Demolition Permit to be posted on the Subject Properties. **SAC ¶¶39-51.**

Delta, along with the City of Chicago, Judith Frydland, and Grant Ullrich, (the "City of Chicago Defendants") and Defendants Corvel Corporation and Dennis Rafael an employee of Corvel Corporation, violated Plaintiffs' constitutional and federal statutory rights (as well as certain state law rights) by demolishing Subject Properties and then covering up their individually and collective misconduct. See, **Section III**. As a brief summary of the facts, after Mrs. Marsh learned that the Subject Buildings had been demolished, she contacted the City of Chicago's law department where she encountered Defendant Dennis Rafael who is employed by Corvel. Marsh did not know that Dennis Rafael was employed by Corvel because he represented himself out to be an employee of the City of Chicago's Department of Law Defendant Dennis Rafael lied to Mrs. Marsh about when the Subject Buildings had been demolished. All of the Defendants have continue to mislead Plaintiffs about the precise date when the Subject Buildings were demolished. This pattern of deception came to the surface approximately a week ago when an high level employee by the City of Chicago improperly discussed the merits of the suit with a relative of Mrs. Marsh.

## II.    Standard of Review

Defendants' Motions to Dismiss read like summary judgment motions. Federal

Rule of Civil Procedure requires that a complaint contain a "statement of the claim showing that the pleader is entitled to relief." FRCP 8 does not require hyper-technical pleading. Rule 8(a) simply "require[s] plaintiffs to plead claims rather than facts corresponding to the elements of a legal theory." *Chapman v. Yellow Cab Corp.*, 875 F.3d 846, 848 (7th Cir. 2017). A court should accept well-pled allegations <u>and</u> draw all reasonable inferences in favor of a plaintiff. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Defendants' Motion to Dismiss ignores that a plaintiff is only required to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

It is axiomatic that Plaintiffs must receive "the benefit of imagination, so long as the hypotheses are consistent with the complaint."' *Chapman*, 875 F.3d at 848 (quoting *Twombly*, at 563). When reviewing a motion to dismiss, a common sense analysis should apply. Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."' *Id.*

The summary of allegations below must be accepted as true because the underlying allegations were made consistent with the above pleading standards. When this Court applies the above pleading standards and discards Defendants' hyperbole laden motions and looks past certain Defendants'' bombastic tone, the motions to dismiss should be denied.

### III.    Summary Key Facts and Causes of Action

As part of a widespread practice, ratified by Defendants Frydland and Ullrich, Defendants the City of Chicago, Frydland, Ullrich, and currently unknown JANE DOE and JOHN DOE Defendants did not provide statutorily required notice to NDAHI and Marsh prior to the demolition of the physical structure located on Subject Properties

3

despite being required to do so pursuant Section 13-32-230 of the Municipal Code of the City of Chicago, entitled "Building wrecking — Permit required — Safety requirements". **SAC** ¶¶33-37. Delta also failed to serve NDAHI and Marsh with a Notice of Demolition for the Subject Properties. **SAC** ¶38.

In relevant part, Section 13-9-010(a), of the Chicago Municipal Code entitled "Demolition of open, hazardous residential and commercial buildings" requires that the City of Chicago, Department of Buildings post a notice to a property owner of the potential demolition of a structure under the following circumstances:

> If a residential or commercial building is three stories or less in height as defined by Title 13 of the municipal code, and the building commissioner determines that the building is open and vacant and an immediate and continuing hazard to the community in which the building is located, then the building commissioner shall be authorized to post a notice of not less than two feet by two feet in size on the front of the building. The notice shall be dated as of the date of the posting and shall state that unless the building is demolished, repaired, or enclosed, and unless any garbage, debris, and other hazardous, noxious, or unhealthy substances or materials are removed so that an immediate and continuing hazard to the community no longer exists, then the building may be demolished, repaired, or enclosed, or any garbage, debris, and other hazardous, noxious, or unhealthy substances or materials may be removed, by the city.

Before a structure can be demolished, §13-9-010(a)(1) requires the Chicago Department of Buildings to cause notice to be sent:

> to all owners of record of the property, the beneficial owners of any Illinois land trust having title to the property, and all lienholders of record in the property, stating the intent of the department of buildings to demolish, repair, or enclose the building, or remove any garbage, debris, or other hazardous, noxious, or unhealthy substances or materials if that action is not taken by the owner or owners or lienholders of record.

Once the above identified notice is provided, §13-9-010(a)(1) provides that structure cannot be demolished until the Department of Buildings:

> cause to be sent, by mail, a final determination to the owners of record, the beneficial owners of any Illinois land trust having title to the property, and all lien holders of record in the property, which the necessary demolition, repair, enclosure or removal action has not been taken and that the building remains open and vacant and an immediate and

4

continuing hazard to the community in which the building is located. The final determination shall include a statement that, unless a hearing is sought under this chapter before a court of competent jurisdiction to object to the proposed actions of the department of buildings and a copy of the complaint served on the mayor within ten days of the mailing of the final determination, the department of buildings intends to exercise its power to demolish, repair, or enclose the buildings, or to remove any garbage, debris, or other hazardous, noxious, or unhealthy substances or materials.

Similarly, §13-8-100(a), entitled "Dangerous buildings and structures – Posting – Unlawful entry – Fine", requires the same notice provisions whenever:

Whenever a building or structure or part thereof shall have been damaged by fire, deterioration or other cause, or shows clear evidence of structural failures and where it constitutes an actual and imminent danger to the public, the buildings commissioner shall have the power to order said building, structure or part thereof vacated and closed and to order any licensed and bonded wrecking contractor forthwith to remove said building or structure or part thereof.

**SAC**, ¶¶ 30-31.

Defendants City of Chicago, Frydland and Ullrich, individually and in their official capacities, in conformity with an unlawful policy and practice, and through the ratification of Defendants Frydland and Ullrich, did not comply with either of these provisions, prior issuing to the subject demolition permit to Defendant Delta on December 11, 2017, and as a result of the omissions and acts of malfeasance, the subject structures were unlawfully demolished without proper notice. **SAC** ¶¶ 32-54. Notably, none of the Defendants have submitted any documentation to this Court evidencing that notice was lawfully provided to Plaintiffs by any Defendant *prior* to the demolition of the physical structures on the Subject Properties.[2]

---

[2] Defendants, despite having access to demolition permits, have not submitted any documentation to this Court that suggests (let alone demonstrates) that the physical structure was demolished on any date prior to December 11, 2017. This is a curious omission because Plaintiffs have alleged that Delta videotaped the demolition and the City of Chicago, Department of Buildings has video evidence depicting the date upon which the Subject Properties were demolished by Delta. Alternatively, based upon representations made by Defendant Fryland, the

It is undisputed that Delta paid for an obtained a demolition permit on December 11, 2017. **SAC** ¶ 72. It was unlawful for Delta "to perform any wrecking operation of any kind" with regard to the Subject Properties "without first having obtained such necessary permits and bond as required by Section 13-32-240, "Building wrecking – Bond requirements." ¶ 65.  Delta, however, failed to obtain the necessary permit *before* demolishing the Subject Properties. ¶¶ 66-67.

 Plaintiff is entitled to recovery against Delta for its misconduct. Section 13-32-240 of the Municipal Code of the City of Chicago, entitled, "Building wrecking Bond requirements", provides that demolition companies like Delta must indemnify the City of Chicago for damages resulting from Delta's activities and that Delta must maintain insurance at the coverage levels identified below. This same code provision provides that an "aggrieved party that successfully obtains judgment in its favor is entitled to recover [its] court costs and reasonable attorney's fees against the demolition contractor[.]" **SAC** ¶64 (citing S 13-32-240).

