IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| NOTRE DAME AFFORDABLE HOUSING, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, *et al.* <br><br> Defendants. | Case No. 18-cv-8116 <br><br> Hon. Charles Norgle |

**CITY DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

Defendants the City of Chicago (the "City"), Judith Frydland, Commissioner of the City's Department of Buildings, and Grant Ullrich, a Deputy Commissioner of the City's Department of Buildings (collectively hereinafter referred to as the "City Defendants") respectfully submit this Reply Memorandum in Further Support of their Motion to Dismiss Plaintiffs Notre Dame Affordable Housing and Charlene Marsh's ("Plaintiffs'") Second Amended Complaint ("SAC"). City Defendants moved to dismiss the SAC on the grounds that Plaintiffs lacked standing to bring any claims, since public records demonstrate they do not own the property at issue in this case. In addition, Plaintiffs brought an identical action in state court last year, which was dismissed for failure to state a claim. Rather than appeal that ruling, Plaintiffs seek a second bite at the apple before this Court. Finally, even if Plaintiffs could overcome these threshold issues, their claims lack sufficient legal support and factual allegations to state claims upon which relief can be granted.

Plaintiffs' Opposition (ECF No. 94, cited herein as "Opp.") (i) sets forth incorrect procedural arguments regarding standing challenges, (ii) relies on misstatements of Illinois law on res judicata and final judgments, (iii) repeats sections of the complaint without explaining how the SAC states the elements of its claims, and (iv) ignores certain of City Defendants' arguments entirely. It does not convincingly counter any of City Defendants' arguments. For the reasons herein and those set forth in the City's opening brief, the SAC should be dismissed against the City Defendants.

**ARGUMENT**

I. **The City Defendants' Unrebutted Evidence as to Standing is Properly Considered in a Rule 12(b)(1) Motion**

As set forth in the City Defendants' opening brief, the evidence is clear that neither Marsh nor Notre Dame owns the Subject Property, as the chain of title demonstrates only a series of quitclaim deeds insufficient to convey any ownership in the property to Notre Dame.[1] Without an ownership interest in the property that was demolished, Plaintiffs have no standing to pursue this action. *J.F. Shea Co. v. City of Chicago*, 992 F.2d 745, 749 (7th Cir. 1993); *see also United States v. 9760 17th St., Zion, Ill.*, 805 F. Supp. 641, 641–42 (N.D. Ill. 1992) (holding that, in forfeiture action, claimant "must demonstrate an ownership interest in the property . . . sufficient to establish standing under Article III of the Constitution.")

Plaintiffs do not challenge the factual assertion that they possess no ownership interest in the property by submitting any evidence, but instead attempt to convince the Court to ignore the issue of jurisdiction at this stage in the proceedings, arguing — without citation to case law — that standing "is an issue for summary judgment." (Opp. 17–18.) That is incorrect. The City Defendants' motion and memorandum are clear that they challenge Plaintiffs' standing under rule 12(b)(1). (City Defs.' Mot. ¶ 3; Mem. at 6); *see Beckman v. Chicago Bear Football Club, Inc.*, 17 C 4551, 2018 WL 1561719, at *3 (N.D. Ill. Mar. 30, 2018) (standing challenges are analyzed "as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)"). As the Seventh Circuit has held, "the question of jurisdiction is inappropriate for summary judgment, and discussing the interplay of Rule 12(b)(1) and Rule 56 [dealing with summary

---

[1] Plaintiffs have offered no satisfactory explanation during the pendency of this case how Marsh, who admittedly does not own the property, has standing. They do not do so in the Opposition either.

judgment] verges on non sequitur." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993).

Under the correct analysis of standing challenges under rule 12(b)(1), once a defendant calls the plaintiff's standing into question and proffers evidence, "'[t]he presumption of correctness that [courts] accord to a complaint's allegations falls away,' and the plaintiff bears the burden of coming forward with competent proof that standing exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444–45 (7th Cir. 2009) (quoting *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir.1998)). Plaintiffs have proffered no such proof that they have standing other than referring to various quitclaim deeds — which, as explained in the City Defendants' opening brief, conveyed no property interests whatever. Plaintiffs have shown no evidence that they have standing, and therefore, the case must be dismissed for lack of jurisdiction.