On or about October 19, 2018, Mrs. Marsh filed a property loss claim with the City of Chicago Department of Law, City Claims Unit, on behalf of NDAHI relative to the unlawful demolition of the physical structure located on Subject Properties. **SAC** ¶8. Rafael received the property loss claim and his October 19, 2018, letter to NDAHI identified a loss date of December 11, 2017. **SAC** ¶57. Corvel Corporation ("Corvel") is Rafael's employer. Among other types of claims, Corvel insures the City of Chicago in relation to unlawful demolition claims. As described below, Rafael and Corvel wrongly denied Plaintiffs' claim that Delta and the City of Chicago, Department of Buildings

---

Department run by Frydland and Ullrich has video evidence depicting the date upon which the Subject Properties were demolished by Delta. SAC ¶¶ 52-56.

wrongfully and demolished the Subject Properties in the absence of due process and in the absence of a lawful demolition permit. **SAC** ¶15.

On October 19, 2018, on behalf of the City of Chicago Department of Buildings, as well as Defendants Frydland and Ullrich, as well as the City of Chicago, Rafael wrote letter to NDAHI which listed the "Loss Date" for the Subject Property as 12/11/17. **SAC** ¶57. The October 19, 2018 letter stated ,"your claim is subject to a one year Statute of Limitations" and that "[t]he Statute will expire on the one-year anniversary of the loss." The October 19, 2018 letter also states, "[i]n the event, prior to [the one-year anniversary of the loss," you fail to resolve or pursue further legal recourse, your ability to do so will forever be lost." **SAC** ¶¶58-60. Defendants Frydland and Ullrich, as well as the City of Chicago, and the City of Chicago Department of Buildings, and his employer Corvel, knew that Defendant Rafael had prepared and transmitted the October 19, 2018, letter and ratified its contends. **SAC** ¶61.

On information and belief, Rafael has signed dozens of letters on behalf of the City of Chicago Department of Law, City Claims Unit, as a "Claims Specialist", where his signed letters indicating that "[t]his office represents the City of Chicago." By way of these letters, his title and the power invoked by his position as a "Claims Specialist" City of Chicago Department of Law, City Claims Unit, Rafael represents and has been given authority to determine when the statue of limitations expires relative to building demolition claims relative brought by citizens of Chicago against the City of Chicago Department of Buildings. **SAC** ¶¶16-17. Rafael also informed Plaintiff Marsh of a purported one year statute of limitation in a face to face and telephonic discussion in or around October of 2017. **SAC** ¶¶18, 62 Rafael falsified the date that the structure was demolished in an effort to undermine Plaintiffs' claim for reimbursement and to falsely argue that a non-applicable one-year statute of limitations had expires. **SAC** ¶19.

It is the standard practice and official policy of the City of Chicago's Department of Law and the City of Chicago's Department of Buildings to represent to persons (in letters, phone calls and face-to-face interactions) that aggrieved property owners have only one year to file claims for unlawfully demolished buildings.[3] **SAC** ¶20. The City of Chicago's unlawful practice and policy, which has the force of law, was utilized by Rafael when presented himself to Plaintiff as being employed by the City of Chicago through his signature on City of Chicago letterhead. **SAC** ¶¶16, 57, 68. Rafael acted with the tacit approval of and/or personal knowledge of Defendants Frydland and Ullrich. **SAC** ¶22. Notably, on stationary that identified "City of Chicago Department of Law City Claim Unit", Rafael represented to Plaintiffs that he had the authority to determine when the statute of limitations expires relative to building demolition claims. **SAC** ¶¶17, 57, 68. Rafael acted under color of law and was no mere "non-city employee" as the City of Chicago tries to shrug off without any legal citation. Dkt. 83, pp. 17-18, 20.

On December 3, 2018, on half of the City of Chicago and the Department of Buildings, Rafael wrote a letter NDAHI and Marsh that stated that City of Chicago "will be unable to assist with any settlement of damages or costs which you may have sustained due to this incident". Rafael wrote the December 3, 2018, on behalf of Defendants Frydland and Ullrich, as well as the City of Chicago, and the City of Chicago Department of Building. In contrast to Defendant Rafael's October 19, 2018, letter, his

---

[3] Further, a review of on-line claims records involving the City of Chicago demonstrates that dozens of persons and/or entities have claimed that their properties have been wrongfully demolished by and through the Department of Building's without adequate notice, Accordingly, it is the standard practice and official policy of the City of Chicago's Department of Law and the City of Chicago's Department of Buildings to fail to provide persons with proper notice of building demolitions. **SAC** ¶ 21.

December 3, 2018, letter altered and/or changed a "Date of Loss" of 10/11/2017. When Defendant Rafael prepared his letter dated December 3, 2018, he knew that it was impossible for the structure to have been demolished in October of 2017 or on October 11, 2017, because there was no record of a demolition permit being issued in October of 2017 in relation to the Subject Properties and Delta paid for and obtained a permit on December 11, 2017. Additionally, Rafael's December 3, 2018, letter was mailed *after* Plaintiffs' state court lawsuit, filed in the Circuit Court of Cook County as 2018-L-11437, was dismissed on October 22, 2018. **SAC ¶¶57-73**

Frydland and Ullrich deprived NDAHI of due process relative to the demolition of the Subject Properties and compensation for the demolition of the Subject Properties relative to the misconduct of Defendant Rafael and his employer Corvel. **SAC ¶¶ 23-24.** Frydland and Ullrich knew about the unlawful conduct committed by Defendants Delta and Rafael facilitated the complained of conduct, approved it, condoned it, turned a blind eye to and acted knowingly or with deliberate, reckless difference to the misconduct of Defendants Delta and Rafael. **SAC ¶ 26.**

Defendants Frydland and Ullrich, knew that Defendant Rafael had prepared and transmitted the December 3, 2018, letter and ratified its contents their failure to remedy the misstatements contained within the letter. Further, Defendants Frydland and Ullrich, in their individual and official capacities, had the duty and responsibility of ensuring that:

> (a) buildings within the City of Chicago were not demolished without proper notice having been provide to the building owner(s);
>
> b) contractors under their supervision and control did not prepare letters which falsely stated a building was demolished prior to the application for a necessary demolition permit; and
>
> (c) contract workers under their supervision and control did not prepare letters which falsely stated a building was demolished prior to the issuance of a necessary demolition permit.

The City of Chicago is liable for the demolition of the Subject Properties because the demolition of the Subject Properties was ratified by Defendant Frydland, who is a final policymaker for the City of Chicago with regard to establishing rules for *the complained of* conduct of the Department of Buildings and decisions involving claims for unlawful demolitions. **SAC** ¶88. Frydland has made numerous public presentations where she had touted her establishment of new rules governing the conduct of the Department of Buildings and her videotaped comments demonstrate that she *is a policymaker* for the City of Chicago Relative to *the complained of* demolition practices and permits. **SAC** ¶89. Further, it is plausible to allege that Defendant Frydland was made aware of Plaintiffs' claim for the unlawful demolition of the Subject Properties in October and December of 2018. *Id.* Moreover, it is plausible that Defendant Frydland has learned of Plaintiffs' claim for the unlawful demolition of the Subject Properties by and through this lawsuit and she has ratified and otherwise refused to act to compensate NDHI for the unlawful demolition where Delta obtained a demolition permit after the purported demolition of the Subject Properties. **SAC** ¶90.

NDAHI suffered damages because the Subject Properties were unlawfully and illegally destroyed. In particular, with regard to each cause of action asserted below, NDHAI has been damaged through the loss of the value of the structures that were on the Subject Properties, including the reduction of the value of the Subject Properties without the physical structures. **SAC** ¶91.

NDAHI has yet to be compensated by Delta or the City of Chicago for the illegal and unlawful demolition of the Subject Properties. The City of Chicago has refused to provide compensation to NDAHI because of certain continuing deceptions and

misrepresentations made by Defendant Rafael, which were made by Rafael, with the knowledge of and in concert with other persons as yet unknown. **SAC** ¶¶93-95.