Plaintiffs also cite a number of cases in which courts declined to take judicial notice of documents on a motion to dismiss for failure to state a claim under rule 12(b)(6). As explained above, that is not the rule when a movant challenges standing. But even if it were, Plaintiffs do not actually dispute the contents of the deeds, nor their authenticity, and instead only disagree over their import for this litigation. By contrast, most of the case law Plaintiffs cite in their Opposition addresses circumstances where the accuracy of the information in a document is challenged or there is a claim of fraud or forgery. *See, e.g.*, *Doss v. Clearwater Title Co.*, 551 F.3d 634, 637 (7th Cir. 2008) (inappropriate to take judicial notice of deed where non-movant argued that the facts in it were not true, "and that the deed attached to the defendants' motion was a forgery."); *Wei Liang v. Frontline Asset Strategies, LLC*, 15 C 09054, 2017 WL 1365604, at *4 (N.D. Ill. Apr. 14, 2017) (inappropriate to take judicial notice where non-movant

3

"contest[ed] the authenticity of Defendants' attachment and offers a number of grounds for doing so"). Plaintiffs have not contested that the deeds are authentic. Because they are public records not in dispute, they are amenable to judicial notice.

Instead of coming forward with admissible evidence to show that Notre Dame or Marsh owns the Subject Property, Plaintiffs argue that because the City has filed liens against the Subject Property for ordinance violations for trash accumulation and notified Notre Dame as an interest holder of record, the City Defendants are precluded from arguing they lack standing here. But liens against property and notices sent to potential interest holders do not mean the City has somehow admitted that Notre Dame owns the Subject Property. It means only that county records reflect Notre Dame as the latest deed holder in the chain of title. Plaintiffs have offered nothing to rebut the City Defendants' evidence that Marsh and Notre Dame have no ownership interest in the Subject Property despite these deeds. Plaintiffs have suffered no injury by the demolition of a property they do not own, and the case should be dismissed for lack of standing.

## II.     Plaintiffs' Claims Are Barred by Res Judicata.

Plaintiffs respond to the defendants' res judicata arguments by claiming the October 2018 order did not state whether dismissal was with or without prejudice, and that "Illinois law indicates that a dismissal with prejudice is required for a litigant to invoke res judicata." (Opp. 14.) That statement is somewhat misleading: what is required is not an express statement of dismissal "with prejudice," but a dismissal *on the merits* — as Plaintiffs more accurately acknowledge earlier in their Opposition. *See id.* at 12 ("Res judicata should only apply where there is a final decision on the merits.") (citing *Chi. Title Land Trust Co. v. Potash Corp. of Sask. Sales Ltd.*, 664 F.3d 1075, 1079 (7th Cir. 2011)). As explained in City Defendants' opening brief, Illinois Supreme Court Rule 273 and cases interpreting it provide that any involuntary dismissal is considered "on the merits" *unless otherwise specified*. Plaintiffs can point to nothing

4

in the order suggesting that the complaint was dismissed in any way other than "on the merits." To the contrary, the order *states* that the state court's dismissal is based on its holding that Plaintiff "failed to state a claim on which relief may be granted." (City Defs.' Mem. at Ex. E.) Plaintiffs appear to be arguing that no dismissal order has preclusive effect in Illinois unless it contains the words "with prejudice." That is the exact opposite of what Illinois Supreme Court Rule 273 provides. Because the October 25, 2018 order dismissed Plaintiffs' claims without specifying that the dismissal was anything other than "on the merits," it was a final judgment on the merits for res judicata purposes.