## IV. Argument

The above misconduct violate NDAHI's rights under the Fifth Amendment as incorporated by the Fourteenth Amendment and state law. Oddly, a majority of the Defendants focus their efforts to dismiss the claims brought by Mrs. Marsh. Defendants' approach is a curious one. Defendants' collective approach appears is somewhat misguided because the manner in which they have rallied against Mrs. Marsh only demonstrates how little time they have spent arguing for the dismissal of the claims brought individually and collectively by NDAHI. Put another way, focusing so much time decrying Mrs. Marsh's race claims, Defendants fail to provide any substantive arguments to demonstrate that NDAHI was afforded due process. Similarly, Defendants have only advanced conclusory arguments to rebut Plaintiffs' due process claims or to incorrectly argue that Plaintiffs' claims are barred by *res judicata*. See, Dkt. 82, Corvel and Rafael's Memo of Law at pp. 1, 4-5.

### A. Plaintiffs' Claims Are Not Barred By Res Judicata

Contrary to what has been advanced by all three sets of Defendants, Plaintiffs' claims are not barred by res judicata. See the City of Chicago Defendants' Memo. of Law, Dkt. 83 at pp. 2, 6-7; Corvel and Rafael's Memo. of Law, Dkt. 82, pp. 1, 4-5; and Delta's Memo. of Law, Dkt. 76, pp. 4-5. All of the Defendants mistakenly argue that a final judgment on the merits took place in relation to a prior state court proceeding. It is Defendants' burden of proof and they must "show that its application is clear on the face of [Plaintiffs'] complaint." *McDonald v. Adamson*, 840 F.3d , 347 (7th Cir. 2016). Defendants fail to meet their burden. "For res judicata to apply" a movant must point to "a *final judgment* on the merits . . . and . . . an identity of parties or their privies."'

*Baek v. Clausen*, 886 F.3d 652, 660 (2018) (emphasis supplied). It is Black Letter Law that *res judicata* applies to "what as actually decided in the first action" *Id*. "Dismissal *with prejudice* for failure to state a claim is . . . tantamount to an adjudication on the merits." *Chi. Title Land Trust Co. v. Potash Corp. of Sask. Sales Ltd*., 664 F.3d 1075, 1079 (7th Cir. 2011) (quoting *Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc.*, 744 N.E.2d 845, 852 (Ill. 2001) (emphasis supplied). In relation to the state court proceeding discussed in the City of Chicago Defendants' motion to dismiss (Exhibit A to the motion), nothing was decided on the merits and no dismissal with prejudice was entered (on the merits or otherwise).

*Res judicata* should only apply where there is a final decision on the merits. *Id*. The present case is *unlike* the facts before the court in *Baek*. 886 F.3d at 663 ("This is not a situation where the trial court issued summary judgment on a discrete factual issue, leaving other factual issues to be resolved; the Circuit Court disposed of all aspects of the Baeks' claims and entered final judgment."). To be clear, the Defendants have the burden of demonstrating a fully litigated judgment on the merits (which is not the case). *See, Groesch v. City of Springfield,* 635 F.3d 1020, 1029 (7th Cir. 2911)("The doctrine of [res judicata or] claim preclusion is premised on the idea that, when a claim has been *fully litigated* and come to judgment on the merits, finality trumps.", quoting *Czarniecki v. City of Chicago*, 633 F.3d 545, 2011 U.S. App. LEXIS 1177, 2011 WL 181471, at *3 (7th Cir. Jan. 21, 2011)) (emphasis supplied).

The purported final judgment discussed in the City of Chicago Defendants' Memo. of Law relates to the same incorrect ruling that the City of Chicago Defendants relied upon when they orally opposed Plaintiffs Motion for Leave to File a Second Amended Complaint *instanter* during a June 1, 2019, presentment date. During the hearing on Plaintiffs' Motion for Leave to File the SAC *instanter*, defense counsel for

Defendants Delta and the City of Chicago Defendants argued that the entire SAC was barred by *res judicata*. In so arguing, these Defendants cited to an October 25, 2018, order dismissing Plaintiffs' October 20, 2018, state court lawsuit against Defendant, City of Chicago, Commissioner of Bldg. See **Exhibit E** to the City of Chicago Defendants' Memo. of Law (attached as Dkt. 83-5). Exhibit E, reflects that Plaintiff Marsh (as a pro se litigant) had sued the "City of Chicago, Commissioner of Bldg.", on her behalf and on behalf of NDAHI, for the purported misconduct of the "City of Chicago Depart. Of Bldgs". See, Dkt. 83-5, p. 4 of 7. The Court rejected Delta City of Chicago Defendants' efforts to apply res judicata to thwart Plaintiffs' Motion for Leave. In granting Plaintiffs' Motion for Leave, the Court admonished the City of Chicago Defendants on the grounds that entity that Mrs. Marsh had chosen to sue in state court was not a suable entity.

A review of the state court dismissal order (Dkt. 83-5) reflects that the order was issued in response to of Mrs. Marsh seeking leave to sue as an indigent person. Dkt. 83-5, p. 2 of 7. That is not a ruling on the merits and Defendants failed to any case to suggest that the state order in question resolved the lawsuit on the merits (or that the order was final order). To the extent that Defendants suggest that they need not submit a "certified" copy of an order (Dkt. 83, p. 7, fn 4), they have not submitted any transcripts or bystander's record report that addresses what, if any, merits based ruling was issued by the circuit court.[4] The order that the City of Chicago Defendants now

---

[4] Furthermore, contrary to what the City of Chicago Defendants have argued (Dkt. 83, p. 7), they have submitted no documents to this Court to suggest that the state court judge made any final decision on the merits, such as a transcript of the proceeding or bystander's record. *See*, **Exhibit A**, March 20, 2019, hearing transcript in *Parham v. Lakeview Loan Servicing, LLC*, et al., 18-cv-4678 (N.D. Ill.) at pp. 2,4-5 (where this Honorable Court asked "[w]as [the state court foreclosure case in Cook County] dismissed on its merits or just dismissed?" and then ordered parties to submit all orders, transcripts, and bystander's record report related to a state court proceeding where the Court wanted the parties to address the impact of *Rooker-Feldman* doctrine).

rely upon was not a dismissal *with prejudice*, and Illinois law indicates that *a dismissal with prejudice is required* for a litigant to invoke *res judicata. See, e.g., Bronstein v. Kalcheim*, 467 N.E.2d 979, 982 (1st Dist. 1984) ("a dismissal with prejudice is an adjudication on the merits and is deemed to be conclusive of the rights of the parties as if the matter had proceeded to trial and had been resolved by a final judgment adverse to the plaintiff.") (citations omitted); *Van Slambrouck v. Marshall Field & Co.*, 424 N.E.2d 679, 683 (1st.Dist. 1981) ("Once a cause of action has been adjudicated on the merits, whether by a dismissal with prejudice or by an adjudication after trial, the plaintiff is barred by the doctrines of res judicata and collateral estoppel from bringing a second action against the same defendant alleging any matter relating to the same causes of action . . . in the first suit. "). While Defendants have failed to meet there burden of proof to apply *res judicata*, it would be strange for a judge to take the time to issue an oral ruling *on the merits* (with or without a court reporter present) where it would have been clear to the court a corporation could not appear *pro se* and a *pro se* plaintiff, seeking to waive an appearance fee, could not represent the corporation. *See, e.g., Nocula v. UGS Corp.*, 520 F.3d 719, 275 (7th Cir 2008); *Talasila, Inc. v. United States*, 240 F.3d 1064 (Fed. Cir 2001)(a *pro se* plaintiff cannot represent a corporation . . . The Court cannot waive this rule, even for cases of severe financial hardship.").