Lastly, Plaintiffs hyper-technical demand that "all orders, transcripts, and bystander's record report" must submitted any time res judicata is invoked is without precedent and simply an attempt to avoid the dispositive issue.[2] *See Trustees of Local 734 Bakery Drives Health & Welfare Plan v. Wolff*, 537 F. Supp. 2d 951, 954 (N.D. Ill. 2008) (taking judicial notice of state court pleadings and orders because, "[a]s to the res judicata defense, the state court pleadings themselves are not in dispute.") Indeed, none of those additional record items matter to the resolution of this issue since the face of the order and the complaint included with City Defendants' exhibit clearly show (i) the claims at issue and (ii) the disposition of the case. That distinguishes this case from the hearing transcript submitted by Plaintiffs, since in that case a *Rooker-Feldman* defense required analysis of what happened during the other court proceedings. Here, the record is clear that Plaintiffs' state lawsuit on this very subject was dismissed involuntarily for failure to state a claim, and therefore was a final judgment on the merits. Plaintiffs should have appealed that order instead of proceeding to this Court to pursue an identical case a second time.

---

[2] This is also a confusing argument to make, since Plaintiffs have themselves attached limited portions of a court record to their Opposition, including court orders. *See* Opp. Exs. B, C.

5

### III. Plaintiffs' Federal Claims, Counts I–VIII, Should Be Dismissed as to the City for Failure to Allege *Monell* Liability.

Plaintiffs respond to the City's arguments that they have insufficiently pled *Monell* liability by simply repeating the same boilerplate legal conclusions that appear in the Second Amended Complaint and its predecessors. But merely alleging that the City has a "policy" of the activity about the issue Plaintiffs are suing about does not suffice to convert a single action into a policy or practice so widespread that it holds the force of law. *Estate of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005). And Plaintiffs' argument that "dozens of persons and/or entities have claimed that their properties have been wrongfully demolished by and through the Department of Building's [*sic*] without adequate notice" (Opp. 26) — even if it were accurate or probative of a failure to provide sufficient notice — does not link the purported injury (the demolition) with an alleged policy (failing to deliver sufficient notice). Nor does this have any relation to any of Plaintiffs' federal claims except for arguably their due process claims, as it has nothing to do with racial discrimination. The federal claims against the City should thus be dismissed for failure to allege facts demonstrating the City can be held liable.

### IV. Counts I–IV, VII and VIII Should Be Dismissed Because Plaintiff Marsh Fails to Allege Federal Civil Rights Claims Against the City Defendants.

In this section, the City Defendants address Plaintiffs' numerous federal civil rights claims under §§ 1981, 1982, 1983, 1985 and 1986, which allege intentional discrimination on the basis of race. The common denominator in Counts I–IV, VII, and VIII is that Marsh has failed to plead any plausible facts indicating that the City Defendants demonstrated a racial animus towards her. In addition to Plaintiffs' lack of standing, their failure to assert a *Monell* claim, and res judicata, these counts should be dismissed as to the City Defendants pursuant to Rule 12(b)(6) because Plaintiff's allegations of discrimination are conclusory and lack factual support.

6

### A. Plaintiff Marsh Fails to State a Claim Under § 1981 (Count I).

In the Opposition, Plaintiff Marsh did not address the deficiencies which were identified by the City Defendants pertaining to her section 1981 claim. A claim under section 1981 must allege that the plaintiff is (1) a member of a racial minority; (2) the defendants had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006). But Marsh has not identified how the City Defendants interfered in her ability to make or enforce a contract. *See Stone v. Am. Fed'n of Gov't Employees*, 135 F. Supp. 2d 873, 875 (N.D. Ill. 2001). Additionally, Marsh has not shown that the City Defendants internationally discriminated against her based on her race. (*See* City's Mem. at 10-11.) For these reasons, Count I should be dismissed with prejudice.

### B. Plaintiff Marsh Fails to State a Claim Under § 1982 (Count II).

Like her claim in Count I, Marsh neglected to respond to the City Defendants' arguments pertaining to her section 1982 claim. Indeed, Count II is deficient, like most of her discrimination claims, because she has failed to plead facts demonstrating racial animus. To assert a violation under section 1982, a plaintiff must show that: (1) she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination involved one of the activities enumerated in the statute. *Phillips v. Mezera*, 2002 WL 31655208, at *6 (N.D. Ill. Nov. 25, 2002). Besides stating that Marsh is an African-American woman, (2AC ¶¶ 6, 82), Plaintiff has done nothing to show that the City Defendants intentionally discriminated against her based on her race. Marsh alleges that Defendants Frydland and Ullrich ordered the destruction of the Subject Property because of Marsh's race and because unknown Caucasians wanted to develop the property, *see, e.g.*, (2AC ¶¶ 104–07, 112, 114–15, 120–23, 129, 131–33), but this is essentially a "request to infer discriminatory intent from the fact that [Plaintiff Marsh]