In summary, Defendants' undeveloped and factually inaccurate arguments relative the application of *res judicata* constitutes <u>waiver</u> of this arguments. *See, e.g., U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1994)("Since his argument . . . is a perfunctory two-sentence argument that does not explain how those provisions "cover" this situation, and that cites no applicable authority, he has waived it.")(citation omitted); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 712, 718 (7th Cir. 2012)(discussing waiver of arguments that are "underdeveloped, conclusory, or unsupported by law);

*Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008)("[i]t is the parties' responsibility to allege facts and indicate their relevance under the correct legal standard."); *Muhich v. Commissioner of Internal Revenue*, 238 F.3d 860, 864 n. 10 (7th Cir. 2001) ("Where, as here, a party fails to develop the factual basis of a claim . . . and, . . . merely draws and relies upon bare conclusions, the argument is deemed waived."); *US v. Dunkel*, 927F.2d 955, 956 (7th Cir. 1991)("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. Especially not when the brief presents a passel of other arguments, as Dunkel's did. Judges are not like pigs, hunting for truffles buried in briefs.") (citations omitted).

Defendants Delta, Rafael and Corvel are not entitled to assert *res judicata* because they were not parties to the state court lawsuit that Defendants rely upon. Moreover, Rafael's true identify as an employee of Corvel, and Corvel's relationship with the City (as an undisclosed third-party administrator of the City of Chicago's demolition reimbursement program). Rafael's letters that are documented cited in the SAC make it appear (to any objective observer) that Rafael was *directly employed* by the City of Chicago's Department of Law's so-called "City Claims Unit." By *falsely representing* to Plaintiff Marsh that Rafael was employed by the City of Chicago Legal Department's claims office, the City of Chicago Defendants deprived Plaintiff of the ability to assert in the state court suit many of the state law claims that are raised here against Corvel and Rafael. Contrary to what Defendants Corvel and Rafael have argued (Dkt. 82, p. 5), there is no basis for *any* Defendant to argue that Corvel, Rafael and Delta were in privity with the City of Chicago Commissioner of Buildings (the non-legal entity that was sued by Plaintiffs). *See, e.g., Rhoads v. Bd. of Trs. of the City of Calumet City Policemen's Pension Fund*, 689 N.E.2d 266, 270 (Ill. App. Ct. 1997) (holding that Calumet City and the Calumet City Pension Board were not in privity for collateral estoppel "merely

because they are both public entities"). See also, Gallagher v. O'Connor, 664 Fed. Appx. 565, 568 (7th Cir. 2016)("The district court erred when it concluded that Officer O'Connor and the Village were in privity with the defendants in Gallagher's other cases. Gallagher sued O'Connor in his individual capacity . . . The district court [incorrectly] believed that Gallagher had to join O'Connor and the Village in his earlier suits, b[ecase] plaintiffs may litigate separately against joint tortfeasors."). And similarly, as to Frydland, and Ullrich, *res judicata* does not apply. *Berry v. Illinois Dep't of Human Servs.*, 2001 U.S. Dist. LEXIS 1041, *53 (N.D. Ill. Feb. 1, 2001)("*Res judicata* does not apply to the other possible defendants (Hunter, Madden, and Varso) who were not parties to Catlett's prior lawsuit.") (citations omitted).

### B.    NDAHI Has Standing To Sue

Contrary to what has been asserted by the Defendants, NDAHI has standing to sue for the various due process claims that it has advanced. See, Dkt. 83, City of Chicago Defendants' Memo. of Law, at pp. 4-6 ("As set forth above, Notre Dame's allegations that it owns the property and was thus damaged by its demolition are *demonstrably false.*") (emphasis supplied); Corvel and Rafael's Memo. of Law, Dkt. 82, p. 5 (adopting City of Chicago Defendants' Memo.); and Delta's Memo. of Law, Dkt. 76, pp. 5-6. The City of Chicago Defendants' Memo of Law sets forth the following argument in highly conclusory fashion, with no citation to any case law or *supporting affidavits*: "As to Notre Dame, the chain of title shows that Leroy Singleton conveyed the property to Notre Dame by quit claim deed on June 3, 2014. But the . . . quitclaim deed by Mr. Singleton conveyed nothing to Notre Dame, because Mr. Singleton had nothing to convey. Therefore, Notre Dame does not own the Subject Property either." Dkt. 83, p. 4 and (citation omitted). See also, Dkt 83, fn 3 ("As set forth herein, there is no evidence Mr. Singleton had any interest to convey in 2012 in the first place."). For whatever

16

reason(s), this conclusory argument was never raised in the prior motion to dismiss raised by the City of Chicago Defendants. Dkts. 25, pp. 6-7 (argument heading "Plaintiff Marsh's Claims Also Should Be Dismissed Because She Lacks Standing") & 46 (identical argument solely as to Plaintiff Marsh).

Among the handful of documents submitted by the City of Chicago Defendants, Dkt 83-1 identifies a certified copy of a Quitclaim Deed dated June 3, 2014, between Leroy Singleton, Grantor, and NDAHI, Grantee of the Subject Property. The City of Chicago Defendants' motion to dismiss based upon the alleged lack of standing should be dismissed for four (4) reasons. <u>First</u>, as a threshold matter, the City of Chicago Defendants' perfunctory argument is devoid of any legal analysis, citation to any case law or incorporation of any sworn declaration. Despite asking this Court to determine the proper titleholder in the context of a motion to dismiss, all that the City of Chicago Defendants have pointed to are other quitclaim deeds bundled up with the conclusion that "Notre Dame's allegations that it owns the property and was thus damaged by its demolition are *demonstrably false.*" Dkt. 83, p. 5 (emphasis supplied). The City of Chicago Defendants' perfunctory argument is not worthy of this Court's review and should be summarily denied. *See, Berkowitz*, 927 F.2d at 1384; *Puffer*, 675 F.3d at 712, 718; *Econ. Folding Box Corp.*, 515 F.3d at 721; *Muhich*, 238 F.3d at 864 n. 10; *Dunkel*, 927 F.2d at 956.

<u>Second</u>, in the context of a 12(b)(6) motion to dismiss, the City of Chicago Defendants cannot obtain summary judgment by claiming that any prior or later issued quitclaim deed usurps or voids the June 3, 2014, Quitclaim Deed between Leroy Singleton, Grantor, and NDAHI, which the City of Chicago Defendants have attached as Dkt 83-1. This type of fact-finding is not appropriate for a motion to dismiss. As set forth by FRCP 12(d), [i]f, on a motion [to dismiss] matters outside the pleadings are

17

presented to *and not excluded by the court*, the motion must be treated as one for summary judgment under Rule 56." (Emphasis supplied). Further, FRCP 12(d) goes on to state that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

Whether the City of Chicago Defendants can actually rebut NDAHI's allegation that it holds title to the land in question *is an issue for summary judgment,* and not one that can be resolved on a motion to dismiss. *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008). The Seventh Circuit in *Clearwater Title Co.* stated that FRCP 12(d) provides "a narrow exception to the Rule 12(d) instructions that permits a district court to take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment." *Id.* The Seventh Circuit then held that "the district court erred in thinking that the deed was a proper subject for judicial notice." *Id.* (citing *General Electric Capital Corporation v. Lease Resolution Corporation*, 128 F.3d 1074, 1080-81 (1997)). Although the court recognized that "[s]tatements in documents affecting an interest in property do fall within an exception to the hearsay rule" (citing FED. R. EVID. 803(15)), the court ultimately held that "we do not see how . . . the court could have found that [the proposed deed] was 'not subject to reasonable dispute' within the meaning of FED. R. EVID. 201(b) once Doss filed his response." *Id.* The Seventh Circuit concluded its ruling by *cautioning district courts* from taking judicial notice of *disputed* public documents:

> Judicial notice "merits the traditional caution it is given, and courts should strictly adhere to the criteria by the Federal Rules of Evidence before taking judicial notice of pertinent facts." *General Electric Capital Corporation*, 128 F.3d at 1081. It takes more than an exception to the hearsay rule, in other words, to justify judicial notice.