7

is African-American," but the Seventh Circuit "explicitly prohibits such an inference." *Gardner v. City of Waukegan*, No. 98 C 5372, 1999 WL 410009, at *7 (N.D. Ill. June 4, 1999); *Lowe v. Letsinger*, 772 F. 2d 308 (7th Cir. 1985). Marsh's section 1982 claim should be dismissed.

### C. Plaintiff Marsh's § 1983 Claim Should Be Dismissed Because She Does Not Allege Intentional Discrimination nor a "Class of One." (Counts III, VII).

Plaintiff Marsh alleges that she was discriminated against on account of her race in violation of the Equal Protection Clause of Fourteenth Amendment, and she separately advances a claim of discrimination under a "class of one" theory. (2AC ¶¶ 119, 160.) To state an equal protection claim under § 1983, Marsh must allege that: (1) she is a member of a protected class; (2) she is similarly situated to members of the unprotected class; (3) she was treated differently from members of the unprotected class; and (4) the defendants acted with discriminatory intent. *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993) (internal quotation omitted). In the Opposition, Plaintiff attempts to support her "class of one" claim, but does little to address the deficiencies in Count III.

While the court will accept "the well-pleaded facts in the complaint as true," the many legal conclusions and conclusory allegations in the Second Amended Complaint "are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (affirming dismissal of the plaintiff's equal protection claim.) Additionally, "*Twombly* and *Iqbal* require the plaintiff to provide some *specific facts* to support the legal claims asserted in the complaint." *Id.* (emphasis added). Marsh's claims that she was "targeted for discriminatory mistreatment because she is a strong and articulate African American woman," (2AC ¶ 120) and that the "Subject Properties [were] demolished for the purpose of discriminating against Plaintiff because of her race…" (2AC ¶ 120), are wholly conclusory and devoid of factual predicate. As such, these statements cannot launch a cognizable claim under *Twombly*.

8

Similarly, Marsh's equal protection claim under a "class of one" theory in Count VII cannot succeed. First, Marsh has alleged no facts setting forth comparator properties. To succeed on a "class of one" equal protection claim, Marsh must prove that the City Defendants "treated [her] differently from other similarly situated entities." *RJB Prop., Inc., v. Board of Ed. of City of Chicago*, 468 F.3d 1005, 1009 (7th Cir. 2006). Marsh has the "very significant burden of offering evidence that other entities are similarly situated in all relevant respects." *Id*. at 1010. Marsh cites *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), to support her position. (Opp. 27.) But the plaintiff in *Olech* identified comparator properties that were treated more favorably than her own. *Id*. at 563. This showing was sufficient to establish that the plaintiff was treated differently from similarly situated properties. *Id*. at 565. Marsh, on the other hand, has identified no similarly situated comparator in her Second Amended Complaint. Marsh's vague allegation that "[o]ther properties" in a "similar condition" in the "vicinity" were not subject to a demolition order in the same way as Plaintiff's property, (2AC ¶ 161), is not sufficient to identify a similarly situated comparator.

Second, Plaintiff has not alleged that the City Defendants lacked a rational basis for their conduct. *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015) ("…plaintiffs must allege that state actors lacked a rational basis for singling them out for intentionally discriminatory treatment.") To prevail in a "class of one" allegation, the plaintiff must "negate any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id*. For instance, in *Miller*, the plaintiff alleged a "class of one" equal protection claim against the defendant when she did not gain approval to build a condominium project. *Id*. at 1115. The court, however, found that the city had a rational basis for denying approval for the construction because of the "dilapidated structures [on the property] requiring multiple rounds of

9

asbestos removal" and because of the plaintiff's conduct in demolishing the subject property without proper permits. *Id.* at 1122. Indeed, a plaintiff has to "do more than merely allege facts casting the actions of [defendants] as being motivated by animus; she needed to exclude possible rational explanations for their actions." *Id.* at 1123. Because Marsh has failed to do so here, her Count VII claim should be dismissed.