*Id.* The Seventh Circuit's opinion in *Clearwater Title Co.* relied heavily on *General Electric Capital Corp.*, 128 F.3d 1074 where the court stated that allowing documents to be reviewed by a district court without converting a motion to dismiss to one of summary judgment was limited to "when an *undisputed fact* in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard." 128 F.3d at 1081 (emphasis supplied). To be clear, the City of Chicago Defendants have failed to submit any evidence to support their argument that prior or later quitclaim deeds negate NDAHI's claim of ownership. That failure of proof should end the City of Chicago Defendants' folly, but for the sake of the judicial record, NDAHI adopts Dkt. 83-1 to prove that it held title to the property in question. Even if the City of Chicago Defendants had submitted verifiable proof in support of their argument, in addition to *Clearwater Title Co.*, *General Electric Capital Corp.* supports the denial of the City of Chicago Defendants' standing argument. *Id.* at 1081 ("Judicial notice, therefore, merits the traditional caution it is given, and courts should strictly adhere to the criteria established by the Federal Rules of Evidence before taking judicial notice of pertinent facts."). *See also, see also Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995) ("In order for a fact to be judicially noticed, indisputability is a prerequisite.").

Third, the City of Chicago Defendants' argument is incongruous with the fact that City of Chicago records show that the City of Chicago itself has fined NDAHI for a municipal ordinance violation[5] for the very property tax identification PIN that the City of Chicago Defendants now claims is not legally held by NDAHI. See **Exhibit B** ("Recording of Findings, Decision and Order" in the matter of *The City of Chicago, v.*

---

[5] The violation in question is 7-28-710 ("Dumping or accumulation of garbage or trash") and 7-28-120(a) ("Uncut weeds). See **Exhibit B,** p. 2 "Findings, Decisions & Order" dated 9/12/2018.

*Notre Dame Affordable Housing [sic]*, Dkt. No. 18DS08291L as reflected by the Cook County Recorder of Deeds, dated 08/20/2009).[6]

A copy of the "NOTICE OF ORDINANCE VIOLATION(S) AND HEARING" filed by the *City of Chicago, Department of Streets and Sanitation v. Notre Dame Affordable Housing (sic)*, Administrative Hearing Docket No. 18DS08291L, reflecting the address of 7954 S. Halsted St. Chicago, IL 60620, and citing the same ordinance violations as described in page 2 of Exhibit B, is attached as **Exhibit C** (page 1 of 4). And to be absolutely clear, the City has placed an lien on the property in question, against NDAHI. See **Exhibit D** (08/22/19 lien letter sent to NDAHI by the law firm of Roberts & Weddle, LLC). The August 22, 2019, lien letter sent to NDAHI by attorneys representing the City of Chicago, states in relevant part:

> Pursuant to the FINDING, DECISIONS and ORDER entered in this matter, we have filed a lien against your real estate with the Recorder of Deeds. This transaction si now formally a matter of record so that you will be unable to transfer title or obtain financing on your property until such time as the lien is satisfied.

**Exhibit D** (attached to Appendix of Documents). The letter further undermines the City's misguided argument that NDAHI lacks standing.

Finally, the Cook County Recorder of Deeds' website shows that the NADHI is the property owner in question and that the City has placed a lien on the PIN in question:

---

[6] A party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004) (denying motion to strike new materials submitted on appeal). In fact, it is appropriate for a plaintiff to assert new facts in a brief opposing motion to dismiss. *See, e.g., Early v. Bankers Life and Casualty Co.*, 959 F.2d 75, 79 (7th Cir. 1992) (reversing dismissal). *See also, Roe v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1007 (S.D. Ind. 2007) ("Such documents are not evidence, but they provide a way for a plaintiff to show a court that there is likely to be some evidentiary weight behind the pleadings the court must evaluate.").



Against these points, the City of Chicago Defendants cannot obtain dismissal of this case on such flimsy grounds. "The court is not bound to accept the [movant]'s allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) (internal quotation marks and citations omitted). District courts should not dismiss complaints where a movant's interpretation of a submitted document is in dispute:

> The application of a previous finding to a latter proceeding must be beyond reasonable dispute before a court may take judicial notice because "the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and, in effect, directing a verdict against him as to the fact noticed." *Jones*, 29 F.3d at 1553. "'The key to a fair trial is opportunity to use the appropriate weapons (rebuttal evidence, cross-examination, and argument) to meet adverse materials that come to the tribunal's attention.'" Fed. R. Evid. 201(b) advisory committee's note. If a court takes judicial notice of a fact whose application is in dispute, the court removes these weapons

from the parties and raises doubt as to whether the parties received a fair hearing.

\* \* \*

Thus, *it was error not to determine whether application of earlier finding was "not subject to reasonable dispute" as required by Fed. R. Evid. 201(b).* After reviewing the well pleaded allegations in this claim and ignoring these outside materials, we hold that Count IV of the complaint satisfies Rule 12(b)(6). We therefore reverse the district court's dismissal of GE Capital's fraudulent transfer claim.

*GE Capital Corp.*, 128 F.3d at 1084 (emphasis supplied, internal citation omitted). *See also, Liang v. Frontline Asset Strategies, LLC*, 2017 U.S. Dist. LEXIS 57181, *11 (N.D. Ill. April 14, 2017) ("Plaintiff contests the authenticity of Defendants' attachment and offers a number of grounds for doing so. Thus, the Court cannot consider Defendants' attachment without converting their motion to dismiss to a motion for summary judgment and affording Plaintiff notice of its intention to do so and an opportunity to respond. Fed. R. Civ. P. 12(d)[.]"(citations omitted)).

Fourth, because the City has fined NDAHI for a municipal ordinance violation related to the property tax identification PIN now at issue, it should be judicial estopped from arguing that NDAHI is not the proper title holder. *See, e.g.,* City of Decatur v. Ballinger, 988 N.E.2d 737, 740, 2013 Ill.App.LEXIS 243, *10 (4th Dist. April 16, 2013) ("In this case, the trial court found the ownership of Property A after the 2004 quitclaim deed had already been adjudicated and was *res judicata.* On appeal, Ballinger does not challenge the court's application of the doctrine of *res judicata* or its taking judicial notice of the 2004 ordinance violation case. Thus, the facts already determined in the 2004 ordinance violation case are not questions of fact in this case. The first two contentions raised as questions of material fact by Ballinger were clearly decided in the 2004 case.").

In conclusion, the City of Chicago Defendants' argument that NDAHI does not own the property PIN in question appears to violate FRCP 11(b), especially where the City of Chicago Defendants have not supported their argument with any sworn affidavit.[7] Additionally, the City of Chicago Defendants' arguments violate 28 U.S.C. § 1927. At the very least, the issue of whether NDAHI owns the property PIN in question cannot be resolved on a motion to dismiss given the City of Chicago Defendants' lack of proof and the City's own conduct in obtaining a lien against NDAHI's property rights.

Simply stated, the City of Chicago Defendants cannot have it both ways. If what they say is true – that NDAHI does not legally hold the land related to the subject PIN - an issue that this Court cannot review on a motion to dismiss – then the City of Chicago can be sued for wrongfully and illegally fining NDAHI for an ordinance violation.

### C. NDAHI's Due Process Claims Survive Dismissal

The City of Chicago Defendants lead off with the following argument in an effort to dismiss NDAHI's substantive due process claim:

> Where, as in this case, a substantive due process claim involves the alleged deprivation of a property interest, as a preliminary matter, a plaintiff must first show "'either the inadequacy of state law remedies or an independent constitutional violation' before the court will even engage in . . . deferential rational-basis review." *Lee v. City of Chicago*,

---

[7] FRCP 11(b) states as follows:

(b) REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

> 330 F.3d 456, 467 (7th Cir. 2003). *But Plaintiffs cannot show the inadequacy of state law remedies for destruction of property.* * * *
>
> And the nonsensical allegations in the Second Amended Complaint related to defendants' purported attempt to mislead Plaintiffs about the date of loss does not represent a lack of state law remedies (nor do they shock the conscience) — Plaintiffs do not and cannot explain how the words of a ***non-City employee*** as to the date of demolition would affect Plaintiffs' right to bring suit.