### D. Plaintiff Fails to State a § 1985(3) Conspiracy Claim (Count IV).

Plaintiff Marsh's conspiracy claims under Count IV cannot succeed. Claims under section 1985(3) require: (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens. *Majeske v. Frat. Order of Police, Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996).

Marsh's section 1985 claim should be dismissed because her underlying equal protection claim in Count III is deficient. *See Gardner v. City of Waukegan*, 999 WL 410009, at *7 (finding that the plaintiff cannot state a claim under § 1985(3) when he has failed to state a claim under the equal protection clause). A section 1985(3) claim requires that the conspiracy be motivated by racial, or other class-based discriminatory animus. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). When a plaintiff fails to establish that the defendants acted because of racial animus, a section 1985 claim should be dismissed. *See Lowe v. Letsinger*, 772 F.2d 308, 311 (7th Cir. 1985) ("The only allegation in the amended complaint that advances a theory of class-based discrimination is the allegation that [plaintiff] is black; standing alone this allegation is insufficient to ground . . . a section 1985 claim.") Marsh has not established that the City Defendants' conduct was driven because of a racial discriminatory animus towards her, and therefore, Count IV should be dismissed.

10

Additionally, Marsh's allegations that Defendants conspired against her are too speculative to survive judicial scrutiny. Marsh cites to *Beaman v. Freesmeyer*, 776 F. 3d 500 (7th Cir. 2012) to support her conspiracy claims, but *Beaman* is a decision on summary judgment that did not involve conspiracy claims under section 1985. Additionally, Marsh's reliance on *Geinosky v. City of Chicago*, 675 F. 3d 743 (7th Cir. 2012), which was a case alleging a civil conspiracy, is not applicable here. In *Geinosky*, the court recognized that while "the complaint makes only rather conclusory direct allegations of conspiracy," it also "allege[d] a pattern of harassment by several officers over a period of months" that has not been plead by Marsh. *Id*. The plaintiff identified facts in his complaint showing that officers from a single police unit targeted the plaintiff and issued him twenty-four bogus tickets over the course of 14 months in furtherance of a conspiracy against him. *Id*. at 749. Marsh, in comparison, has not alleged any overt acts committed in furtherance of an alleged conspiratorial agreement. In other words, Marsh has "not [alleged] a whiff of a conspiratorial agreement" among the Defendants. *Id*.

### E. Plaintiff's § 1986 Claim Should also be Dismissed (Count VIII).

Plaintiff Marsh's support for her § 1986 claim is one sentence long and reads: "Because Plaintiffs have a viable Section 1985(3) claim, Plaintiffs have a viable section 1986 claim." (Opp. 30.) Such a statement fails to address the arguments presented in the City Defendants' motion to dismiss. Section 1986 "provides that every person having knowledge that certain wrongs conspired to be done or about to be done, and having the power to prevent their commission neglects or refuses to do so, shall be liable to the party injured." *Sampson v. Vill. Disc. Outlet, Inc.*, 832 F. Supp. 1163, 1169 (N.D. Ill. 1993), *aff'd*, 43 F.3d 1474 (7th Cir. 1994); *Malone v. Am. Friends Serv. Comm.*, 213 F. App'x 490, 494 (7th Cir. 2007). But a § 1986 claim is totally dependent on the existence of a § 1985 claim, which Plaintiff has failed to establish for the reasons stated above. *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 203 (7th Cir.

1985) ("Section 1986 liability is derivative of Section 1985 liability, so that the dismissal of the Section 1985(3) claim requires dismissal of the Section 1986 claim.") For these reasons, Count VIII should be dismissed.