Dkt. 83, pp. 17-18 (emphasis supplied). The City of Chicago Defendants move to dismiss NDAHI's procedural due process claim by arguing the following: "the only process due from the municipality is a postdeprivation remedy" and "Plaintiffs are left with only a specious argument that a ***non-City employee*** was part of scheme with the City Defendants to misstate the date of loss." *Id.* at p. 20 (citations omitted, emphasis supplied). This argument is without merit.

Putting aside for the moment that the City of Chicago Defendants cannot seriously refer to Defendant Rafael as some mere "non-City employee" where he signed letters on behalf of the City's Law Department, this argument fails to recognize the Supreme Court's most recent Fifth Amendment Takings Clause case, *Knick v. Twp. of Scott*, 139 S.Ct. 2162 (2019). *Knick* is a game-changer because in reversing a decades old decision, *Williamson County Regional Planning Comm'n* v. *Hamilton Bank of Johnson City*, 473 U. S. 172, 175 (1985), which previously limited landowners from suing in federal court. 473 U.S. at 175 ("if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the [Takings] Clause until it has used the procedure and been denied just compensation.").

*Knick* held that a landowner *was not required* to pursue an inverse condemnation action against a township *in state court before bringing a 42 U.S.C.S. § 1983 action* alleging violation of the Takings Clause. "The fact that the State has provided a property owner with a procedure that may subsequently result in just compensation cannot

24

deprive the owner of his Fifth Amendment right to compensation under the Constitution, leaving only the state law right." 139 S.Ct. at 2171. The City of Chicago Defendants' citation to *Lee v. City of Chicago* for the proposition that Plaintiffs must point to "the inadequacy of state law remedies" is no longer the law. Dkt. 83, p. 17. As explained in *Kirk*, "*Williamson County* was not just wrong. Its reasoning was exceptionally ill founded and conflicted with much of our takings jurisprudence." 193 S.Ct. at 2177-78. "The [negative effect of *Williamson County*] is that many takings plaintiffs never have the opportunity to litigate in a federal forum that §1983 by its terms seems to provide." *Id.* at 2179. "A property owner may bring a takings claim under §1983 upon the taking of his property without just compensation by a local government" *Id.* at 2177.

Simply stated, the City of Chicago Defendants' motion to dismiss must be denied where the cases cited rely on the now overruled exhaustion doctrine set forth by the Supreme Court in *Williamson County*. Additionally, Defendants' argument that NDAHI has not asserted a takings claim for "public use" (Dkt. 83, p. 16) is without merit. NDAHI has clearly asserted that the property was taken as part of an unlawful scheme – devoid of any valid purpose. SAC ¶¶30-31 and 7, 63-67, 75-76 (asserting that Delta and the City Defendants acted unlawfully by destroying the property without having first obtained a valid permit). Without a validly issued and posted permit as required by the Chicago Municipal Code), the Defendants' conduct cannot be said to be enforcing police powers. SAC ¶¶30-48, ¶ 46("Prior to the issuance of the December 11th Permit, no prior building inspections identified any conditions which warranted an Emergency Wreck and Remove permit.") ¶47 ("The December 11th Permit was used to illegally and unlawfully demolish Subject Properties sometime after December 11, 2017."), ¶¶64-65. Additionally, by conspiring with Defendant Rafael, the City of Chicago Defendants and

Delta, NDHAI has been denied lawful compensation in violation of the Fifth Amendment. SAC ¶¶14-15, 20-23, 26, 32-41, 81

### D. Plaintiffs Have Stated a Policy and Practice Claim Under *Monell*

The City of Chicago is not entitled to dismissal because as detailed directly below, Plaintiffs have plausibly alleged, an express policy that causes a constitutional deprivation when enforced as well as a widespread practice that is so permanent and well-settled that it constitutes a custom or practice. *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009). The above cited allegations and others cited directly below evidence collective misconduct that is more than sufficient to state a *Monell* claim against the City of Chicago. SAC ¶¶14-15, ¶20 ("It is the standard practice and official policy of the City of Chicago's Department of Law and the City of Chicago's Department of Buildings to represent to persons (in letters, phone calls and face-to-face interactions) that aggrieved property owners have only one year to file claims for unlawfully demolished buildings."), ¶21 (a "review of on-line claims records involving the City of Chicago demonstrates that dozens of persons and/or entities have claimed that their properties have been wrongfully demolished by and through the Department of Building's without adequate notice. [I]t is the standard practice and official policy of the City of Chicago's Department of Law and . . . Department of Buildings to fail to provide persons with proper notice of building demolitions"), 22, 88-89. These allegations were the "cause of" (the so-called "moving force" behind) the above misconduct.

### E. Marsh Has Standing to Assert Due Process Violations and She Has Adequately Stated Claims Pursuant to §§1981, 1982 and 1983

The City of Chicago Defendants' Memo. of Law does not actually argue that *NDAHI* lacks standing to sue for the violations it has asserted. Dkt. 83, pp. 5-6. Instead, the City of Chicago Defendants argue that Mrs. Marsh lacks standing. Id. All of the

cases cited by the City of Chicago Defendants miss the mark because none of the cases deal with a principal of a corporation being mistreated and lied to about an illegal property demolition because of the race of the principal.

To the extent Defendants argue that Mrs. Marsh may not have standing to assert claims related to economic harms inflicted upon NDAHI, it is Black Letter law that "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction *against intentional and arbitrary discrimination*." *Willowbrook v. Olech*, 28 U.S. 562, 564 (2000) (emphasis supplied). Under *Olech*, Mrs. Marsh can sue Defendants for mistreating her based upon her race and their general disdain towards her. *Id.* ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").

In *Olech*, the Supreme Court held that the plaintiffs stated a due process claims where they had simply alleged "that the Village intentionally demanded a 33-foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners" and that the Village's demand was "irrational and wholly arbitrary". *Id.* at 565. According to the Court, "[t]hese allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis." *Id.* Similarly, the Seventh Circuit recognizes that an individual also may state a claim under the equal protection clause if he can show that state government took an action that was a spiteful effort to "get" him for reasons wholly unrelated to any legitimate state objective. *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001).

Defendants' efforts to dismiss Mrs. Marsh's race-based claims in Counts should be denied because Mrs. Marsh has asserted adequate and plausible facts setting forth claims for deprivation of property rights based upon her race. In particular, the misconduct of Defendant Rafael, and the City of Chicago, by and through Defendants Frydland and Ullrich, was taken against Plaintiff Marsh because she is an outspoken and confident African-American female who has repeatedly objected to the manner in which NDAHI has been treated, including the efforts by these Defendants to cover-up Delta's unlawful demotion and their own actions in attempting to hide avoid their own misconduct. **SAC** ¶¶81-83.

Further, these Defendants also resented Mrs. Marsh because *she was not part of* the "Chicago Machine" which generally rewards Caucasian businesspersons who are well-connected with other City of Chicago officials. For example, see the indictment of Alderman Ed Burke, 19-cr-00322 (N.D. Ill.) (Dkt. 30, May 30, 2019) (unsealed indictment). **SAC** ¶85. In particular, the City of Chicago Defendants also discriminated and retaliated against Marsh as a result of her writing to Mayor Rahm Emmanuel to complain about the possible theft of certain properties from local land owners by city officials, and an entity known *Halsted New City Retail Il, LLC.* **SAC** ¶84. The above identified misconduct constitutes "[i]nvidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *Listle v. Milwaukee Cty.*, 138 F.3d 1155, 1158 (7th Cir. 1998) (internal citations omitted).