## V.     Plaintiffs' Takings and Due Process Claims Fail.

In response to the City Defendants' arguments that Plaintiffs have pled neither a Fifth Amendment takings claim nor a procedural due process claim under the Fourteenth Amendment, Plaintiffs direct their opposition at a straw man argument that mischaracterizes the City Defendants' position. Moreover, Plaintiffs misstate the elements of their claims as required under the body of case law interpreting the Fifth and Fourteenth Amendments.

Plaintiffs first argue that the City Defendants' arguments are faulty due to the Supreme Court's recent decision in *Knick v. Township of Scott*, 139 S.Ct. 2162 (2019), which precludes "rel[iance] on the now overruled exhaustion doctrine set forth by the Supreme Court in *Williamson County*." (Opp. 25.) That would be a problem indeed if the City Defendants' motion in fact relied on *Williamson County* and its progeny. But the City's brief does not cite *Williamson County* or the exhaustion/ripeness doctrine a single time: City Defendants dropped those arguments after *Knick* was decided and instead addressed the merits of Plaintiffs' takings claim. As explained in the City's opening brief, a takings claim still requires a showing that the government took the property for public use — not as an exercise of its police powers. *Knick* did nothing to change that. *See Knick*, 139 S. Ct. at 2170 ("[A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property *for public use* without paying for it") (emphasis added). But the ordinance provisions cited by Plaintiffs in the Second Amended Complaint demonstrate that this was not an eminent domain proceeding in the nature of a forced sale for public use. Rather, it was an "emergency wreck and remove" demolition.

12

(Opp. 25.) As a consequence, there is no basis for Plaintiffs to argue a takings claim under the Fifth Amendment.

Nor does *Knick* undercut City Defendants' arguments regarding post-deprivation remedies in the procedural due process context. *Knick* held that a *takings* claims is ripe for a federal suit even before exhausting state court remedies, but it did not affect decades of case law holding that an adequate state law remedy defeats a claim for procedural due process based upon a random and unauthorized act. In fact, *Knick* specifically noted the distinction between the two doctrines in terms of post-deprivation remedies. *Knick*, 139 S. Ct. at 2174 (holding that the analogy comparing post-deprivation remedies in procedural due process claims to the takings context was "strained"). Because Illinois offers post-deprivation remedies for any deprivation, Plaintiffs cannot state a procedural due process claim.

## VI.     Plaintiffs' State Law Claims Should Be Dismissed For Failure To State a Claim Against the City Defendants.

Plaintiffs have indicated that they are voluntarily dismissing their claims against City Defendants for Interference with Prospective Economic Advantage (Count X). Their remaining state-law claims should be dismissed as well.

Plaintiffs do not respond to City Defendants' arguments that the Second Amended Complaint does not state a claim for negligence against the City in Count XI, instead limiting their arguments to purported duties owed by other defendants. Nor do Plaintiffs address the City's immunity defenses at all. Similarly, Plaintiffs address only other defendants in their opposition to the City's motion to dismiss the promissory estoppel claims in Count XII, and do not contest City Defendants' arguments that the City cannot be held liable without any allegations that the City made a promise upon which Plaintiffs relied to their detriment. Finally, Plaintiffs do not respond in any way to City Defendants' motion to dismiss their claims for

declaratory relief in Count XIII. In sum, Plaintiffs have offered nothing to rebut the City Defendants' arguments as to their state law claims, and the SAC should be dismissed as to the City Defendants.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the City Defendants' opening brief, the City Defendants respectfully request that the Court enter an order dismissing with prejudice Plaintiffs' Second Amended Complaint against the City of Chicago, Judy Frydland, and Grant Ullrich and granting such other relief as it deems just and proper.

Date:   October 24, 2019                           Respectfully submitted,

                                                   MARK A. FLESSNER,
                                                   Corporation Counsel for the City of Chicago

                                                   By:    /s/ *Bradley G. Wilson*

Jennifer Zlotow
Oscar Piña
Bradley Wilson
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 N LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-7040 / 742-0797 / 744-7686
Jennifer.Zlotow@cityofchicago.org
Oscar.Pina@cityofchicago.org
Bradley.Wilson@cityofchicago.org

*Attorneys for City Defendants*

14