All of the Defendants are flat wrong with their contention that Marsh has failed to assert sufficient facts to give rise to plausible claims of race discrimination.

As Judge Easterbrook has explained, a complaint "limns the claim; details of both fact and law come later, in other documents." *Bartholet v. Reishauer* A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). Pre-dating *Twombly* and *Iqbal* Judge Easterbrook also

indicated the question for courts to to ask at the pleading stage is "whether relief is possible under any set of facts that could be established consistent with the allegations." *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Defendants cannot avail themselves to a motion to dismiss by criticizing Marsh for failing to point an identical property owner (Dkt. 83, p. 14), because her claim is not property based. Rather, when she advocated for NDAHI, as someone had to do, that is when the Defendants discriminated and retaliated against her. Plaintiff Marsh is not required to point to comparable properties (City Motion, Dkt. 83, p. 14; Delta Motion, Dkt 76 at pp, 10-11) at this stage of the case. *See, e.g., Chapman*, 875 F.3d at 848 ("it is manifestly inappropriate . . . to demand that complaints contain all legal elements (or factors) plus facts corresponding to each.")

As plainly stated in the SAC, and contrary to Defendants' best efforts to argue the absence of any raced based discrimination (Dkt. 82, pp. 7-8; Dkt. 83, pp. 13-15), and consistent with Seventh Circuit law, the individual and collective misconduct detailed in the SAC resulted in illegal and unlawful discrimination toward Plaintiff Marsh in violation of her rights provided to her by 42 U.S.C. SS 1981, 1982, 1983, 1985(3). **SAC** ¶87. If there was no conspiracy to against NDAHI and Mrs. Marsh, why haven't the defendants offered to compensate NDAHI. In conclusion, the illegal and unlawful demolition of the Subject Properties and the subsequent cover-up of the demolition of the Subject Properties constitutes illegal and unlawful conduct and violated Plaintiff Marsh's rights provided by 42 U.S.C. § 1983. *Id.* As noted above, it appears that the City of Chicago has attempted to improperly influence the prosecution

of this claim by raising specious arguments as to the ownership of the Subject Property.[8]

For these reasons, Plaintiff Marsh has stated claims sufficient to defeat the City Defendants' motion to dismiss. Dkt. 83, pp. 12-13. These allegations are also sufficient to defeat Delta's motion to dismiss. Dkt. 76, pp. 8-10.

### F.  Plaintiffs Have Asserted a Viable Conspiracy Claim at This Stage

Delta and the City of Chicago Defendants argue that Plaintiffs have failed to plead sufficient facts to plead a Section 1985(3) conspiracy claim. Dkt. 76, p. 11-12; Dkt. 82, 9-10; Dkt. 83, pp. 14-15. Plaintiffs are literally "fighting City Hall" and in doing so they are not armed with ever fact necessary to take down the Defendants at the motion to dismiss stage. "Because conspiracies are often carried out clandestinely and direct evidence is rarely available, plaintiffs can use circumstantial evidence to establish a conspiracy, but such evidence cannot be speculative." *Beaman v. Freesmeyer*, 776 F.3d 500, 511 (7th Cir. 2015).  Against this backdrop, the various motions can only be granted if the SAC fails "to raise a right to relief *above the speculative level.*" *Twombly*, 550 U.S. at 555. A plaintiff can survive a motion to dismiss by pleading circumstantial allegations that allow for a plausible inference of such an agreement. *Geinosky v. City of Chicago*, 675 F3d 743, 749 (7th Cir. 2012). Plausibility is not a high hurdle. ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Because Plaintiffs have a viable Section 1985(3) claim, Plaintiffs have a viable Section 1986 claim.

---

[8] Further, as noted above, an employee of the City appears to have attempted to discuss the merits of this suit as well as the disputed title this with Plaintiffs outside the presence of their counsel. This conduct should stop. If the Court requires further elaboration on this issue, counsel will provide it under seal and for  attorney's eye's only review and dissemination.

### G. Plaintiffs' State Law Claims Should Not Be Dismissed

Contrary to Delta's Motion to Dismiss (Dkt. 76, p. 16), Plaintiffs have set forth a valid claim for negligence. As set forth in the SAC, Section 13-32-240 of the Municipal Code of the City of Chicago, entitled, "Building wrecking – Bond requirements", provides Plaintiff NDAHI with a private right of action which demonstrates, as a matter of law that a demolition company like Delta owed a duty and breached its duty to NDAHI. Delta has failed to cite to any case which holds that the provisions cited in the SAC do not afford NDAHI with a negligence claim against Delta.

Plaintiffs' claims against Corvel and Rafael are sufficient to avoid dismissal. As set forth above, contrary to Defendants Corvel and Rafael have argued (Dkt. 82, pp. 5-6), Rafael was a key player in a series of actions to deprive Plaintiffs of their property rights. Defendant Rafael most clearly mislead Plaintiff Marsh, and therefore Plaintiffs' promissory estoppel claim is viable, contrary to what Defendants Corvel and Rafael have argued. Dkt. 82, 16. Plaintiffs relied on his lies to their detriment as they were misled as to when the structure was actually demolished and Rafael denied Plaintiff's claim for reimbursement in a letter dated December 1, 2018. Because there are viable claims against Defendant Rafael, Corvel is also liable under *respondeat superior*, contrary to what it has alleged. Dkt. 82, p. 18.

Plaintiffs voluntarily dismiss their claims for Interference with Business Expectancy (Count X) and Illinois Consumer Fraud (Count IX) without prejudice at this point in time, subject to a timely and properly supported motion for leave to amend.

/s/ James C. Vlahakis
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
(630) 575-8181
jvlahakis@sulaimanlaw.com

## APPENDIX OF EXHIBITS

**Exhibit B** (page 1):

Doc# 1923212024 Fee #88.00

EDWARD M. MOODY
COOK COUNTY RECORDER OF DEEDS
DATE: 08/20/2019 09:51 AM PG: 1 OF 2

Space reserved for Recorder's
Office only

**IN THE CITY OF CHICAGO, ILLINOIS**
**DEPT OF ADMINISTRATIVE HEARINGS**

The City of Chicago, A Muni Corp.        ]
                                         ]
                    Plaintiff,           ]
                                         ]
        VS.                              ]
                                         ]
**NOTRE DAME AFFORDABLE HOUSING**        ]
                                         ]
                    Defendants,          ]
                                         ]

**Docket Number: 18DS08291L**
**Issuing City Department:**
**STREETS AND SANITATION**

### RECORDING OF FINDINGS, DECISION AND ORDER

The Petitioner, **THE CITY OF CHICAGO**, a municipal corporation, by and through its attorney the Corporation Counsel, by and through Special Assistant Corporation Counsel, **ROBERTS & WEDDLE, LLC,** hereby files the attached and incorporated certified Findings, Decision and Order entered by an Administrative Law Officer pursuant to an administrative hearing in the above captioned matter. This certified copy is being recorded with the Cook County Recorder of Deeds as provided for by law.

NOTRE DAME AFFORDABLE HOUSING
7954-7958 S. HALSTED ST
CHICAGO, IL 60620

PIN #: 20-32-207-027-0000
Legal Description:

LOTS 22 AND 23 IN BLOCK 1 IN CHESTER HIGHLANDS ADDITION TO AUBURN PARK, BEING A SUBDIVISION OF THE EAST 7/8 OF THE NORTH 1/2 OF THE NORTHEAST 1/4 OF THE NORTHEAST 1/4 OF SECTION 32 TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**ROBERTS & WEDDLE, LLC**
**309 W. Washington St. Suite 500**
**Chicago, IL 60606**
**312-589-5800**
**File#: 99.99016**

**Exhibit B** (page 2 of 2)

**DEPARTMENT OF ADMINISTRATIVE HEARINGS**

| | |
|---|---|
| **CITY OF CHICAGO**, a Municipal Corporation, Petitioner, ) | Address of Violation: |
| ) | 7954 S Halsted Street |
| v. ) | |
| ) | Docket #: 18DS08291L |
| Notre Dame Affordable Housing C/O Zoe Marsh-Leigh ) | |
| 4525 N DOVER ST APT 3 ) | Issuing City |
| CHICAGO, IL 60640 ) | Department: Streets and Sanitation |
| , Respondent. ) | |

### FINDINGS, DECISIONS & ORDER

This matter coming for Hearing, notice given and the Administrative Body advised in the premises, having considered the motions, evidence and arguments presented, IT IS ORDERED: As to the count(s), this tribunal finds by a preponderance of the evidence and rules as follows:

| Finding | NOV# | Count(s) | Municipal Code Violated | Penalties |
|---|---|---|---|---|
| Default - Liable by prove-up | 208291L | 1 | 7-28-710 Dumping or accumulation of garbage or trash - potential rat harborage. | $600.00 |
| | | 2 | 7-28-120(a) Uncut weeds. | $1,200.00 |

Sanction(s):

Admin Costs: $40.00

**JUDGMENT TOTAL: $1,840.00**

**Balance Due: $1,840.00**

Respondent is ordered to come into immediate compliance with any/all outstanding Code violations.

You have 21 days from the above mailing date to file a motion to set-aside (void) this default order for good cause with the Dept. of Administrative Hearings (400 W. Superior). You may have more than 21 days if you can show you were not properly served with the violation notice. Your right to appeal this order to the Circuit Court of Cook County (Daley Center 6th Fl.) may be prohibited by the Court if you fail to first file a motion to set-aside with the Dept. of Administrative Hearings.

ENTERED: *Mark Boyle*                    19        Sep 12, 2018

Administrative Law Judge                ALO#        Date

This Order may be appealed to the Circuit Court of Cook Co. (Daley Center 6th Fl.) within 35 days by filing a civil law suit and by paying the appropriate State mandated filing fees.

Pursuant to Municipal Code Chapter 1-19, the city's collection costs and attorney's fees shall be added to the balance due if the debt is not paid prior to being referred for collection.

Date Printed: Nov 29, 2018 12:14 pm

I hereby certify the foregoing be a true and correct copy of an Order entered by an Administrative Law Judge of the Chicago Department of Administrative Hearings.

Authorized clerk        Date        12-3-18

filers must have an original        attest to be accepted as no Certified Copy

18DS08291L
Page 1 of 1

99-99016

**Exhibit C**



**CITY OF CHICAGO**
DEPARTMENT OF STREETS AND SANITATION
Charles Williams, Commissioner
121 N. LaSalle Street, Room 1107
Chicago, IL 60602

| | |
|---|---|
| **CITY OF CHICAGO** DEPARTMENT OF STREETS AND SANITATION a Municipal Corporation, Petitioner v. NOTRE DAME AFFORDABLE HOUSING c/o ZOE MARSH-LEIGH 4625 N DOVER ST APT 3 CHICAGO, IL 60640, Respondent(s). | **Violation Address:** 7954 S. HALSTED ST Chicago, IL 60620 **Administrative Hearing Docket Numbe** 18DS08291L **ANOV Number:** 208291L |

## NOTICE OF ORDINANCE VIOLATION(S) AND HEARING

### Date of Notice: 08/06/2018

YOU ARE HEREBY NOTIFIED THAT THE DEPARTMENT OF STREETS AND SANITATION HAS CIT
YOU FOR AN ALLEGED VIOLATION(S) OF THE MUNICIPAL CODE OF CHICAGO. THE ALLEGED
VIOLATION(S) IS SERIOUS AND MUST BE CORRECTED IMMEDIATELY. EVEN IF CORRECTED, Y U
MUST EITHER: (1) APPEAR FOR YOUR SCHEDULED HEARING AS LISTED BELOW, OR (2) IF ELIC LE,
PAY YOUR FINE(S) BY MAIL, ONLINE OR IN PERSON. SEE THE FOLLOWING PAGES OF THIS NOT E
FOR DETAILS.

### YOUR SCHEDULED ADMINISTRATIVE HEARING

| Date | Time | Court Location | Court Room | Docket |
|---|---|---|---|---|
| 09/12/2018 | 03:00 PM | 2006 E 95th St | 4 | 18DS08291L |

### MUNICIPAL CODE VIOLATION(S) CITED

| Inspection Date and Time | Violation Code | Inspector's Narrative Description |
|---|---|---|
| 08/19/2017 10:52:05 AM | 7-28-710 Accumulation of Garbage / Trash | Garbage or trash allowed to accumulate on premises, causing food or harborage for rats |
| 08/19/2017 10:52:05 AM | 7-29-120(A) Weeds In Excess Of Ten Inches | Weeds on property, on average, are greater than 10 inches in height. |

I certify to the correctness of the specified information contained in this Notice of Violation and the followin (1)
I am an employee of the City of Chicago's Department of Streets and Sanitation; (2) I conducted an inspec n
of the above referenced violation address on the date and time indicated; (3) the photograph(s) attached t ne
original notice of violation, which was filed at the Department of Administrative Hearings, truly and accurat
depicts the property in question on the indicated inspection date and time; (4) I observed the alleged muni al
code violation(s) cited; and (5) the violation(s) as set forth in this instrument are true and accurate.

Page 1 of 4

**Exhibit D**



Roberts & Weddle, LLC
ATTORNEYS AT LAW
309 W. Washington St. Suite 500
Chicago, IL 60606
(312) 589-5800
Fax (312) 589-5870

ADAM A. ROBERTS, Esq.                                                    JEREMY WEDDLE, Esq.

08/22/19

NOTRE DAME AFFORDABLE HOUSING C/O ZOE MAR
4250 S PRINCETON AVE
APT 606
CHICAGO, IL 60609-2853

RE:  THE CITY OF CHICAGO v. NOTRE DAME AFFORDABLE HOUSING C/O ZOE MAR
     R&W Internal File #: 71799.99016
     DAH Docket #: 18DS08291L
     Current Balance as of 08/22/19: $2,586.62

**THIS IS A MATTER OF VITAL IMPORTANCE TO YOU !**

Pursuant to the FINDING, DECISIONS and ORDER entered in this matter, we have filed a lien against your real estate with the Recorder of Deeds. This transaction is now formally a matter of record so that you will be unable to transfer title or obtain financing on your property until such time as the lien is satisfied. In addition, interest is accruing at 9% on the unpaid balance. The longer it takes to pay this claim, the more it will ultimately cost you.

Please remit the balance owed using certified funds. Upon receipt of the certified funds, we will issue a Release of Memorandum to you.

If you cannot pay the full balance at this time, contact our office and we can discuss an installment payment plan to dispose of this debt.

Very truly yours,

**ROBERTS & WEDDLE, LLC**

THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PUR
Please fill in the stub below, detach the stub and return with your remittance.

Our Client: THE CITY OF CHICAGO, A MUNICIPAL CORPORATION          Our File#: 71799.99016
Name: NOTRE DAME AFFORDABLE HOUSING C/O ZOE MAR

Current Address _____          Home Phone _____

---

Endnote[i]

Plaintiffs' "Corrected" Combined Response corrects and/or edits the following:

(1) revising footnote 1 to reflect the page count of Defendants' Memorandums of law (individually and collectively) and removing footnote 4; (2) correcting all font to 11 pt. Bookman and removing legacy yellow highlighting around citations to the SAC; (3) correcting the spelling of Frydland from Fryland as used in the SAC and the original Combined Response; (4) certain non-substantive spelling corrections; (5) attaching previously referenced Exhibit A; (6) correcting the spelling of NDAHI and adding Plaintiff Marsh's name to and correcting the lead in paragraph on page 1; (7) inserting the words "*the complained of*" on page 4; and (8) shortening counsel's signature line.